UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| MARIAN DEBORAH MILLER, | \* | |
| Plaintiff, | \* | Civil No. 3:03CV 0193 (MRK) |
| v. | \* | |
| | \* | |
| EDWARD D. JONES & CO., L.P., ET AL. | \* | APRIL 30, 2004 |
| Defendants. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OF DEFENDANT MICHAEL MAHONEY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

PROCEDURAL STATUS OF THIS CASE

In her scatter-shot Complaint Plaintiff includes fifteen counts directed against five Defendants, four of whom are individuals. Plaintiff directs five counts against Defendant Mahoney alleging that he: (1) Retaliated against her because she opposed discriminatory employment practices in violation of *Conn. Gen. Stat.* §46a-60(a)(4) (Count Six); (2) Aided and abetted the commission of discriminatory practices in violation of *Conn. Gen. Stat*. §46a-60(a)(5) (Count Seven); (3) Intentionally inflicted emotional distress upon her (Count Eleven); (4)

Invaded her privacy (Count Thirteen); and (5) Assaulted her (Count Fourteen). Defendant Mahoney denies all of the alleged improprieties.

FACTS

As set forth in greater detail below, summary judgment is appropriate where there are no material facts at issue. So as to avoid any claims that material factual disputes exist, this motion will be predicated upon the material facts set forth by Plaintiff unless there is a clear basis to proceed otherwise. We employ this device only for purposes of this motion, noting for the Court that Defendant Mahoney denies all of Plaintiff's claims of inappropriate conduct.

Plaintiff first began her employment at Edward D Jones & Co., L.P. ("Jones") on or about July 14, 2001. Complaint at ¶1. Jones maintains its main headquarters facility in St. Louis, Missouri. It has established a network of small offices staffed by two individuals, an Investment Representative (essentially a stock broker) and a Branch Office Administrator (the broker's administrative assistant). Jones is highly centralized and provides administrative support for its network from the St. Louis location. Mahoney Affidavit at ¶2.

Consistent with the normal way in which Jones staffs its offices, Plaintiff was assigned to work with an individual Investment Representative, Defendant Michael Mahoney. The two of them occupied an office location in Stamford.

Miller and Mahoney were the only two individuals assigned to that location. Mahoney Affidavit at ¶3.

Plaintiff contends that Defendant Mahoney engaged in harassing conduct, enquiring about her sexuality, the sexual orientation of her sons, as to her personal relationships, commenting that she would make a good lesbian and that she should frequent "lipstick lesbian bars." Complaint at ¶7. She also complains of being ordered to perform menial tasks outside the scope of her employment duties, Complaint at ¶8, and that Defendant Mahoney spoke to her about his personal life and sexual preferences, Complaint at ¶9.

Plaintiff does not allege that she was ever touched inappropriately. See Complaint generally. See also, Excerpts from Plaintiff's deposition are attached hereto as Exhibit A. Hereafter references to the transcript shall simply be designated "Tr. __." Tr. 246. Plaintiff does not allege that she was ever confronted with any photographic or three dimensional materials or depictions. Her Complaint is limited to claims regarding what was said to her, assignments given to her and an allegation, sometimes repeated, that Defendant Mahoney "handled her personal property." Complaint ¶21.

On the morning of November 9, 2001, Plaintiff reported to work. By her own admission she was tardy. Tr. 351-351. Mr. Mahoney and Ms. Miller argued. Both had raised voices. Mahoney Affidavit at ¶4. Ms. Miller walked out of the

3

office.  Tr. 354 at L. 14.  She never returned.  Mr. Mahoney never again saw her in any capacity at Jones.  Mahoney Affidavit at ¶¶4, 5.

Also on November 9, 2001 Ms. Miller wrote a letter of Complaint to a Jones official in St. Louis, Stephen Rarrick.  Tr. 177-178.  It was clear from the letter that she was dissatisfied, however, there was nothing on the face of the letter to indicate that she felt she had been sexually harassed.  Tr. 179.  In any event, Plaintiff was placed on a paid administrative leave and relieved of any further dealings with Mr. Mahoney pending an investigation of her claims.  Tr. 211.  Mr. Mahoney did not have any interaction with Plaintiff between November 9, 2001 and the start of this litigation.  Mahoney Affidavit at ¶4.

