males, put plaintiff on performance review plan and eventually terminated her because of her sex and complaints); *Abate v. Circuit-Wise, Inc.*, 130 F. Supp. 2d 341, 348 (D. Conn. 2001) (sexual harassment by supervisor, including highly offensive and unwelcome touchings of plaintiff and highly offensive and unwelcome sexual comments to and about plaintiff); *Ericson*, 113 F. Supp. 2d at 292 (co-workers viewing videotape with sexual content during working hours, comments made to plaintiff during such incident, subsequent retaliatory conduct, and plaintiff's job transfer to undesirable location); *Newtown*, 52 F. Supp. 2d at 374 (sexually harassing offensive name-calling by co-workers and wrongful termination); *Dobrich,* 40 F. Supp. 2d at 105 (multiple incidents of verbal and physical harassment); *Armstrong v. Chrysler Financial Corp.*, 1998 WL 342045 (D. Conn. 1998) (supervisor daily "criticized, insulted, demeaned, and embarrassed [plaintiff]," took away her authority, frequently declared her incompetent, and demeaned her professional ability); *DeLeon v. Little*, 981 F. Supp. 728, 738 (D. Conn. 1997) (supervisor ordered plaintiff to purchase illegal drugs, stand guard while supervisor ingested drugs, and do personal errands and tasks; supervisor made repeated phone calls to plaintiff at home, threatened to terminate her and replace her with individual of another race, implemented discriminatory sick time policies, and criticized plaintiff in front of other employees).

    **b)**     **Edward Jones**

Regardless of whether **Mahoney's** conduct could be characterized as "extreme and outrageous," **Edward Jones'** conduct -- its alleged failure to prevent Mahoney's conduct and to respond adequately to Plaintiff's complaints about it -- cannot be so characterized.

On many occasions, this Court has held that employers' failure to prevent harassment of employees does not meet the "extreme and outrageous" standard for

intentional infliction of emotional distress claims. *See, e.g., Pascal*, 152 F. Supp. 2d at 214 (failure to adequately protect plaintiff from sexually hostile work environment created by co-workers did not rise to required level of severity and outrageousness; alleged deficiencies in employer's response to complaints were not "utterly intolerable" in decent society).[54]

Additionally, it is clear that ordinary violations of the employment discrimination laws, even if willful, are not extreme and outrageous conduct. *See Pascal*, 152 F. Supp. 2d at 214-15 (preference for male employees, putting plaintiff on performance review plan and eventually terminating her because of her sex and complaints, and failing to protect her from sexually hostile work environment, while unlawful under both Title VII and CFEPA, not severe and outrageous as required for intentional infliction of emotional distress claim); *White v. Martin*, 23 F. Supp. 2d 203, 208 (D. Conn. 1998), *aff'd*, 198 F.3d 235 (2d Cir. 1999) (alleged gender-based discrimination, including denial of promotion, discipline, and harassment, not extreme or outrageous).

Finally, to the extent Plaintiff premises her intentional infliction claim on the alleged termination of her employment by Defendants, this Court has held that "[t]he mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." *Pascal* 152 F. Supp. 2d at 214.[55] In addition, as discussed above, Plaintiff effectively resigned under circumstances not constituting a constructive discharge.

---

[54] *See also, Radesky*, 2003 WL 22119183 *3 (insufficient action in response to Plaintiff's complaints about harassment by supervisor, lessening of job duties, and termination of employment; *Newtown*, 52 F. Supp. 2d at 375 (negligent failure to prevent sexual harassment of plaintiff); *Abate*, 130 F. Supp. 2d at 348 (same); *Miner v. Town of Cheshire*, 126 F. Supp. 2d at 195 (D. Conn. 2000) (refusal to protect plaintiff and other women from sexual harassment generally; refusal to protect plaintiff from particular employee's aggressive, offensive, and hostile conduct, knowing of risk he would harass her).

[55] Citing *Huff v. West Haven Board of Educ.*, 10 F. Supp. 2d 117, 123 (D. Conn. 1998), which quoted *Parsons v. United Technologies Corp.*, 243 Conn. 66, 89, 700 A. 2d 655 (1997).

### 3. There is no basis for holding Edward Jones vicariously liable for Mahoney's conduct.

Assuming, *arguendo*, that Mahoney's alleged conduct is sufficient to state a claim against Mahoney for intentional infliction of emotional distress, the liability of Jones for such conduct depends on application of the doctrine of *respondeat superior*.

