UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARIAN DEBORAH MILLER,

Plaintiff,

vs.                                          CIV NO.        /ℳℾℝ
                                             3:03CV 0193 (DJS)

EDWARD D. JONES & CO., L.P.,
MICHAEL MAHONEY, MICHAEL
CUMMINS, BARBARA MOSCA, and
STEVEN RARICK,

Defendants.

                                             April 29, 2004

## LOCAL RULE 56(A)1 STATEMENT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FILED ON BEHALF OF DEFENDANT MICHAEL CUMMINS

COMES NOW Defendant Michael Cummins ("Cummins"), and in support of his motion for summary judgment, submits the following statement of material facts as to which Defendant contends there is no genuine issue to be tried[1]: To avoid unnecessary duplication, Defendant incorporates herein by reference the Local Rule 56(A)1 Statements of the other Defendants.

1.    Plaintiff admitted that to her knowledge Cummins did not discriminate against her (Miller Depo. at 383).

2.    Cummins is an Edward Jones investment representative ("IR") with an office in Old Saybrook, Connecticut (Cummins Depo. at 5-6).

3.    Starting in 1994, Cummins served as an Edward Jones regional leader (Cummins Depo. at 9).  He was the regional leader for the entire State of Connecticut

---

[1] This statement of facts is based upon evidence obtained in discovery.  Should the Motion be denied, Defendant reserves the right to present evidence at trial controverting such facts, but because the Court must now view the evidence in the light most favorable to Plaintiff, where there are significant differences between the testimony of Plaintiff and of Defendant's witnesses, Plaintiff's version is given.  By including facts in this statement, Defendant does not admit truth or materiality for all purposes.

1

until about September of 2001, when Barbara Mosca ("Mosca"), regional leader for the Metropolitan New York area, took over as regional leader for Fairfield County, Connecticut (Cummins Depo. at 11-13, 52; *see* Miller Depo. at 57-58).

4.      As a regional leader, Cummins served "as a role model to other offices, other brokers," such as by taking them on sales calls for training purposes and providing information on particular investments (Cummins Depo. at 9-10).   His other primary responsibility was "organizing and hosting meetings" three times a year (Cummins Depo. at 9-11).

5.      As a regional leader, Cummins did not have any other investment representatives reporting directly to him, nor was he the "manager" of any investment representatives (Cummins Depo. at 13).

6.      In 2001, Mahoney's direct manager was Price Woodward, an Edward Jones general partner in investment representative development department (Cummins Depo. at 14).  Woodward was also Cummins' direct manager (Cummins Depo. at 14).

7.      In February 2001, before Plaintiff began working for Mahoney, Cummins learned of a planned meeting between Mahoney and John Sullivan, an Edward Jones human relations generalist (Cummins Depo. at 28).   Cummins discussed the meeting with Sullivan, who told him the issues were the performance of Mahoney's BOA at the time, his treatment of her, and his calling her at home (Cummins Depo. at 28).

8.      Following this meeting, also attended by Cyndi Catalano, Sullivan instructed Cummins that if Mahoney called him and asked about this visit, Cummins was to "give him the message clearly that if he bothers another person, he will be terminated" (Cummins Depo. at 30, 34).

9.    Cummins learned that in this meeting Sullivan had referred Mahoney to an "interpersonal coaching company," but never learned specifically what interaction between Mahoney and his BOA had led to the meeting (Cummins Depo. at 29, 32-35).

10.    Plaintiff had a conversation with Vasil that she believed was heard by Commander ("Commander") over the speakerphone. This conversation was reported by Commander and Vasil to Cummins (Miller Depo. at 96).

11.    In response, Cummins called Mahoney and told him to "behave himself" and that Plaintiff "was the last BOA he was going to be given by the company" (Miller Depo. at 97). Cummins also discussed with Mahoney that he was asking Plaintiff to do things that were not part of her job description (Miller Depo. at 97). This description of the conversation between Cummins and Mahoney is based on what Mahoney told Plaintiff about it (Miller Depo. at 97).

12.    After this conversation with Cummins, Mahoney said to Plaintiff "if you had a problem with me, why didn't you just come to me" (Miller Depo. at 97), and brought her flowers to apologize (Miller Depo. at 100).

13.    Subsequently, in mid-to late August, 2001, Plaintiff spoke directly with Cummins when he called her and asked her how things were going. She said there was a problem with Mahoney, that he was very "demanding" and "condescending," was keeping her overtime, asked her "for a number of personal favors," "made a couple of wisecracks" and she "was feeling that [she] was not in a professional atmosphere" (Miller Depo. at 99).

14.    There may have been one or two other similar conversations between Plaintiff and Cummins on the "rare occasion" when he directly answered the telephone at his office (normally this was done by Commander or Vasil). In these conversations,

3

Cummins would ask her how it was going, and she would say "things are difficult over here," to which he would respond "I know what you mean." (Miller Depo. at 100-03).

15.    In her first partial day of deposition testimony, Plaintiff testified she had no other conversations with Cummins during her employment at Edward Jones (Miller Depo. at 102).    However, when she returned at a later date to complete the deposition, she testified she recalled Cummins calling the office wanting to speak to Mahoney and saying to her, "I understand that he's not behaving himself," to which she responded "No" and explained "that it was a very difficult situation in the office." She testified Cummins told her these problems with Mahoney had existed prior to her employment. (Miller Depo. at 282-84.)

Respectfully submitted,

DEFENDANT Michael Cummins

By:    _____
Michael N. LaVelle, Esq.  06170
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006
(203) 330-2000
(203) 330-2288 (Facsimile)

By:    _____
Fred A. Ricks, Jr., Esq.
Harris Dowell Fisher & Harris, L.C.
15400 South Outer Forty, Suite 202
St. Louis, Missouri  63017
(636) 532-0300
(636) 532-0246 (Facsimile)

4

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, to the

following parties:

Peter E. Gillespie, Esq.
Attorney at Law
46 Riverside Avenue
Westport, CT  06880
(203) 227-7000

Vlad Spitzer, Esq.
Spitzer & Brey, LLC
239 Main Street, 2nd Floor
Westport, CT  06880