UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARIAN DEBORAH MILLER,

    Plaintiff,

vs.

EDWARD D. JONES & CO., L.P.,
MICHAEL MAHONEY, MICHAEL
CUMMINS, BARBARA MOSCA, and
STEVEN RARICK,

    Defendants.

CIV NO.
3:03CV 0193 (DJS)

April 29, 2004

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
FILED ON BEHALF OF DEFENDANT BARBARA MOSCA**

### I. INTRODUCTION

This court should grant the motion of Defendant Barbara Mosca ("Mosca") for summary judgment on all counts. Discovery has been completed, there is no genuine issue of material fact, and Mosca is entitled to judgment as a matter of law.

### II. FACTS

The facts are set forth in detail in the Local Rule 56(a)1 Statements of Mosca,[1] Edward Jones,[2] and Michael Cummins, which are incorporated herein by reference. The essential facts can be summarized more briefly as follows:

Mosca is employed as an investment representative by Edward Jones in Long Beach, New York, and is the Edward Jones regional leader for a New York metropolitan area region that was expanded in October 2001 to include Fairfield County, Connecticut (Mosca Stmt. ¶1). Her status as a regional leader did not make Mosca Mahoney's "supervisor," and she was not directly responsible for "HR issues" involving offices in her region (Mosca Stmt. ¶2).

---

[1] Hereinafter cited as "Mosca Stmt."
[2] Hereinafter cited as "Jones Stmt."

1

In the fall of 2001, Mosca became aware that Mahoney had employed several different BOA's, which might have indicated he was "difficult to work for," or "abrasive" (Mosca Stmt. ¶3). Around the same time, she also learned Mahoney had been "abrasive with people in St. Louis" and "had been assigned a coach by Edward Jones to work on workplace-related issues" and dealing with people (Mosca Stmt. ¶¶4,5). Mosca was not aware of any specifics regarding Mahoney's interactions with people in St. Louis (Mosca Stmt. ¶5).

Plaintiff called Mosca twice to complain about Mahoney (Mosca Stmt. ¶6). Plaintiff was unable to recall any details about the first conversation, which she said took place in October 2001 (Mosca Stmt. ¶7).

The second time Plaintiff talked to Mosca was in a cell phone call Plaintiff initiated about a week before she walked out, never to return (which occurred on November 9, 2001) . Plaintiff called Mosca from her cell phone following an incident in which she felt Mahoney had been "badgering" her, calling her names, and blaming her for a situation that had made a client upset (Mosca Stmt. ¶8). Mosca thought Plaintiff seemed upset. Plaintiff complained to her about Mahoney, telling her he had called Plaintiff up and told her to get him breakfast and lunch and he was "very difficult to work for," referring to him raising his voice and being abrasive (Mosca Stmt. ¶10). Plaintiff told Mosca she was "having a lot of trouble" with Mahoney and "can't go back there" (Mosca Stmt. ¶9). Plaintiff told Mosca that Vasil and Commander had told her to call Associate Relations (Mosca Stmt. ¶9).

Mosca advised Plaintiff to return to the office, talk to Mahoney, and discuss the situation with the Edward Jones Associate Relations Department in St. Louis (Mosca Stmt. ¶11). Mosca does not recall any other discussion with Plaintiff of problems she was experiencing with Mahoney (Mosca Stmt. ¶12).

At no time did Plaintiff tell Mosca that Mahoney made any comments or engaged in any conduct of a sexual nature or regarding Plaintiff's age or religion, or that he engaged in sex discrimination. She did not raise discrimination or other issues concerning Plaintiff's sexual orientation (Mosca Stmt. ¶13). Later, after November 9, 2001, when Plaintiff walked out, Mosca talked to Defendant Rarick and learned Plaintiff was on leave (Mosca Stmt. ¶14). Also after Plaintiff walked out, Mosca heard mention of "sexual harassment issues" and Mahoney's sexual orientation came up, although Mosca did not understand what his sexual orientation had to do with his relationship with Plaintiff (Mosca Stmt. ¶15).

