UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARIAN DEBORAH MILLER,

    Plaintiff,

vs.

EDWARD D. JONES & CO., L.P.,
MICHAEL MAHONEY, MICHAEL
CUMMINS, BARBARA MOSCA, and
STEVEN RARICK,

    Defendants.

CIV NO.
3:03CV 0193 (DJS)

April 29, 2004

### LOCAL RULE 56(A)1 STATEMENT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FILED ON BEHALF OF DEFENDANT BARBARA MOSCA

COMES NOW Defendant BARBARA MOSCA ("Mosca"), and in support of her motion for summary judgment, submits the following statement of material facts as to which Defendant contends there is no genuine issue to be tried[1]: To avoid unnecessary duplication, Defendant incorporates herein by reference the Local Rule 56(A)1 Statements of the other Defendants.

1. Defendant Barbara Mosca is an investment representative employed by Edward Jones in Long Beach, New York (Mosca Depo. at 5). She is an Edward Jones regional leader for a New York metropolitan area region that was expanded in October 2001 to include Fairfield County, Connecticut, for which Michael Cummins had previously been the regional leader (Mosca Depo. at 7-8; see Miller Depo. at 150).

2. Her status as a regional leader did not make Mosca Mahoney's "supervisor," and she was not directly responsible for "HR issues" involving offices in her region, as such issues were handled from Edward Jones' St. Louis offices. (Mosca Depo. at 24-25, 37).

---

[1] This statement of facts is based upon evidence obtained in discovery. Should the Motion be denied, Defendant reserves the right to present evidence at trial controverting such facts, but because the Court must now view the evidence in the light most favorable to Plaintiff, where there are significant differences between the testimony of Plaintiff and of Defendant's witnesses, Plaintiff's version is given. By including facts in this statement, Defendant does not admit truth or materiality for all purposes.

3. In the fall of 2001, in the course of discussions about various investment representatives with Price Woodward, an Edward Jones general partner in St. Louis, Mosca became aware that Mahoney had employed several different BOA's, which might have indicated he was "difficult to work for" or "abrasive" (Mosca Depo. at 9, 13-17).

4. Around the same time, Mosca also learned that "Mahoney had been assigned a coach by Edward Jones to work with him on workplace-related issues," on "interpersonal relationships, how to deal with people" (Mosca Depo. at 20-22, 37).

5. Woodward told Mosca that Mahoney had been "abrasive with people in St. Louis" and because he had multiple BOA's this coaching "was something that would help in his professional development" (Mosca Depo. at 22). Mosca was not aware of any specifics regarding Mahoney's interactions with people in St. Louis (Mosca Depo. at 35-36).

6. Plaintiff talked to Mosca "a couple of times" (Miller Depo. at 150; see Mosca Depo. at 62). She called Mosca twice to complain about Mahoney (Miller Depo. at 151).

7. The first time she talked to Mosca about Mahoney was in a telephone conversation in October 2001. Plaintiff was unable to recall any details about this conversation (Miller Depo. at 152).

8. The second time she talked to Mosca was in a telephone conversation at the end of October, 2001, about a week before she left her employment with Edward Jones (Miller Depo. at 152). She called Mosca from her cell phone in tears after walking out following an incident in which she felt Mahoney had been "badgering" her and calling her names and blaming her for a situation which had made a client upset (Miller Depo. at 153-54).

9. In this second conversation with Mosca, Plaintiff told Mosca she was "having a lot of trouble" with Mahoney and "can't go back there" (Miller Depo. at 154-55). Plaintiff told Mosca that Vasil and Commander had told her to call Associate Relations. Mosca said Plaintiff should

probably just return to the office "and act like nothing happened," which is what she did (Miller Depo. at 155).

10. According to Mosca's description of this conversation, in November, 2001, Plaintiff called Mosca using Plaintiff's cell phone (Mosca Depo. at 39). Plaintiff seemed upset, and was complaining about Mahoney, telling Mosca that he had called Plaintiff up and told her to get him breakfast and lunch and that he was "very difficult to work for," referring to him raising his voice and being abrasive (Mosca Depo. at 39-40, 42-43).

11. Mosca says she told Plaintiff she should return to the office, talk to Mahoney, and discuss the situation with someone with the Edward Jones Associate Relations Department in St. Louis (Mosca Depo. at 40-41, 43 ).

12. Mosca's only other conversations with Plaintiff occurred when Mosca called Mahoney's office and Plaintiff answered the phone (Mosca Depo. at 47). Mosca does not recall any discussion of problems between Plaintiff and Mahoney on these occasions, testifying she just exchanged pleasantries with Plaintiff (Mosca Depo. at 47).

13. At no time did Plaintiff tell Mosca that Mahoney made any comments or engaged in any conduct of a sexual nature or regarding Plaintiff's age or religion (Mosca Depo. at 62-63). At no time did Plaintiff tell Mosca that Mahoney engaged in any sex discrimination or raise discrimination or other issues concerning Plaintiff's sexual orientation (Mosca Depo. at 63).

14. In response to inquiries from Mahoney regarding his desire to hire a different BOA, Mosca talked to Steve Rarick and learned that Plaintiff was on "administrative leave" (Mosca Depo. at 23-27).

15. The fact Plaintiff was on "administrative leave" also came up in discussions Mosca had with Woodward about various issues in Mosca's region, in which she came to understand that Plaintiff was on administrative leave because of "sexual harassment issues or reasons why . . . they couldn't get along" (Mosca Depo. at 31-32). Mahoney's sexual orientation came up, but

Mosca did not understand what it had to do with his relationship with Plaintiff (Mosca Depo. at 32).

Respectfully submitted,

DEFENDANT Barbara Mosca

By: _____
Michael N. LaVelle, Esq. 06170
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006
(203) 330-2000
(203) 330-2288 (Facsimile)

By: _____
Fred A. Ricks, Jr., Esq.
Harris Dowell Fisher & Harris, L.C.
15400 South Outer Forty, Suite 202
St. Louis, Missouri 63017
(636) 532-0300
(636) 532-0246 (Facsimile)

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, to the following parties:

Peter E. Gillespie, Esq.
Attorney at Law
46 Riverside Avenue
Westport, CT 06880
(203) 227-7000

Vlad Spitzer, Esq.
Spitzer & Brey, LLC
239 Main Street, 2nd Floor
Westport, CT 06880
(203) 226-3266 Ext. 14

_____