UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARIAN DEBORAH MILLER,

    Plaintiff,

vs.

EDWARD D. JONES & CO., L.P.,
MICHAEL MAHONEY, MICHAEL
CUMMINS, BARBARA MOSCA, and
STEVEN RARICK,

    Defendants.

CIV NO.
3:03CV 0193 (DJS)

April 29, 2004

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FILED ON BEHALF OF DEFENDANT STEVEN RARICK

### I. INTRODUCTION

This court should grant the motion of Defendant Steven Rarick ("Rarick") for summary judgment on all counts. Discovery has been completed, there is no genuine issue of material fact, and Rarick is entitled to judgment as a matter of law.

### II. FACTS

The facts are set forth in detail in the Local Rule 56(a)1 Statements of Edward Jones[1] and the other individual Defendants, which are incorporated herein by reference. The essential facts can be summarized more briefly as follows:

Defendant Steven Rarick is employed by Edward Jones at its home offices in St. Louis, Missouri as the team leader of the resolution team in the Edward Jones Associate Relations department. As such, his duties include conducting investigation and resolution of allegations of inappropriate conduct by Edward Jones employees (Jones Stmt. ¶4). The Associate Relations Department has exclusive authority and

---

[1] Hereinafter cited as "Jones Stmt."

1

responsibility over discrimination or harassment concerns under the Edward Jones discrimination and harassment policies (Jones Stmt. ¶¶13-15).

Rarick was not aware before Plaintiff walked out on November 9, 2001, that she claimed to have had problems with Mahoney involving issues relating in any way to matters of sexuality or sexual orientation. Rarick first became aware of problems of any kind between Plaintiff and Mahoney only after Plaintiff had walked out, when she wrote him complaining about Mahoney's conduct. Nowhere in this letter was there any indication Plaintiff was complaining about sex discrimination, sexual harassment, sexual orientation discrimination, religious discrimination, or age discrimination. (Jones Stmt. ¶¶84-90, 117-18.)

Although Rarick did not understand Plaintiff to be claiming Mahoney had engaged in any unlawful employment practices, he was concerned about her allegations. He therefore immediately commenced an investigation, involving conversations with Plaintiff and Mahoney, and with others who might have relevant knowledge or whom Plaintiff claimed would substantiate her allegations. (Jones Stmt. ¶91.)

Rarick's investigation confirmed there had been friction between Plaintiff and Mahoney (Jones Stmt. ¶¶92, 93, 100, 101, 104-107, 110). It also disclosed that Mahoney had expressed some performance concerns about Plaintiff, particularly excessive personal cell phone calls, that were corroborated by others (Jones Stmt. ¶¶101, 102, 108, 114). Plaintiff's denials of such calls were contradicted by several witnesses (Jones Stmt. ¶¶108, 114). Additionally, one witness not employed by Edward Jones contradicted Plaintiff's version of their conversation, further diminishing her credibility (Jones Stmt. ¶¶113, 120). Mahoney denied Plaintiff's allegations about his

2

conduct, and informed Rarick of inappropriate conduct by Plaintiff, including conduct of a sexual nature. (Jones Stmt. ¶122-27.)

Plaintiff demanded Mahoney's "discharge from employment as a condition of her returning to work," but Rarick concluded that while Mahoney was a difficult person with whom to work, his conduct did not constitute unlawful employment discrimination and did not violate Edward Jones' policies. He concluded Mahoney had not engaged in conduct warranting discharge. Instead, although Rarick's investigation was inconclusive, he reminded Mahoney of Edward Jones' policies prohibiting employment discrimination and sexual harassment and told him if he violated these policies, it would result in discipline up to and including discharge (Jones Stmt. ¶135, 148.)

From November 9, 2001 through December 31, 2001, while Rarick's investigation was in progress, Plaintiff was on a paid leave of absence. Thereafter, her position was still held open and efforts were made to return her to work until she made it clear that she was not interested. (Jones Stmt. ¶¶ 96, 102, 137, 140, 142, 143-52.)

