Marian Debbie Miller                                    November 9, 2001
320 Strawberry Hill Ave.
Unit 29
Stamford, CT 06902
203 324-9449

Edward Jones Investments
Attention: Human Resources/
        Associate Relations
        Mr. Steve Rarizk



Dear Mr. Rarizk:

I am writing this letter to you as per the request of John Sullivan whom I spoke with this morning regarding the incidents that have occurred in the Stamford, CT. branch of Edward Jones Investments. (Branch #15807)

After working with the IR, Michael Mahoney, for over 3 months, I had to walk out of the branch this morning due to all the abusiveness and harassment that I have incurred since the inception of my position on July 11, 2001, as a BOA trainee.

From the very beginning, I found Mr. Mahoney to be very demanding and intrusive. However, I felt that I would try to make a go of working with him since I had heard good things from the employment agency, Eden Employment, about Edward Jones. After reading about Jones in my modules, I was proud to be a part of the team. My expectations with the company were high, and I very much wanted to make a career as a future Senior BOA with Jones. I made attempts to introduce my friends to the company so that they would perhaps begin investing with Jones.

After the first few weeks of employment with Mr. Mahoney, he insisted that we call on a BOA from Mike Cummins office in Saybrook, CT. to come to our office and help train me. She was very helpful however, Mr. Mahoney's constant interruptions made the sessions short and not much was actually accomplished.

The modules which I have been attempting to study on a regular basis have fallen behind schedule due to the fact that Mr. Mahoney has constantly interrupted my study time and has not designated any real time for me to review them. He, at one time, told me to call another BOA at another branch to have her send me answers to the tests so that I could get through them more quickly and "cheat" as he phrased it. I called her and asked for assistance on some questions and told her what he had said to me. She too was appalled as I was.

Everytime Mr. Mahoney found me studying my modules, he would interrupt me with another menial task that he wanted me to perform such as: make him coffee, go out and

get him lunch, water his plants, fax his condominium association paperwork of which he has recently become president, clean the office, and so on.

I have had several suspicions about Mr. Mahoney regarding my personal belongings since I found him sitting at my desk when I would return from the lavatory. My desk was in disarray as was my personal property. I had asked him on several occasions not to handle my things, but he only mocked me in disrespect. This occurred last Monday on November 5, 2001, as well as on October 31, 2001, October 8, 2001, and September 17, 2001 and on other occasions which I have no dates for since I was not sure that this would become a regular trend.

Mr. Mahoney has called me at home many times disturbing me in the evening and early morning asking me for personal favors. Furthermore, I was home sick on September 14, 2001, and his repeated telephone calls were so disturbing and threatening to my position at Jones, that I got dressed and went to work to appease him. He has called me at home on both of my telephone lines and has accused me of running a business from my home. I had run a business in the past and had ceased business activity on October of 2000. I have not been able to change the message tape on the answer machine since its old and the manual has been misplaced. He accused me of this on November 7, 2001 when he made a phone call to my home early that morning. I was taking my son to school and was not home to receive the call.

On November 1, 2001, Mr. Mahoney told me to go home and type a letter for him my own personal computer and print 125 copies for him for which he did not reimburse me. He had also asked me to ask my son to do some graphic work for a letter he needed and did not compensate me for that as well.

I had a dispute with Mr. Mahoney last Thursday on November 1, 2001, concerning some trades that he did for a client. She had received a check for a lesser amount than Mahoney had quoted her and complained to me that Mahoney had cheated her out of $200. The trades occurred on 10/24/01. Mahoney failed to put in the trades right away and lost some money in the end. I asked him to deal with these matters and he told me to take care of the client stating that it was part of my job to cover his mistakes. I could only explain market fluctuations, but that was all I am permitted to do. When the client had originally called to place the trades, Mahoney was engaged in another phone call. I had intercomed him to let him know that a trade was holding and he made light of it. I later called the new region leader from my cell phone for advice at that point and she told me to go back to the office and resume my duties.

On another occasion, a client had requested the sale of some IBM, and wanted funds wired to him. The client called me 4 days later to ask where the funds were and I told him that I was unaware that any funds were supposed to be wired. The client had stated that he called Mike and asked him to do the sale. I asked Mr. Mahoney what had happened since I did not see the trade on the activity screen. His reply was that he forgot to do the trade. He was amused by the whole incident.