Mr. Mahoney was questioned by Jones officials, being asked what his interactions had been with Ms. Miller.  Mahoney Affidavit at ¶6.  He co-operated fully, although he was never informed of any specific allegations being made about him, nor was he given a copy of Ms. Miller's letter of November 9, 2001 or any of her correspondence.  Mahoney Affidavit at ¶¶6-8.

Plaintiff has acknowledged receiving Jones' sexual harassment policy and related materials.  Tr. 51, 140-144.  She also acknowledges that she was encouraged to call St. Louis headquarters with any personnel issues that might arise.  Tr. 130.  Yet, she never did so.  Tr. 130, 144.

It does appear that on two occasions prior to November 9 Plaintiff did express dissatisfaction to two individuals who may have had some managerial

authority. She described a telephone call with Michael Cummins, Tr. 97, and a later call with Barbara Mosca. Tr. 152-155. In both instances, however, it is clear that the substance of the calls related to her dissatisfaction with office procedures and contained no reference to any discriminatory, harassing or retaliatory conduct.

It appears that following Ms. Miller's placement on a paid administrative leave, Jones was unable to entice her to return to work at any of its locations. Following the conclusion of its investigation, Jones brought Plaintiff's administrative leave to a conclusion. Tr. 288. When she failed to return to work, it appears that Jones regarded her as a voluntary quit. Tr. 245. She was notified of this effective February 28, 2002. Mr. Mahoney played no role in the investigation of the decisions leading to Plaintiff's separation. Mahoney Affidavit at ¶5.

Mr. Mahoney voluntarily gave notice and left his own employment with Jones on March 10, 2002. Mahoney Affidavit at ¶9.

Plaintiff first filed a Charge of alleged discrimination with the Connecticut Commission on Human Rights and Opportunities on or about April 17, 2002. Complaint ¶3.

ARGUMENT

Under Fed. R. Civ. P. 56(c) summary judgment is appropriate if there are no issues of material fact and judgment is appropriate as a matter of law. It is enough for a defendant, as moving party on summary judgment to show that Plaintiff lacks evidence to support an essential element of her claim. *Celotex v. Catrett*, 477 U.S. 317, 322-323 (1986); *Accord*, *Brunson v. Bayer Corp*., 237 F.Supp.2d 192,201 (D. Conn. 2002). The burden then shifts to the non-moving party who must come forward with evidence sufficient to support a jury verdict. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). The evidence presented must be more than mere allegations or denials. Fed. R. Civ. P. 56(e).

I.     DEFENDANT MAHONEY HAS NOT ENGAGED IN RETALIATION.

In order to state a claim for retaliation, Plaintiff must show that (1) she participated in a protected activity; (2) the Defendant was aware that she participated in the protected activity; (3) she suffered an adverse employment action; and (4) there is a causal connection between the protected activity and the adverse employment action. *Wanamaker v. Columbian Rope Co.,* 108 F. 3d 462, 465 (2d Cir. 1997); *Levy v. Commission on Human Rights and Opportunities*, 236 Conn. 96, 103, 671 A.2d 349, 355 (1996) (Connecticut looks to federal precedent in enforcing its own anti-discrimination statute); *Newtown v.*

*Shell Oil Co.,* 52 F. Supp. 2d 366, 374 (D. Conn. 1999) (applying federal precedent to Connecticut retaliation claim).

An indispensable element of the prima facie retaliation claim is that an employee must allege that the Defendant knew of the alleged protected activity. *Montanile v. National Broadcast Co*., 211 F. Supp. 2d 481, 488 (S.D.N.Y. 2002), aff'd, 2003 U.S. App. LEXIS 2711 (2d Cir. 2003) (claim dismissed where supervisor did not know of complaint when she terminated the plaintiff).

In her Complaint, Plaintiff alleges that she spoke to Ms. Mosca about Mr. Mahoney in October, 2001. Complaint ¶24. She does not allege, however, that Mr. Mahoney ever knew of her alleged conversation with Ms. Mosca, and she certainly never alleges that either she or anyone else ever told Mahoney that her comments to Ms. Mosca included reference to a complaint concerning alleged sexual harassment. In fact, Plaintiff's own summary of the conversation shows that it did not raise any issues of discrimination or retaliation. Tr. 152-155.