Under Connecticut law, an employer is not liable under *respondeat superior* for an employee's intentional or negligent tortious conduct unless the employee was acting both within the scope of his employment and in furtherance of the employer's business. *Murphy v. Burgess & Norwalk Economic Opportunity Now, Inc.*, 1997 WL 529610 (D. Conn. 1997). For *respondeat superior* to apply, the affairs of the employer, and not solely those of the employee, must have been furthered by the tortious conduct. *Id.* The employee must have been actuated at least in part by a purpose to serve the employer by executing the employer's orders or doing work assigned by the employer. *Id.*

It is virtually impossible to conceive of a situation in which an employee engaging in unlawful harassment could be found to have been acting within the scope of his employment and in furtherance of the employer's business. By its very nature, sexual harassment is conduct engaged in solely for the benefit of the harassing employee, and it cannot possibly serve the interests of the employer or further the performance of work. For this reason, the U.S. Supreme Court has flatly stated: "The general rule is that sexual harassment by a supervisor is not conduct within the scope of employment." *Burlington Industries, Inc. v. Ellerth*, 118 S.Ct. 2257, 2267 (1998).

On this basis, this Court has dismissed tort claims against an employer arising out of sexual harassment, including claims for intentional infliction of emotional distress. In *Murphy*, 1997 WL 529610, this Court dismissed *respondeat superior* claims for invasion of privacy and negligent and intentional infliction of emotional distress because

none of the facts alleged could support a finding that the harassing supervisor was furthering the employer's interests when engaged in such conduct. The Court in *Murphy* rejected the argument that the harassment could be construed as within the scope of the supervisor's employment just because it occurred on company premises while the supervisor was on duty.

### E. Edward Jones Is Entitled To Summary Judgment On Plaintiff's Negligent Infliction of Emotional Distress Claim (Count Twelve).

In Count Twelve, Plaintiff seeks to recover for negligent infliction of emotional distress. Edward Jones is entitled to summary judgment on this claim because there is no evidence from which a reasonable jury could find it liable.

#### 1. There was no egregious, outrageous, inconsiderate, humiliating or embarrassing conduct in the termination of Plaintiff's employment.

In the employment context, recovery for negligent infliction of emotional distress is limited to conduct occurring in the termination process. Prior to *Perodeau v. City of Hartford*, 259 Conn. 729, 792 A. 2d 752 (Conn. 2002), there was some question as to the availability under Connecticut law of this cause of action based on conduct during employment, as opposed to conduct in employment termination. However, in *Perodeau*, the Connecticut Supreme Court definitively resolved this issue, expressly limiting it in the employment context to conduct in employment termination.[56]

Moreover, while it is thus necessary for a plaintiff claiming employment-related negligent infliction of emotional distress to establish that termination occurred, and that it caused severe emotional distress, this is not sufficient. A terminated employee must

---

[56] Although in *Perodeau* the court framed the issue narrowly in terms of liability of individual municipal employees for negligent infliction of emotional distress, the extensive and detailed reasoning of the *Perodeau* opinion is equally applicable to employees of private employers and to corporate liability. *See Perodeau* 792 A. 2d at 764-772. Subsequent decisions, including one by this Court, have so held. *See Brunson*, 237 F. Supp. 2d at 208 ("[T]he reasoning of *Perodeau* is for the most part equally applicable to corporate defendants, and . . . every court applying the reasoning of *Perodeau* has recognized *Perodeau* as barring such a cause of action against corporate defendants.) (citing numerous state court cases).

also show "unreasonable conduct of the defendant in the termination process" *Ericson v. City of Meriden*, 113 F. Supp. 2d at 291.[57] Specifically, "[t]he employer's conduct during the termination process must be egregious, outrageous, or 'done in an inconsiderate, humiliating or embarrassing manner.'" *Id.*[58] "The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress." *Rodrigue v. Hartford Fire Insurance Co.*, 1997 WL 736525 (D. Conn. 1997).[59]

Plaintiff's negligent infliction claim fails as a matter of law under this standard. Plaintiff's case is based on Mahoney's conduct and Edward Jones' response to it, all conduct occurring while Plaintiff was still employed, and there was no improper conduct during an employment termination. As discussed above, Plaintiff was not terminated or constructively discharged. But assuming *arguendo* that the formal termination of her employment in response to her refusal to return to work may be viewed as a termination, and/or that her resignation may be viewed as a constructive discharge, there was no egregious or outrageous conduct in any such termination process. To the contrary, throughout the four-month period between Plaintiff's November 9, 2001, walkout and the ultimate formal termination Edward Jones treated her respectfully and appropriately, investigating her complaints and communicating with her through her attorney once he disclosed his representation of her (Jones Stmt. ¶¶91, 143-151). Most significantly, it engaged in no conduct intended to cause her resignation, but instead

---

[57] Quoting *Malik v. Carrier Corp.*, 986 F.Supp. 86, 91 (D.Conn.1997), which quoted *Morris v. Hartford Courant Co.*, 200 Conn. 676, 682, 513 A.2d 66 (1986).