### III. ARGUMENT

**A.     Mosca Is Entitled To Summary Judgment On Plaintiff's CFEPA Retaliation Claim (Count Six).**

In Count Six, Plaintiff seeks to recover for retaliation in violation of the CFEPA, Conn. Gen. Stat. §46a-60(a)(4). Mosca is entitled to summary judgment on Count Six for the same reasons Edward Jones is entitled to summary judgment on Plaintiff's federal and state retaliation claims against it in Counts Four and Six. Plaintiff makes no allegation of retaliatory conduct by Mosca that is not covered in the arguments on Counts Four and Six in the Memorandum In Support Of Motion For Summary Judgment Filed On Behalf Of Defendant Edward D. Jones & Co., L.P. Such arguments are therefore incorporated herein by reference, and are equally dispositive of Plaintiff's retaliation claim against Mosca. Additionally, as discussed below in connection with aiding and abetting, an individual employee may not be held liable for retaliation under the CFEPA for acts committed in the course of employment.

    **B.**    **Mosca Is Entitled To Summary Judgment On Plaintiff's CFEPA Aiding And Abetting Claim (Count Seven).**

In Count Seven, Plaintiff seeks to recover against defendant Mosca for aiding and abetting unlawful discriminatory employment practices in violation of the CFEPA, Conn. Gen. Stat. §46a-60(a)(5).[3] This claim is insufficient as a matter of law.

    **1.**    **Under the CFEPA, An Individual Employee Cannot Be Held To Have Aided And Abetted His Or Her Own Employer.**

Under the Connecticut Supreme Court's decision in *Perodeau v. City of Hartford*, 259 Conn. 729, 738, 792 A.2d 752, 758 (Conn. 2002), "individuals who are not employers may not be held liable under § 46a-60 (a)(1)," which is the CFEPA provision prohibiting discrimination by employers. Unlike §46a-60(a)(1), §§46a-60(a)(4) and (5) are not, by their terms, expressly limited to conduct by employers or their agents, but extend more broadly to "any person." This distinction might suggest that *Perodeau's* prohibition of individual liability does not extend to claims of retaliation and aiding and abetting under these sections. But examination of the reasoning of *Perodeau* discloses that these sections must not be construed as permitting liability of individual employees for acts committed in the course of their employment.

In *Perodeau*, 792 A.2d at 759-61, the court discussed three policy reasons for its holding: 1) the inconsistency between protecting small employers while allowing individual employees to be sued; 2) "the legislature did not intend for individuals to be subject 'to the ever-present threat of a lawsuit each time they make a personnel decision'"[4] and 3) barring individual liability would not "open the floodgates of discrimination, [by] giv[ing] supervisors a free pass to discriminate," because "[a]n employer subjected to well-founded claims of employment discrimination as a result of an employee's intentional acts of discrimination is not likely to look favorably upon the

---

[3] Conn. Gen. Stat. § 46a-60(a)(4) provides that it is an discriminatory employment practice to "aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so. . . ."

[4] Quoting *Reno v. Baird*, 18 Cal.4th 640, 662-63 (1998).

offending employee [and] almost certainly will impose some form of discipline upon the offending employee."[5]

These reasons for barring individual liability under the primary discrimination prohibition of CFEPA are equally applicable to individual liability under the retaliation and aiding and abetting provisions. Particularly with respect to aiding and abetting, the *Perodeau* decision would be rendered null if every individual who participated in some way in challenged employment decisions or workplace conduct could be individually liable for aiding and abetting their employer. This would be an exception that would swallow the rule, making every supervisor subject "to the ever-present threat of a lawsuit each time they make a personnel decision." The "any person" language can still be given meaning as applying to other persons besides employers and their employees -- third parties such as customers, contractors, other employers, etc.

### 2. There were no unlawful discriminatory employment practices.

Furthermore, even if individual liability for someone acting in her capacity were theoretically possible, Mosca cannot be liable under for aiding and abetting unlawful discriminatory employment practices under the CFEPA because, as discussed above and in the separate motions for summary judgment of Defendants Edward Jones, Rarick, and Cummins, no such CFEPA violations were committed by any Defendant, including Mahoney.

### 3. Mosca did not aid and abet Mahoney.

Mosca was aware that Plaintiff, like others who had worked with Mahoney, found him difficult to work with at times (Mosca Stmt. ¶3-6, 8-10). However, she was unaware of any allegedly discriminatory or sexually harassing aspect of Plaintiff's difficulties with Mahoney until after Plaintiff had walked out and her complaints had been reported to

---

[5] *Quoting Reno*, 18 Cal.4th at 654-55.

the Associate Relations Department and were being investigated by Rarick (Mosca Stmt. ¶¶13, 15).