Edward Jones formally terminated Plaintiff's employment March 5, 2002, almost four months after she had walked out. By that time, she had been retained on leave, paid or unpaid, for approximately the same duration as the brief period of her active employment (July 7, 2001 – November 9, 2001). A final letter to her attorney had made clear to her that Edward Jones would view a failure to respond and continued refusal to return to work as a resignation. (Jones Stmt. ¶¶151, 152.)

### III. ARGUMENT

A.  **Rarick Is Entitled To Summary Judgment On Plaintiff's CFEPA Retaliation Claim (Count Six).**

In Count Six, Plaintiff seeks to recover for retaliation in violation of the CFEPA, Conn. Gen. Stat. §46a-60(a)(4). Defendant Rarick is entitled to summary judgment on Count Six for the same reasons Edward Jones is entitled to summary judgment on

3

Plaintiff's federal and state retaliation claims against it in Counts Four and Six. Plaintiff makes no allegation of retaliatory conduct by Rarick that is not covered in the arguments on Counts Four and Six in the Memorandum In Support Of Motion For Summary Judgment Filed On Behalf Of Defendant Edward D. Jones & Co., L.P. Such arguments are therefore incorporated herein by reference, and are equally dispositive of Plaintiff's retaliation claim against Rarick. Additionally, as discussed below in connection with aiding and abetting, an individual employee may not be held liable for retaliation under the CFEPA for acts committed in the course of employment.

### B. Rarick Is Entitled To Summary Judgment On Plaintiff's CFEPA Aiding And Abetting Claim (Count Seven).

In Count Seven, Plaintiff seeks to recover against defendant Rarick for aiding and abetting unlawful discriminatory employment practices in violation of the CFEPA, Conn. Gen. Stat. §46a-60(a)(5).[2] This claim is insufficient as a matter of law.

### C. Under the CFEPA, An Individual Employee Cannot Be Held To Have Aided And Abetted His Or Her Own Employer.

Under the Connecticut Supreme Court's decision in *Perodeau v. City of Hartford*, 259 Conn. 729, 738, 792 A.2d 752, 758 (Conn. 2002), "individuals who are not employers may not be held liable under § 46a-60 (a)(1)," which is the CFEPA provision prohibiting discrimination by employers. Unlike §46a-60(a)(1), §§46a-60(a)(4) and (5) are not, by their terms, expressly limited to conduct by employers or their agents, but extend more broadly to "any person." This distinction might suggest that *Perodeau's* prohibition of individual liability does not extend to claims of retaliation and aiding and abetting under these sections. But examination of the reasoning of *Perodeau* discloses that these sections must not be construed as permitting liability of individual employees for acts committed in the course of their employment.

---

[2] Conn. Gen. Stat. § 46a-60(a)(4) provides that it is an discriminatory employment practice to "aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so. . . ."

4

In *Perodeau*, 792 A.2d at 759-61, the court discussed three policy reasons for its holding: 1) the inconsistency between protecting small employers while allowing individual employees to be sued; 2) "the legislature did not intend for individuals to be subject 'to the ever-present threat of a lawsuit each time they make a personnel decision'"[3] and 3) barring individual liability would not "open the floodgates of discrimination, [by] giv[ing] supervisors a free pass to discriminate," because "[a]n employer subjected to well-founded claims of employment discrimination as a result of an employee's intentional acts of discrimination is not likely to look favorably upon the offending employee [and] almost certainly will impose some form of discipline upon the offending employee."[4]

These reasons for barring individual liability under the primary discrimination prohibition of CFEPA are equally applicable to individual liability under the retaliation and aiding and abetting provisions. Particularly with respect to aiding and abetting, the *Perodeau* decision would be rendered null if every individual who participated in some way in challenged employment decisions or workplace conduct could be individually liable for aiding and abetting their employer. This would be an exception that would swallow the rule, making every supervisor subject "to the ever-present threat of a lawsuit each time they make a personnel decision." The "any person" language can still be given meaning as applying to other persons besides employers and their employees -- third parties such as customers, contractors, other employers, etc.