Mr. Mahoney has asked me to perform a number of office duties and when I have, he has been nothing but critical and verbally abusive. He has left trash and garbage all over the office and tells me to clean up. I have made many attempts to organize the office and he continues to disturb the assemblance. Whenever he asks me to attempt a seminar for him and make arrangements for it, he decides to cancel. His erratic behavior has truly upset me.

Last week, Mr. Mahoney asked me to do an ACAT for a new client that he had not yet met. He had possession of her statements from her husband whom he had met the week prior. I told him that I would lose my job if I attempted that since the account was not yet opened. He told me that he had already opened the account and wanted funds brought over to Jones. I asked him for a client signature on the form, and he told me that she would sign when she came in. I had to refuse him his request since there was no signature. This occurred on 11/1/01 when I called the regional leader.

On October 18,2001, my older son was hit by a car while crossing the street in Atlanta. He is a student at a university there and I received an emergency call. I had to leave the office. Mr. Mahoney had called in a few moments later since he was on his way to a meeting. I told him that I needed to leave. He was extremely unreasonable about me leaving. I called St Louis and spoke to a person named Amy. She gave me the permission to go home and take care of my family emergency.

Mr. Mahoney requires that I stay late in the office and not submit my overtime since it comes out of his P&L. He has detained me on many occasions and I have missed personal appointments because of these delays. In addition, I have refrained from registering for medical benefits at Jones due to the fact that Mr. Mahoney's erratic behavior and volatility has caused me much concern. Consequently, I could not relinquish my present coverage.

Mr. Mahoney has been abusive both verbally and emotionally to me. He has also been intrusive and condescending to me and makes comments about what he thinks my personal life is like. Futhermore, he has been out on several interviews with other investment firms seeking employment everywhere making me scared of losing my employment. In addition, he makes offensive gestures in my presence when he is on the phone with staff members in St. Louis and remarks how stupid Mid Westerners are. He has painted a very poor picture of the company, and I cannot continue to work directly for him. I have had to see my doctor for medication for my nerves on September 4, 2001. My hair is falling out, and I am experiencing intestinal problems due to the stress that he has caused me.

Finally, when I arrived at work this morning at 8:40 I apologized to him for the delay. I told him that I was not feeling well and had some stomach disturbance. He told me not to come in if I'm sick. He then told me to listen to a message that was left for me on the voice mail. The message was in fact for him and not for me. It was from an irate client whose Jones check had bounced. It was his error and he, as expected, blamed the incident on me yelling accusations and engaging in name- calling. He had me in tears once again!

Incidences such as the ones mentioned above occurred, at the very least, twice a week. Mr. Mahoney's lack of professionalism and demeanor, his false accusations, as well as his verbal abusiveness and harassment has caused me much discomfort both emotionally and physically. I had no choice but to leave the office and I am seeking your assistance at this time. Please be advised that I have called regional leaders and have asked for assistance in the past.

Thanking you in advance for your help.

Respectfully,

Marian Debbie Miller

# SPITZER, SUNDHEIM & BREY, L.L.C.
### ATTORNEYS AT LAW

| | | |
|---|---|---|
| 350 BEDFORD STREET - 4TH FLOOR<br>STAMFORD, CONNECTICUT 06901 | PLEASE REPLY TO STAMFORD OFFICE | 123 MAIN STREET - 17TH FLOOR<br>WHITE PLAINS, NEW YORK 10601 |
| (203) 316-8422<br>FAX (203) 357-7856 | | (914) 949-5322<br>FAX (914) 946-5422 |

VLAD G. SPITZER
vgspitzer@ssbllc.com

November 21, 2001

**Via Facsimile & Federal Express**

Mr. Steven Rarick
Human Resources/Associate Relations
Edward Jones Investments
12555 Manchester Road
St. Louis, MO  63131-3729

EXHIBIT
B

      **Re:    Marian Deborah Miller**

Dear Mr. Rarick:

     This firm represents Ms. Debbie Miller in connection with the discriminatory and retaliatory treatment she has been subjected to during her employment with Edward Jones Investments ("Edward Jones").

     As you know, during the four months of Ms. Miller's employment with Edward Jones she has been repeatedly harassed by Michael Mahoney, her supervisor in Edward Jones' Stamford, Connecticut office.  This harassment has included, among other things, ongoing references and questions concerning Ms. Miller's sexuality, questions about the sexuality of her sons, and comments and questions regarding Ms. Miller's relationship with her boyfriend.  Mr. Mahoney stated that Ms. Miller would make a good lesbian and should frequent the "lipstick lesbian" bars in New York City.  Mr. Mahoney even went so far as to ask whether Ms. Miller's sons were gay, and what she would think and do if her sons were homosexual.  Needless to say, these comments and questions, and many others like them, were outrageous and were extremely disturbing to Ms. Miller.