Moreover, Plaintiff herself specifically acknowledged that she consistently failed and refused to make any complaint pursuant to Jones' harassment policy. Tr. 130. According to her testimony, she had received and acknowledged the Jones sexual harassment policy, but she declined to make a complaint to associate relations, as the policy required, because she believed that retaliation against her would result. How or why she "knew" such a thing remains unclear.

By the time Plaintiff actually made any allegation she no longer had any contact with Mahoney, nor he with her. Mr. Mahoney had left the Company prior to the time she finally filed a charge of discrimination, including him as a party. So Plaintiff utterly fails to establish that Mahoney had any reason to believe that Complainant was engaged in protected activity at a time when he had authority over her.

Further, Plaintiff does not allege that Mr. Mahoney ever took any actions against her either before or after November 9, 2001[1]. She does not claim that he reduced her pay, disciplined her, transferred her, or engaged in any other form of retaliation. Therefore, Plaintiff has failed to provide any facts in support of a retaliation claim, or even to plead a *prima facie* case as to Defendant Mahoney on this issue.

Plaintiff must also allege that Defendant subjected her to an actual adverse employment action. <u>Wanamaker v. Columbian Rope Co.,</u> 108 F. 3d 462

---

[1] Plaintiff may point to two issues. First, she claims that Mr. Mahoney initially refused to allow her to take time off for religious holidays. Mahoney denies this. In any event, it is undisputed that Plaintiff did in fact receive time off. Secondly, Plaintiff may claim that on the occasions that her son was injured, Mr. Mahoney refused to allow her to take the day off. Again, Mahoney denies the allegation. Regardless of the conflict in recollection, however, the record is, once again, clear that Plaintiff did in fact receive the time she sought. Finally, even if Plaintiff made these two arguments and they were accepted, she nevertheless utterly fails to establish a causal connection to retaliation for a protected activity. <u>If</u> these events occurred, it <u>may</u> be possible to view them as discrimination, but they cannot be retaliation on the facts presented.

(2d Cir. 1997).  In determining whether an adverse action has occurred, the Second Circuit has recognized that "'not every unpleasant matter … creates a cause of action' for retaliatory discharge."  Id. at 466 (citations omitted) (removing ex-employee's telephone privileges and office is not adverse employment action).   See also, <u>Brown v. Coach Stores, Inc.,</u> 163 F.3d 706, 710 (2d Cir. 1998) (plaintiff alleged that she applied for a particular position and was rejected); <u>Banks v. Metro-North Commuter Railroad</u>, No. 97 Civ. 1601 (NRB), 2000 U.S. Dist. LEXIS 508  *20-21 (S.D.N.Y. Jan. 19, 2000)(no retaliation where plaintiff actually received the job for which he was applying), aff'd, 234 F.3d 1261 (2d Cir. 2000).  Similarly, where elimination of job duties or change in status does not affect core job duties and pay, there is no adverse employment action.  <u>Breyland-Starling v. Disney Publishing Worldwide</u>, 166 F. Supp. 2d 820, 825 (S.D.N.Y. 2001).  These cases all illustrate the absolute failure of this Plaintiff to allege a viable claim.  She Plaintiff does not allege or prove any employment related action, except her separation – an event which was wholly beyond Mr. Mahoney's control.

In the present matter, the Plaintiff has not alleged that Mr. Mahoney took any adverse action toward her.  What the Plaintiff does allege is that, in her recollection, some unpleasant verbal exchanges took place during her employment.  Before anything else occurred, Plaintiff walked off of her job after

approximately 4 months of employment. She then began to interact with Mr. Rarrick and had nothing more to do with Mahoney. Mahoney Affidavit at 5.

Mr. Mahoney never took any retaliatory action against Plaintiff. He never had the chance. She alleges him to be the sexual harasser. Perhaps. But he never was a retaliator, nor, upon review of the pleadings and the testimony, is he alleged to have been.

Accordingly, in the absence of any material facts to the co Defendant Mahoney respectfully requests that Plaintiff's Sixth Count be dismissed as to him for failure to state a claim.