[58] Quoting *Malik*, 986 F.Supp. at 92, which quoted *Skierkowski v. Creative Graphics Serv. Inc.*, No. CV 94-0463242S, 1995 WL 283945 at *5 (Conn.Super. 1995). *See also Newtown.*, 52 F. Supp. 2d at 375 (D. Conn. 1999); *Rodrigue v. Hartford Fire Insurance Co.*, 1997 WL 736525 (D. Conn. 1997).

[59] Quoting *Parsons v. United Technology Corp.*, 243 Conn. 66, 88-89, is 700 A. 2d 655 (1997). *See also Newtown*, 52 F. Supp. 2d at 375 (D. Conn. 1999) (plaintiff alleged only retaliatory motive for termination, and provided no evidence from which reasonable jury could find termination was

actively sought her return (Jones Stmt. ¶¶143-51). Any emotional distress resulted from Mahoney's conduct during Plaintiff's employment, or from the fact her employment ended, not from the manner in which "the termination process" was handled.

### F. Edward Jones Is Entitled To Summary Judgment On Plaintiff's Invasion Of Privacy Claim (Count Thirteen).

In Count Thirteen, Plaintiff seeks to recover for invasion of privacy. Edward Jones is entitled to summary judgment on this claim because there is no evidence from which a reasonable jury could find it liable.

Connecticut courts have adopted the tort of invasion of privacy as defined in 3 Restatement (Second), Torts § 652, recognizing that it is not a single tort, but "four distinct kinds of invasion of four different interests of the plaintiff, which . . . have almost nothing in common except that each represents an interference with the right of the plaintiff 'to be let alone.'" *Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107, 448 A. 2d 1317 (Conn. 1982). The four invasion of privacy torts are: 1) unreasonable intrusion upon the seclusion of another; 2) appropriation of the other's name or likeness; 3) unreasonable publicity given to the other's private life; and 4) publicity that unreasonably places the other in a false light before the public. *Id.*

The only one of these that could even conceivably apply to the facts of this case is the first -- intrusion upon seclusion. This involves intentional intrusion, "physically or otherwise, upon the solitude or seclusion of another, or his private affairs or concerns," that would be "highly offensive to a reasonable person." 3 Restatement (Second), Torts 652B (1977). Plaintiff apparently claims Mahoney intruded upon the privacy of her affairs or concerns by handling her personal property, including her purse and coat, and making inquiries about personal matters such as her sexual orientation and relationship with her boyfriend.

---

handled in manner so unreasonable defendant knew or should have known conduct involved

### 1. There is no basis for direct liability of Edward Jones.

Regardless of whether these allegations state a cause of action against Mahoney for invasion of privacy, they do not state a direct cause of action against Edward Jones. Plaintiff does not claim Edward Jones participated in any way in the alleged invasion of privacy, just that it knew about it, but failed to adequately investigate and remedy it. Such passive negligent or reckless nonfeasance is insufficient as a matter of law. The tort of intrusion upon seclusion requires active, intentional conduct.

*Kavy v. New Britain Bd. Of Educ.*, 2003 WL 721565 (Conn.Super. 2003) (unpublished) is directly on point. In it, the plaintiff alleged that her employer and an individual defendant invaded her privacy by failing to investigate and stop a series of harassing telephone calls after learning of them. The court granted a motion to strike this invasion of privacy claim, stating: "Failure to investigate is not an intrusion of any sort. Intrusion is an affirmative act; the defendants' failure to stop an intrusion is not itself an intrusion." 2003 WL at 721565*4.

### 2. There is no basis for vicarious liability of Edward Jones.

Plaintiff's invasion of privacy claim against Edward Jones fares no better under a vicarious liability theory. As discussed above in connection with Plaintiff's intentional infliction of emotional distress claim, Edward Jones could be held vicariously liable for Mahoney's alleged invasion of Plaintiff's privacy only if it was both within the scope of his employment and in furtherance of Edward Jones' business, having been actuated at least in part by a purpose to serve Edward Jones through execution of its orders or performance of its work.