When Mosca learned that Plaintiff was quite upset by Mahoney's conduct (not known to Mosca to be related to any discrimination or sexual harassment), she did not ignore the matter. Rather, she referred Plaintiff to Associate Relations, which is the proper channel not only for discrimination and harassment claims under the Edward Jones discrimination and harassment policies, but also for investigating and resolving other allegations of inappropriate conduct by Edward Jones employees (Jones Stmt. ¶¶4, 13-16). Under the circumstances, including the nature of the complaints, which did not indicate unlawful conduct, and Mosca's lack of authority, this was a reasonable response clearly not intended to condone Mahoney's conduct or assist him in engaging in any inappropriate conduct, whether lawful or unlawful.

Aiding and abetting a CFEPA violation necessarily involves conduct that in some way assists, incites, compels or coerces the doing of a discriminatory act.[6] Mosca was not even aware that Mahoney was engaging in any unlawful employment practices or contemplating doing so, or that Plaintiff believed he was until after she had walked out and Rarick had commenced an investigation (Mosca Stmt. ¶¶3-5, 8-10, 12, 13, 15). Indeed, for much of Plaintiff's brief period of active employment, Mosca was not even the Regional Leader for Mahoney's region (Mosca Stmt. ¶1; Cummins Stmt. ¶3). Therefore, Mosca did not condone or ratify any unlawful conduct -- to do so requires knowledge it is occurring.

At most, Mosca is simply guilty of nonfeasance -- failure to actively intervene to investigate Plaintiff's complaints, even though they did not alert her to any possible unlawful conduct. Given the allocation of responsibilities within Edward Jones, any such

---

[6] Conn. Gen. Stat. § 46a-60(a)(4) provides that it is an discriminatory employment practice to "aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so. . . ."

6

investigation was not her responsibility, but that of Associate Relations, to which she had referred Plaintiff. If such passive nonfeasance could ever be characterized as aiding and abetting -- which is questionable -- it cannot be so characterized under these circumstances.

### C. Mosca Is Entitled To Summary Judgment On Plaintiff's Intentional Infliction Of Emotional Distress Claim (Count 11).

In Count Eleven, Plaintiff seeks to recover for intentional infliction of emotional distress. Mosca is entitled to summary judgment on Count Eleven for the same reasons Edward Jones is entitled to summary judgment on this Count. Plaintiff makes no allegation of conduct by Mosca relevant to this Count that is not covered in the arguments on Count Eleven in the Memorandum In Support Of Motion For Summary Judgment Filed On Behalf Of Defendant Edward D. Jones & Co., L.P. Mosca did not engage in any conduct intended to cause emotional distress, nor did she have actual or constructive knowledge such distress was likely. Neither her conduct (even assuming, *arguendo*, that she negligently failed to act on knowledge of Plaintiff's complaints about Mahoney), nor that of Mahoney was extreme and outrageous in nature. Edward Jones' arguments on these points are therefore incorporated herein by reference, and are equally dispositive of Plaintiff's intentional infliction claim against Mosca.

### IV. CONCLUSION

For all of the above reasons, Defendant Barbara Mosca is entitled to summary judgment on each of the three Counts directed against her.

Respectfully submitted,

DEFENDANT Barbara Mosca

By: _____
Michael N. LaVelle, Esq. 06170
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006
(203) 330-2000
(203) 330-2288 (Facsimile)

By: _____
Fred A. Ricks, Jr., Esq.
Harris Dowell Fisher & Harris, L.C.
15400 South Outer Forty, Suite 202
St. Louis, Missouri 63017
(636) 532-0300
(636) 532-0246 (Facsimile)

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, to the following parties:

Peter E. Gillespie, Esq.
Attorney at Law
46 Riverside Avenue
Westport, CT 06880
(203) 227-7000

Vlad Spitzer, Esq.
Spitzer & Brey, LLC
239 Main Street, 2nd Floor
Westport, CT 06880
(203) 226-3266 Ext. 14

_____