D.   **There were no unlawful discriminatory employment practices.**

Furthermore, even if individual liability for someone acting in his capacity were theoretically possible, Rarick cannot be liable under for aiding and abetting unlawful discriminatory employment practices under the CFEPA because, as discussed above

---

[3] *Quoting Reno v. Baird*, 18 Cal.4th 640, 662-63 (1998).
[4] *Quoting Reno*, 18 Cal.4th at 654-55.

and in the separate motions for summary judgment of Defendants Edward Jones, Cummins, and Mosca, no such CFEPA violations were committed by any Defendant, including Mahoney.

### E. Rarick's response to Plaintiff's complaints is the antithesis of aiding and abetting.

Additionally, as discussed in detail in the Memorandum In Support Of Motion For Summary Judgment Filed On Behalf Of Defendant Edward D. Jones & Co., L.P., Rarick responded promptly and reasonably to Plaintiff's complaints about Mahoney's conduct. He did not condone or ratify such conduct. To the contrary, he took it very seriously, engaged in a thorough investigation, and even though the evidence was at best inconclusive, warned Mahoney strongly against violations of Edward Jones' discrimination and harassment policies, as well as against retaliation. Such measures reasonably designed to prevent unlawful employment practices are precisely the opposite of aiding, abetting, inciting, compelling, or coercing the commission of such practices.

### F. Rarick cannot be held to have aided and abetted Mahoney because his conduct in this matter all occurred after Mahoney's.

Obvious as it may seem, one final point should be made. Aiding and abetting a CFEPA violation necessarily involves conduct that in some way assists, incites, compels or coerces the doing of a discriminatory act.[5] Logically, such conduct must occur before or during the discriminatory act. Here, the alleged the discriminatory acts by Mahoney occurred at a time when Rarick did not even know of Plaintiff's complaints. Therefore, Rarick's subsequent (allegedly inadequate) response to those complaints obviously involved nothing that could be construed as aiding and abetting Mahoney's conduct, as such conduct had already occurred without any help from Rarick. Rarick took no action

---

[5] Conn. Gen. Stat. § 46a-60(a)(4) provides that it is an discriminatory employment practice to "aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so. . . ."

6

whatsoever that had the intent or effect of assisting Mahoney in committing unlawful employment practices, let alone inciting, compelling, or coercing him to engage in such conduct.

### G. Rarick Is Entitled To Summary Judgment On Plaintiff's Intentional Infliction Of Emotional Distress Claim (Count 11).

In Count Eleven, Plaintiff seeks to recover for intentional infliction of emotional distress. Defendant Rarick is entitled to summary judgment on Count Eleven for the same reasons Edward Jones is entitled to summary judgment on this Count. Plaintiff makes no allegation of conduct by Rarick relevant to this Count that is not covered in the arguments on Count Eleven in the Memorandum In Support Of Motion For Summary Judgment Filed On Behalf Of Defendant Edward D. Jones & Co., L.P. Rarick did not engage in any conduct intended to cause emotional distress, nor did he have actual or constructive knowledge such distress was likely. Neither his conduct (even assuming, *arguendo*, that he negligently handled Plaintiff's complaints), nor that of Mahoney was extreme and outrageous in nature. Edward Jones' arguments on these points are therefore incorporated herein by reference, and are equally dispositive of Plaintiff's intentional infliction claim against Rarick.

## IV. CONCLUSION

For all of the above reasons, Defendant Steven Rarick is entitled to summary judgment on each of the three Counts directed against him.

Respectfully submitted,

DEFENDANT Steven Rarick

By: _____
Michael N. LaVelle, Esq.  06170
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006
(203) 330-2000
(203) 330-2288 (Facsimile)

7

By: _[signature]_
Fred A. Ricks, Jr., Esq.
Harris Dowell Fisher & Harris, L.C.
15400 South Outer Forty, Suite 202
St. Louis, Missouri 63017
(636) 532-0300
(636) 532-0246 (Facsimile)

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, to the following parties:

Peter E. Gillespie, Esq.
Attorney at Law
46 Riverside Avenue
Westport, CT 06880
(203) 227-7000

Vlad Spitzer, Esq.
Spitzer & Brey, LLC
239 Main Street, 2nd Floor
Westport, CT 06880
(203) 226-3266 Ext. 14

_[signature]_