     In addition, Mr. Mahoney frequently made derogatory references to Ms. Miller's age, and refused Ms. Miller the right to take-off certain Jewish holidays.  With regard to Yom Kippur and Rosh Hashanah, Ms. Miller insisted on observing these important holidays and was forced to do so without pay.  Mr. Mahoney also engaged in threatening behavior, often blamed Ms. Miller for problems not of her making, and even pressured Ms. Miller to engage in improper activity.

On several occasions, and most recently this last Friday, Ms. Miller has informed you and Edward Jones of Mr. Mahoney's behavior. Your response was that Ms. Miller would be utilized "as needed" at other Edward Jones offices in the area when other employees were not available. It is unclear at this point whether Edward Jones intends to continue to pay Ms. Miller her full salary. What is clear is that Edward Jones has done nothing to remedy the hostile work environment created by Mr. Mahoney, but rather has condoned it. At this point, Ms. Miller is frightened to return to work with Ms. Mahoney as Edward Jones has failed to remedy the discriminatory, retaliatory and threatening behavior exhibited by Mr. Mahoney. She fears for her safety, and cannot under any circumstances return to work with Mr. Mahoney.

Mr. Mahoney's outrageous behavior, and Edward Jones failure to remedy the situation, has caused Ms. Miller extreme emotional distress to the point where she has been forced to seek out and receive care for the conditions that resulted from the treatment at Edward Jones. If Edward Jones is interested in resolving this matter, either you or your attorneys should contact me as soon as possible. Otherwise, we will promptly move to pursue Ms. Miller's legal remedies.

Very truly yours,

Vlad G. Spitzer

## McMAHON, BERGER, HANNA, LINIHAN, CODY & McCARTHY
### ATTORNEYS AT LAW - A PROFESSIONAL CORPORATION

ALAN I. BERGER 1933-1999
THOMAS M. HANNA
D. MICHAEL LINIHAN
WILLIAM W. CODY
THOMAS O. McCARTHY
ROBERT W. STEWART
JAMES N. FOSTER, JR.
DANIEL R. BEGIAN
JOHN B. RENICK
PATRICIA M. McFALL
FRED A. RICKS, JR.
KEVIN J. LORENZ
THOMAS E. BERRY, JR.
STANLEY O. SCHROEDER
SHELLEY M. ROITHER
GEOFFREY M. GILBERT, JR.

2730 NORTH BALLAS ROAD · SUITE 200
POST OFFICE BOX 31901
ST. LOUIS, MISSOURI 63131-3039

TELEPHONE 314-567-7350
FACSIMILE 314-567-5968
lawfirm@mcmahonberger.com

MICHELLE M. CAIN
STEPHEN B. MAULE
STEPHANIE O. ZORN
WILLIAM M. LAWSON
WILLIAM B. JONES
BURTON D. GARLAND, JR.
MARY CARTER DUNCAN
ROBERT D. YOUNGER
GREGORY A. SHOEMAKER
JEFFREY M. LINIHAN
COURTNEY E. GODDARD
OF COUNSEL
RALPH E. KENNEDY
CHARLES W. AHNER, JR.

January 18, 2002

**VIA FACSIMILE (203) 357-7856**

Vlad G. Spitzer, Esq.
Spitzer, Sundheim & Brey, LLC
350 Bedford St., 4th Floor
Stamford, CT 06901

      Re:    Marian Deborah Miller v. Edward D. Jones & Co.
             Our File No. EDJ-67

Dear Mr. Spitzer:

      You told me in December that Marian Deborah Miller will never return to work at the branch office where she worked in Stamford, Connecticut and Michael Mahoney was the Investment Representative. It has come to my attention that Ms. Miller still has the Post Office Box key for this Stamford, Connecticut branch office. Because you informed me that Ms. Miller will never return to work at that branch office, for security reasons it is important that she return her key to the branch office's Post Office Box. It is acceptable if she gives that key to you. You can then send the Post Office Box key to me. If Ms. Miller wants to return the Post Office Box key directly to the branch office, that also is acceptable. Please contact me to let me know how Ms. Miller will return the Post Office Box key to Edward Jones.