II.     DEFENDANT MAHONEY HAS NOT
        AIDED AND ABETTED.

Section 46a-60(a)(5) of the Connecticut Fair Employment Practices Act states that it is a discriminatory practice "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory practice or an attempt to do so . . . ." *Conn. Gen. Stat.* § 46a-60(a)(5) (West 2003).[2]  "By its plain language, this provision appears

---

[2] It is clear under Connecticut law that individual employees are not liable for discrimination or harassment as "employers," Perodeau v. City of Hartford, 259 Conn. 729, 737, 259 A.2d 752, 757-58 (2002), and Plaintiff's Complaint does not allege that Defendant Mahoney is liable as an "employer" pursuant to Subsections 46a-60(a)(1) or (8) of the Connecticut Fair Employment Practices Act, § 46a-60(a)(1) (West 2003).

to contemplate liability towards a party who in some way helps or compels another act in a discriminatory manner." *Wasik v. Stevens Lincoln-Mercury, Inc.*, No. 3:98 CV 1083 (DSJ), 2000 U.S. Dist. LEXIS 15438 *24 (D. Conn. Mar. 29, 2000) (citing *Bogdahn v. Hamilton Standard Space Sys. Int'l, Inc.*, 46 Conn. Supp. 153, 159, 741 A.2d 1003, 1007 (1999)). Therefore, where it is alleged that only one actor committed the acts of discrimination, there is no liability for "aiding and abetting" under Section 46a-60(a)(5). Id.

In *Wasik*, the plaintiff alleged that the individual defendant had called the plaintiff a "sixty year-old complainer and sixty-year old baby" many times in front of his co-workers and terminated him for insubordination. Id. at *2. The Court found that, where the acts were perpetrated by a single person, the individual defendant was not liable under Section 46(a)-60(a)(5). Id. at *24. *Cf*. *Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 187, 204 (D. Conn. 2000)(Underhill, J.) (plaintiff alleged that several actors actively participated in harassment); *Murphy v. Burgess & Norwalk Economic Opportunity Now, Inc*., No. 3:96 CV 01987 (AHN), 1997 U.S. Dist. LEXIS 22750 *17 (D. Conn. Jul. 16, 1997)(same). *See also* *Dici v. Pennsylvania*, 91 F.3d 542, 552-53 (3d Cir. 1996)(dismissing claim against individual under Pennsylvania "aiding and abetting" statute where plaintiff alleged only direct acts of discrimination by individual); *Newsome v. Administrative Office of the Courts of New Jersey*, 103 F. Supp. 2d 807, 823 (D.N.J. 2000)(dismissing claim against individual supervisor under New Jersey

11

"aiding and abetting" statute because he could not "aid and abet his own wrongful conduct").

In the present matter, Plaintiff has alleged that all of the discriminatory or harassing actions that occurred were the actions of Defendant Mahoney before he left the Company. She admits that there was no person in addition to Mahoney who harassed or discriminated against her. Tr. At 383-385. Plaintiff does not allege that anyone else at Jones engaged in any harassing or discriminatory actions against her. In fact, after Plaintiff finally complained to Jones, albeit without reference to sexual harassment, by letter of November 9, 2001 she was placed on administrative leave and relieved of any further contact with Defendant Mahoney.

This effort to minimize any contact and to alleviate friction is the antithesis of aiding or abetting. See <u>Tyszka v. Edward McMahon Agency, et. al,</u> 188 F. Supp. 2d 186, 195 (D. Conn. 2001)(company did not "ratify, endorse or perpetrate" the alleged conduct where it took steps to minimize the alleged conduct); <u>Rivera v. Prudential Ins. Co. of America</u>, Nos. 95-CV-0829 and 95-CV-0830, 1996 U.S. Dist. LEXIS 16337 * 39 (N.D.N.Y. Oct. 21, 1996)(dismissing claim under New York "aiding and abetting" statute where alleged harasser acted alone and company's inept investigation at best raised a question as to whether the company provided a reasonable avenue for complaint). Plaintiff has simply

not alleged or testified that Mr. Mahoney acted in concert with anyone at Jones or in either Mr. Byler or in any way acted to aid or abet a harassing or discriminatory practice being committed by others. Therefore, Defendant respectfully requests that Count Seven be dismissed at to Defendant Mahoney for failure to state a claim.

III.  DEFENDANT MAHONEY HAS NOT INTENTIONALLY INFLICTED EMOTIONAL DISTRESS UPON PLAINTIFF.

The Connecticut tort of intentional infliction of emotional distress was defined with authority by the Connecticut Supreme Court in *Petyan v. Ellis*, 200 Conn 243, 253, 510 A. 2d 1337 (Conn. 1986).  There are four elements to the tort, including a requirement that the Defendant's actions were extreme and outrageous and a recognition that in order to satisfy this standard, the conduct must exceed "all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. *Petyan*, 200 Conn at 254.