Mahoney's alleged conduct -- poking around in Plaintiff's purse, trying on her coat, and engaging in unwelcome sexual banter -- plainly fails to meet this standard. No

---

unreasonable risk of emotional distress that might result in illness or bodily harm).

37

reasonable jury could find such conduct within the scope of Mahoney's employment or in furtherance of Edward Jones' business. See *Murphy*, 1997 WL 529610 (citing *respondeat superior* principles, this Court dismisses invasion of privacy claim against employer based on sexual harassment of plaintiff by supervisor, although many of the harassing acts occurred on company premises while supervisor was on duty).

### G. Edward Jones did not negligently hire, supervise, or retain the individual Defendants

In Count Fifteen, Plaintiff seeks to recover for negligent hiring, supervision, and retention. Edward Jones is entitled to summary judgment on this Count because a reasonable jury could not find it liable. Edward Jones did not act negligently in hiring, supervising, and retaining Mahoney or the other individual Defendants.

#### 1. Edward Jones was not negligent in hiring the individual defendants.

Under Connecticut law, a negligent hiring claim requires proof that the plaintiff was injured by the defendant's negligence in failing to select as its employee a person fit and competent to perform the job, and that the plaintiff's injuries resulted from the employee's unfit or incompetent work performance. *Abate*, 130 F. Supp. 2d 341.[60] Edward Jones conducted its standard background and reference checks for hiring the individual Defendants, including Mahoney, and reasonably concluded they were fit and competent to perform their jobs (Jones Stmt. ¶72).

#### 2. Edward Jones was not negligent in supervising and retaining the individual defendants.

Under Connecticut law, a negligent supervision claim requires proof that the plaintiff suffered an injury due to the defendant's violation of a duty of care to protect the plaintiff from another employee's tortious acts. Such a duty exists only if the defendant knew or reasonably should have known of the employee's propensity to engage in that

---

[60] Citing *Shanks v. Walker*, 116 F. Supp. 2d 311, 314 (D. Conn. 2000).

38

type of tortious conduct. *Id.*[61] In *Dobrich*, 40 F. Supp. 2d at 105, the court rejected a negligent supervision claim based on alleged failure to supervise employees so as to prevent sexual harassment, observing that there was "no state-law authority for allowing plaintiff to proceed on this theory under circumstances such as this. . . ." For this reason alone, Edward Jones is entitled to summary judgment on Plaintiff's negligent supervision claim.

Moreover, before Plaintiff's walkout, Edward Jones did not know or have reason to know Mahoney had a propensity to engage in unlawful or tortious conduct such as sexual harassment, religious or age discrimination, or invasion of privacy.[62] Thereafter, as discussed in connection with the *Faragher/Ellerth* affirmative defense, it acted reasonably to investigate and remedy any such conduct. A reasonable jury could not find Edward Jones negligent in not terminating Mahoney's employment at this time. As to the other individual Defendants, they engaged in no tortious conduct and were not known to have been any propensity to do so.

## IV. CONCLUSION

For the foregoing reasons, this Court should grant the Motion for Summary Judgment filed on behalf of Defendant Edward D. Jones & Co., L.P.

---

[61] Citing *Gutierrez v. Thorne*, 13 Conn. App. 493, 500, 537 A. 2d 527 (1988); *Shanks v. Walker*, 116 F. Supp. 2d at 314.
[62] It is true that even before hiring Plaintiff, Edward Jones knew Mahoney could be difficult to work with, but this is not knowledge of a propensity to engage in unlawful or tortious conduct. In any event, Edward Jones acted reasonably by assigning a "coach" for the express purpose of addressing this issue, and this "coach" was active in assisting Mahoney in relating to Plaintiff and assisting Rarick's investigation (Jones Stmt. ¶99; Cummins Stmt. ¶9).

Respectfully submitted,

DEFENDANT Edward Jones & Co., L.P.

By: _____
Michael N. LaVelle, Esq. 06170
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006
(203) 330-2000
(203) 330-2288 (Facsimile)

By: _____
Fred A. Ricks, Jr., Esq.
Harris Dowell Fisher & Harris, L.C.
15400 South Outer Forty, Suite 202
St. Louis, Missouri 63017
(636) 532-0300
(636) 532-0246 (Facsimile)

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, to the following parties:

Peter E. Gillespie, Esq.
Attorney at Law
46 Riverside Avenue
Westport, CT 06880
(203) 227-7000

Vlad Spitzer, Esq.
Spitzer & Brey, LLC
239 Main Street, 2nd Floor
Westport, CT 06880
(203) 226-3266 Ext. 14

_____