                            Very truly yours,

                            Fred A. Ricks, Jr.

FAR/kds



EXHIBIT
C

bcc: Mr. Steve Rarick (via facsimile)

## McMAHON, BERGER, HANNA, LINIHAN, CODY & McCARTHY
### ATTORNEYS AT LAW - A PROFESSIONAL CORPORATION

ALAN I. BERGER 1933-1999

THOMAS M. HANNA

D. MICHAEL LINIHAN

WILLIAM W. CODY

THOMAS O. McCARTHY

ROBERT W. STEWART

JAMES N. FOSTER, JR.

DANIEL R. BEGIAN

JOHN B. RENICK

PATRICIA M. McFALL

FRED A. RICKS, JR.

KEVIN J. LORENZ

THOMAS E. BERRY, JR.

STANLEY G. SCHROEDER

SHELLEY M. ROITHER

GEOFFREY M. GILBERT, JR.

2730 NORTH BALLAS ROAD - SUITE 200

POST OFFICE BOX 31901

ST. LOUIS, MISSOURI 63131-3039

TELEPHONE 314-567-7350

FACSIMILE 314-567-5968

lawfirm@mcmahonberger.com

MICHELLE M. CAIN

STEPHEN B. MAULE

STEPHANIE O. ZORN

WILLIAM M. LAWSON

WILLIAM B. JONES

BURTON D. GARLAND, JR.

MARY CARTER DUNCAN

ROBERT D. YOUNGER

GREGORY A. SHOEMAKER

JEFFREY M. LINIHAN

COURTNEY E. GODDARD

JEFFREY D. HACKNEY

OF COUNSEL

RALPH E. KENNEDY

CHARLES W. AHNER, JR.

February 21, 2002

## VIA FACSIMILE (203) 357-7856

Vlad G. Spitzer, Esq.
Spitzer, Sundheim & Brey, LLC
350 Bedford St., 4th Floor
Stamford, CT 06901



Re:    Marian Deborah Miller v. Edward D. Jones & Co.
       Our File No. EDJ-67

Dear Mr. Spitzer:

Yesterday afternoon I made another unsuccessful attempt to contact you by telephone concerning this matter. You told me in December that Marian Deborah Miller will never return to work at the branch office where she worked in Stamford, Connecticut. On December 20, 2001 I made a settlement offer to you of one month pay, continuation of group health insurance benefits for a period of time to be negotiated, a brief letter of reference stating that Ms. Miller voluntarily resigned from her employment with Edward Jones, the dates of her employment, her job title and job duties plus a statement that her job performance was satisfactory or met expectations. In exchange, Ms. Miller would provide Edward Jones with a full release of any and all claims arising out of her employment. The Separation Agreement would also include a non-disclosure clause providing that Ms. Miller would keep the Agreement confidential and that she would not make disparaging remarks concerning either Edward Jones and its employees. Finally, the Separation Agreement would also include a non-admissions clause stating that entering into the Agreement was not an admission of wrongdoing or liability either by Ms. Miller or by Edward Jones.

If you have any interest in resolving this matter, please contact me. At this point, Edward Jones still considers Ms. Miller to be an employee on a leave of absence. Because you have never responded to my December 20, 2001 settlement offer Ms. Miller is no longer on a paid leave of absence. If this matter has not been resolved or if I have not heard from you by the end

Vlad G. Spitzer, Esq.
February 21, 2002
Page 2


of February, Edward Jones will consider Ms. Miller's employment to have terminated effective
February 28, 2002 because of her voluntary resignation.

Very truly yours,

Fred A. Ricks, Jr.

FAR/kds

McMAHON, BERGER, HANNA, LINIHAN, CODY & McCARTHY

ATTORNEYS AT LAW - A PROFESSIONAL CORPORATION

ALAN I. BERGER 1933-1999
THOMAS M. HANNA
D. MICHAEL LINIHAN
WILLIAM W. CODY
THOMAS O. McCARTHY
ROBERT W. STEWART
JAMES N. FOSTER, JR.
DANIEL R. BEGIAN
JOHN B. RENICK
PATRICIA M. McFALL
FRED A. RICKS, JR.
KEVIN J. LORENZ
THOMAS E. BERRY, JR.
STANLEY G. SCHROEDER
SHELLEY M. ROITHER
GEOFFREY M. GILBERT, JR.