In *Kintner v. Nidec-Torin Corp*., 662 F. Supp. 112, 114  (D. Conn 1987) Judge Cabranes cited *Petyan* with approval and addressed the nature of the conduct at issue, adopting relevant case law and commentaries.  After first noting that "whether the Defendant's conduct can bee characterized as "extreme and

outrageous" is for determination by the Court in the first instance," Judge Cabranes stated:

> Plaintiff's allegations . . . do not rise to the level of 'extreme and outrageous conduct' necessary to support a claim for intentional infliction of emotional distress. *Brown v. Ellis*, 40 Conn, Sup. 165, 167, 484 A.2d 944, 946 (Conn. Sup. Jud. Dist. of New London, 1984) ("Extreme and outrageous conduct is an essential element in the tort of intentional infliction of emotional distress. Mere insults, indignities or annoyances that are not extreme or outrageous will not suffice.") See also Restatement (Second) of Torts §46, comment d (1965) ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.")

The essential conclusions embraced by Judge Cabranes in *Kintner* have continued to be adhered to in this district down to the present day. See, e.g., *Ericson v. City of Meriden*, 113 F. 2d 276, 292 (D. Conn. 2000). As the state courts have observed, the conduct at issue must be "considerably more egregious than that experienced in the rough and tumble of everyday life . . . ." *Whelan v. Whelan*, 588 A.2d 251, 253 (Conn. Super. 1991).

In the instant matter Plaintiff's allegations do not rise to this standard. She complains of being assigned to do personal work, going for lunch, and receiving telephone calls at home. She also refers to the occasionally off-color question or observation. These matters are not of the utterly intolerable, atrocious quality required for the tort which she alleges. In fact, there are few if any of her

allegations which exceed the bounds of network television broadcasts after 9:00 PM. As Mr. Mahoney notes in his affidavit, Plaintiff frequently compared herself to a character in a television comedy which dealt with many of the same themes which she now seeks to allege as improper.

As the other Defendants in this matter noted in their earlier Memorandum supporting a motion to dismiss, the Courts have rejected many instances of conduct more severe than that alleged in this case, concluding that it did not meet the factual standard necessary. They cited:

> *Ericson,* 113 F. Supp. 2d at 292 (Co-workers viewing videotape with sexual content during working hours, comments made to plaintiff during such incident, subsequent retaliatory conduct, and plaintiff's job transfer to undesirable location may be offensive but cannot be said to be atrocious or utterly intolerable, extreme or outrageous); *Newtown*, 52 F. Supp. 2d at 374 (alleged sexually harassing offensive name-calling by co-workers and wrongful termination insufficient); . . . *Armstrong v. Chrysler Financial Corp*., 1998 WL 342045 (D. Conn. 1998) (supervisor "criticized, insulted, demeaned, and embarrassed [plaintiff] on a daily basis, took away her authority, frequently declared her incompetent, and demeaned her professional ability in the presence of her superiors and subordinates").

Memorandum In Support of Motion to Dismiss, dated May 5, 2003 at p. 8-9.

IV. **DEFENDANT MAHONEY HAS NOT INVADED PLAINTIFF'S PRIVACY.**

Under Connecticut law the tort of invasion of privacy encompasses four distinct theories. Goodrich *v. Waterbury Republican-American*, 188 Conn. 107, 488 A.2d 1317 (Conn. 1982). Although the Complaint is vague as to both the

factual basis for this claim as well as the theory of the claim, it appears that the only possible theory of invasion available to this plaintiff is a claim tat she has suffered an unreasonable intrusion upon her seclusion. This claim requires plaintiff to prove that there was an intentional intrusion "physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, and that the intrusion was of a character that it was highly offensive to a reasonable person. 3 Restatement (Second), Torts §652B (1977).

The theory of an invasion based upon intrusion has not been frequently reviewed by Connecticut's courts. In <u>Tarka v. Filipovic</u>, 45 Conn. App. 46 (1997) invasion of privacy based upon publication of notes concerning the Plaintiff's psychiatric care. The Court ruled against that theory of recovery and the Plaintiff then tried to resurrect an intrusion claim. The Court noted that there was no finding of any physical intrusion or improper investigation of private matters. On this basis the Court found for the defendant.