2730 NORTH BALLAS ROAD - SUITE 200
POST OFFICE BOX 31901
ST. LOUIS, MISSOURI 63131-3039
——————
TELEPHONE 314-567-7350
FACSIMILE 314-567-5968
lawfirm@mcmahonberger.com

February 28, 2002

MICHELLE M. CAIN
STEPHEN B. MAULE
STEPHANIE O. ZORN
WILLIAM M. LAWSON
WILLIAM B. JONES
BURTON D. GARLAND, JR.
MARY CARTER DUNCAN
ROBERT D. YOUNGER
GREGORY A. SHOEMAKER
JEFFREY M. LINIHAN
COURTNEY E. GODDARD
JEFFREY D. HACKNEY
OF COUNSEL
RALPH E. KENNEDY
CHARLES W. AHNER, JR.

**VIA FACSIMILE (203) 357-7856**
**and REGULAR U.S. MAIL**

Vlad G. Spitzer, Esq.
Spitzer, Sundheim & Brey, LLC
350 Bedford St., 4th Floor
Stamford, CT 06901



            Re:    Marian Deborah Miller v. Edward D. Jones & Co.
                   Our File No. EDJ-67

Dear Mr. Spitzer:

        I received your letter dated February 22, 2002. This will also confirm our telephone call yesterday, February 27, 2002.

        Edward Jones offered Ms. Miller the opportunity to return to work in the branch office where she has been employed. Based on your representations, it is Edward Jones' understanding the Ms. Miller has elected not to return to work from her leave of absence. You stated that her position on this is final.

        Edward Jones investigated Ms. Miller's complaint against Michael Mahoney. There was no complaint of any requests for sexual favors or requests for any conduct of a sexual nature. There was also no complaint of any touching or physical contact of a sexual nature. At most there was a complaint of some isolated comments with some mention of sexuality, primarily having to do with sexual orientation. According to Ms. Miller, Mr. Mahoney is gay and Ms. Miller is heterosexual. Your November 21, 2001 letter mentions Mr. Mahoney making comments favorable to a gay and lesbian lifestyle and that Ms. Miller was offended by those comments.

Vlad G. Spitzer, Esq.
February 28, 2002
Page 2

It is Edward Jones position that it was inappropriate for Mr. Mahoney to have made any comments of a sexual nature in the workplace. Consequently, Edward Jones warned Mr. Mahoney for violating Edward Jones' policy prohibiting such conduct. Edward Jones gave Mr. Mahoney a "last chance" warning that any future violation of Edward Jones' policy would result in immediate discharge. Edward Jones also warned Mr. Mahoney that absolutely no retaliation against Ms. Miller would be tolerated for her having complained about his conduct. In spite of this, Ms. Miller demands Mr. Mahoney's discharge from employment as a condition of her returning to work. However, based on the information Ms. Miller provided, Edward Jones believes that Mr. Mahoney's conduct did not warrant discharge.

In your letter and in our telephone conversations you asserted that Ms. Miller is frightened to return to wok with Mr. Mahoney and that she fears for her safety. In spite of my requests, you never offered any reason or facts to explain why you assert that Ms. Miller is frightened or fearful. In our telephone conversation yesterday you indicated her feelings were because he sometimes yelled, raised his voice, and that she felt he treated her with a lack of respect and lack of courtesy. However, Edward Jones is still not aware of any threats of violence or threats to her safety. Particularly in view of Edward Jones' policy prohibiting retaliation and Edward Jones' warning to Mr. Mahoney prohibiting any retaliation, Ms. Miller's refusal to return to work is unreasonable. She should not just assume the worst and refuse to return to work.

Edward Jones is concerned that Ms. Miller's response to Mr. Mahoney may itself be based on sex discrimination by Ms. Miller because of Mr. Mahoney's sexual orientation. Otherwise, there appears to be no basis for her refusal to return to work.

Based on your communications, it is Edward Jones' understanding that Ms. Miller absolutely refuses to return to work and that her decision is final. Therefore, unless I hear from you otherwise, Edward Jones will consider Ms. Miller's refusal to return to work as her voluntary resignation. If this is not what you and Ms. Miller intend, then you must contact me in writing before the close of business today. Otherwise, Ms. Miller's resignation from Edward Jones will be effective at the close of business today.

Very truly yours,

Fred A. Ricks, Jr.

FAR/kds

Vlad G. Spitzer, Esq.
February 28, 2002
Page 3


bcc:    Mr. Steve Rarick