Further, it is clear that in public spaces there is no reasonable expectation of privacy nor any right to be free from observation in such areas. <u>Chappell v. Stewart</u>, 82 Md 323, 33 A. 542 (1896); <u>Forster v. Manchester</u>, 410 Pa. 192, 189 A. 2d 147 (1963). Most of the cases seem to involve a public disclosure of private facts which is not alleged to have occurred in this case.

Here, at most, Mahoney made enquiry of Plaintiff about her personal life. He did not investigate, intrude or surveil. He has not invaded Plaintiff's privacy.

16

V.  DEFENDANT MAHONEY NEVER ASSAULTED PLAINTIFF.

Plaintiff alleges that she was assaulted by Defendant Mahoney. She admits that there was no battery, just an assault. The tort of assault has been a recent topic among the decisions in this District.

> In <u>Smith v. City of New Haven</u>, 166 F. Supp. 2d 636 (D. Conn. 2001) Judge Burns considered a claim of assault and offered a definition of that tort. Under Connecticut law, "assault has been defined as any attempt <u>with force or violence</u> to do corporeal offence to another coupled with the apparent ability to complete the act . . . . Connecticut . . . [however], . . . has discarded the classical definition of an assault and the word 'assault' is often used when 'battery' would be more accurate.
>
> D. Wright, J. Fitzgerald and W. Ankerman, <u>Connecticut Law of Torts</u> (3rd ed. 1991), Section 6, p. 8.

<u>Smith v. City of New Haven</u>, 166 F.Supp.2d 636, 644 (D. Conn. 2001).

Two years later Judge Burns had occasion to apply this rule again in <u>Stack v. Perez</u>, 248 F. Supp. 2d 106 (D. Conn. 2003). In that case a gentleman and a lady had been in a relationship. The woman was employed as a police officer. The affair ended acrimoniously and, apparently, with the lady harboring some feelings of ill will toward her former friend. The lady threatened her former lover with physical harm. She also engaged in other inappropriate conduct toward the gentleman.

He sued on several theories, including an allegation that he had been assaulted when she made the threat of physical harm. Judge Burns addressed this claim and dismissed it, stating:

> Under Connecticut law an assault requires an overt act evidencing an attempt to do bodily harm, which actually falls short of a battery. *Marczeski v. Law*, 122 F. Supp. 2d 315, 325 (D. Conn. 2000)(threat by telephone or internet not civil assault). Perez only threatened Stack verbally. She never attempted to physically touch him. Thus, there was no overt act and, accordingly, Stack fails to state a claim for assault under Connecticut law and such cause of action is dismissed.
>
> *Stack v. Perez*, 248 F. Supp. 2d at 110.

In this case Plaintiff alleged that on November 9, 2000 she arrived for work. She was tardy. Mr. Mahoney was displeased. He confronted her and, within a short period, an argument ensued with both parties employing raised voices. Plaintiff then left the office. She never returned. Mahoney never interacted with her again during the remainder of his employment at Jones. Plaintiff simply does not offer any evidence to support the elements of an assault. There was no "attempt <u>with force or violence</u> to do corporeal offence." This Count must be dismissed.

CONCLUSION

For all of the foregoing reasons, Defendant Mahoney respectfully requests that Counts Six, Seven, Eleven, Thirteen and Fourteen of the Complaint be dismissed as to him.

THE DEFENDANT
MICHAEL MAHONEY


By:_____
Peter E. Gillespie Ct06554
46 Riverside Avenue
P. O. Box 3416
Westport, CT 06880
Tel: (203) 227-7000
Fax: (203) 454-5508
E-mail: petelaw@attglobal.net

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true copy of the foregoing was served this 30th day of April, 2004 by U. S. Post, postage pre-paid upon the following:

Vlad Spitzer, Esq.  
Spitzer & Brey  
239 Main Street  - 2d Floor  
Westport, CT 06880

Michael N. LaVelle, Esq.  
Pullman & Comley, LLC  
850 Main Street  
Bridgeport, CT 06604

Fred A. Ricks, Jr., Esq.  
Harris, Dowell, Fisher & Harris, L.C.  
15400 South Outer Forty, Suite 202  
St. Louis, MO 63017

_____  
Peter E. Gillespie