UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------X

MARIAN DEBORAH MILLER,

                Plaintiff,

-against-

EDWARD D. JONES & CO., L.P.,
MICHAEL MAHONEY, MICHAEL
CUMMINS, BARBARA MOSCA, and
STEVEN RARICK,

                Defendants.

------------------------------------------------------------X

CIV NO.
3:03CV 0193 (MRK)

June 25, 2004

## LOCAL RULE 56(a)2 STATEMENT IN OPPOSITION TO DEFENDANT MICHAEL MAHONEY'S MOTION FOR SUMMARY JUDGMENT

1. Admits the allegations contained in paragraph 1

2. Admits the allegations contained in paragraph 2

3. Admits the allegations contained in paragraph 3

4. Admits the allegations contained in paragraph 4

5. Admits the allegations contained in paragraph 5

6. Admits the allegations contained in paragraph 6

7. Admits the allegations contained in paragraph 7

8. Admits the allegations contained in paragraph 8

9. Denies the allegations contained in paragraph 9 and states that the letter contained numerous statements to indicate that Plaintiff may have been harassed including words like "abusiveness and harassment." (Miller Depo. at 181)

10. Admits the allegations in paragraph 10

11. Admits the allegations in paragraph 11

12. Admits the allegations in paragraph 12

13. Admits the allegations in paragraph 13 in so far as Plaintiff having received the sexual harassment policy and related materials and denies the allegations that she never contacted the Associate Relations department in St. Louis. Plaintiff spoke with both John Sullivan and Steve Rarick of that department of her complaints. (Miller Depo. at 176, 178, 203-207)

14. Admits the allegations in paragraph 14 insofar as Plaintiff having had conversations with Cummins and Mosca. But denies the unfounded conclusion that there was no reference to discriminatory, harassing or retaliatory conduct.

15. Admits the allegations contained in paragraph 15

16. Admits the allegations contained in paragraph 16

17. Admits the allegations contained in paragraph 17

## DISPUTED ISSUES OF MATERIAL FACT

1. Plaintiff was discriminated against in terms and conditions of her employment on the basis of her gender, age religion, and sexual orientation and subsequently terminated from from Edward Jones after having complained about the sexual harassment she was subjected to by Michael Mahoney. (Complaint, paragraph 2)

2. Edward Jones did not maintain an effective sexual harassment policy. In addition, there had never been any sexual harassment training at Edward Jones

at the time of Plaintiff's termination. Edward Jones did not follow proper procedures mandated by their sexual harassment policy in that it failed to properly investigate Plaintiff's complaints and/or resolve those complaints. (Complaint, paragraph 6)

3. Plaintiff made complaints about Mahoney's treatment of her, first to John Sullivan and then at Sullivan's bequest, to Steven Rarick. Both of whom are Human Resources Employees of Edward Jones. (Rarick Affidavit at 2)

4. Plaintiff's letter, describes Mahoney's conduct as "verbally and emotionally abusive," "erratic," "intrusive," "condescending," as "making comments about my personal life," making "offensive gestures," "name calling," (Exhibt A, Rarick Affidavit and Rarick Affidavit at 2)

5. Rarick commenced an investigation into Plaintiff's allegations against Mahoney in her letter to John Sullivan. (Rarick Affidavit, paragraph 8)

6. Rarick spoke on the telephone with the Plaintiff on November 12, 2001 with Plaintiff about her allegations against Mahoney. (Rarick Affidavit, paragraph 9-15)

7. Mahoney discussed "lesbianism" with Plaintiff. (Miller Depo. at 300)

8. Mahoney asked Plaintiff to take a number of his lesbian clients out for dinner (Miller Depo at 300, 304-305).

9. Mahoney stated to Plaintiff that she "would make a good lipstick lesbian" (Miller Depo at 300)

10. Mahoney stated to Plaintiff that he had somebody who was gay and worked for him and he liked that a lot and it was too bad she wasn't gay" (Miller Depo. at 302, 304)

11. Mahoney would put on Plaintiff's scarves and her coat and parade around the office. (Miller Depo. at 303)

12. Mahoney asked Plaintiff whether either of her sons were gay. (Miller Depo. at 124-125)

13. Mahoney asked Plaintiff questions and made comments about Plaintiff's boyfriend stating that if Plaintiff was no longer seeing him that Mahoney could and that Plaintiff's boyfriend would enjoy Mahoney better. (Miller Depo. 73-74, 186-187)

14. Mahoney stated to Plaintiff that he would like her to be a lesbian, stating that she "would make a wonderful lipstick lesbian, and that [she] should frequent the…lipstick lesbian bars in New York and that [she] should pick up clients for him that way. (Miller Depo. at 186, 188-89, 304)

15. Mahoney stated to Plaintiff that some of the lesbian clients would like Plaintiff and she could take them out for dinner. (Miller Depo. at 186, 305)

16. Plaintiff testified that her objection to her entertaining Mahoney's lesbian clients changed his mood, demeanor, and behavior towards her. (Miller Depo. 304-305)

17. Mahoney asked to borrow clothing Plaintiff was wearing on a number of occasions. (Miller Depo. 312, 368)

18. Mahoney made references on a daily basis to his homosexual clients as being "cute," or whether he was a "top" or "bottom." (Miller Depo. at 195-196, 200)

19. Mahoney "told [Plaintiff] a few times that she had a nice rack," which she understood to mean that "she had nice breasts." (Miller Depo. at 199)

20. Mahoney called Plaintiff at home during non-working hours several times a week, asking her to pick up coffee and a bagel or muffin for his breakfast. (Miller Depo. 333-336)

21. Mahoney asked Plaintiff about her sexual relations with her boyfriend. ( Miller Depo. 334, 336-37)

22. Mahoney discussed the sexual orientation of her children with Plaintiff (Miller Depo. 334, 337-338)

23. Mahoney put on Plaintiff's scarf and coat on a number of occasions and "parading around the room." (Miller Depo. 182, 334, 338)

24. Mahoney moved Plaintiff's handbag under her desk during her absence leaving its contents in "disarray" (Miller Depo. 182, 334, 340)

25. Mahoney told Plaintiff that he was 12 years younger faster than she was. Plaintiff asked if Mahoney was making a comment about her age and he responded that he was. (Miller Depo. at 232)

26. Mahoney stated that he could run circles around Plaintiff and that she was too old for her job. (Miller Depo. at 237)

27. Mahoney told Plaintiff that if she didn't work on two Jewish holidays that she would get fired. (Miller Depo. at 125)

28. Mahoney told Plaintiff was not allowed to take off two days for the Jewish holiday of Succoth. (Miller Depo. at 315)

29. Mahoney made fun of the Jewish holiday of Rosh Hashanah by referring to it as "Rush Ahama." (Miller Depo. at 147)

30. Mahoney made fun of the Jewish holiday of Rosh Hashanah by referring to it as "rush-a –home-a." (Miller Depo. at 313)

31. Mahoney denied Plaintiff her request to leave early for Yom Kippur, instead keeping her half an hour late. (Miller Depo. 314)

32. Mahoney attempted to call Plaintiff at home on the Jewish holidays when Jews are not permitted to answer the telephone, which conduct Plaintiff thought was "absolutely humiliating." (Miller Depo. at 321.)

33. Plaintiff stated that that she reported problems she was having with Mahoney to Kristin Commander, Lynn Vasil, Michael Cummins, Barbara Mosca,

Shannon Bogus, Amy (Plaintiff did not remember her last name) John Sullivan, Steve Rarick, and Lynn Comida. ( Miller Depo. at 274-275)

34. The Edward Jones sexual harassment policy provides that general principals, department leaders, team leaders, managers, investment representatives, branch staff associates, regional leaders and associates in departments other than Associate Relations "have a responsibility to report information on sexual harassment to Associate Relations. (Miller Depo. Exhibit 12). Edward Jones nondiscrimination policy contains a similar provision (Miller Depo. Exhibit 11).

35. Commander and Vasil were the BOA's for Defendant Cummins office. (Miller Depo. at 59)

36. Commander visited the Stamford office where Plaintiff was working, twice. (Miller Depo. at 60, 396-397)

37. Plaintiff had dozens of conversations with Commander. (Miller Depo. at 119)

38. In those conversations Plaintiff told Commander that Mahoney was a " very inappropriate person to work for." That he was "intrusive." That his office decorum was "inappropriate" That his "demeanor was inappropriate." (Miller Depo. at 121)

39. Plaintiff told Commander that Mahoney would refer to his male homosexual friends as "she." That Mahoney would have "flamboyant" conversations in

the office causing Plaintiff to close the door to Mahoney's office for fear that clients sitting in the office could overhear Mahoney. (Miller Depo. at 123)

40. Commander told Plaintiff that Mahoney would throw paper at her. Commander told Plaintiff that Mahony had thrown a garbage can at his former BOA, Shannon Bogus and that Plaintiff should be careful. (Miller Depo. at 124)

41. Plaintiff told Commander that Mahoney had asked Plaintiff about whether one of her sons is gay. (Miller Depo. at 124)

42. Plaintiff told Commander that Mahoney threatened her with termination saying that "if you don't clean the office you're going to get fired," if you don't go get my lunch, you're going to get fired," "if you don't attend work on two separate Jewish holidays, you're going to get fired." (Miller Depo. at 125-126)

43. At one point around the "twelfth phone call" Commander and Lynn Vasil urged Plaintiff to report her concerns about Mahoney to "Human Relations." Whereupon Plaintiff stated back that she thought she would get fired if she talked about Mahoney's conduct. (Miller Depo. page 130)

44. Plaintiff told Vasil that Mahoney often sent her out to get his breakfast and lunch and had her make coffee and do personal work for him. Vasil said "she was not supposed to do any of that." (Miller Depo. at 85)

45. Plaintiff told Vasil that Mahoney "was very abusive" and had asked her son to do computer work for which he never paid him and that he had Plaintiff stay late to stuff envelopes for Mahoney's condominium association. (Miller Depo at 95-96)

46. Plaintiff told Vasil that Commander that Mahoney "would put her coat on and prance around the room and swing it about, including her scarf" (Miller Depo. at 17)

47. Plaintiff told Vasil and Commander that Mahoney asked her whether either of her sons were gay. (Miller Depo at 25)

48. Vasil and Commander told Plaintiff to contact the Associate Relations Department. ( Miller Depo. at 126)

49. Plaintiff contacted Associate Relations and spoke with Amy Draper telling her that Mahoney was "almost tyrannical" had intolerable mood swings and was very difficult to work with. Plaintiff also stated that Mahoney made fun of the Jewish holidays. Plaintiff requested that she be transferred to another office. (Miller Depo. at 146-147)

50. Plaintiff spoke with John Sullivan of the Associate Relations department. (Miller Depo. 176, 178)

51. Plaintiff told Sullivan that Mahoney's conduct was very abusive...intrusive and totally inappropriate." (Miller Depo. at 201)

52. Sullivan instructed Plaintiff to write to Steve Rarick in the Associate Relations Department about what happened with Mahoney. He told Plaintiff to make her letter "short and sweet." (Miller Depo. at 202)

53. In her letter to Rarick, Plaintiff did not include all her complaints because she stated she encompassed her complaints with the words "abusiveness and harassment." Otherwise the letter would have been too long. (Miller Depo. at 181)

54. Plaintiff said it was embarrassing to put the matter into writing and would have preferred to speak to someone about these issues. (Miller Depo. at 184)

55. Rarick had a discussion with Plaintiff about her letter to him on November 12, 2001. (Miller Depo. at 204)

56. Rarick's notes reflected that Plaintiff among other things, told him that Mahoney: "used profanity in the office," "called her stupid." "would say "fuck" at least a dozen times a day," "she would not be allowed to take a lunch break or if she did would have to pick up lunch for him." "called her at home in the morning and told her to bring him breakfast," "had her doing all of the office cleaning." (Miller Depo. at 206-207)

57. Plaintiff told Rarick that she was fearful of work in the office with Mahoney because: "He came too close to striking me and hurting me and I refuse to return there." (Miller Depo at 225)

58. As a result of Rarick's investigation Plaintiff was given the option of either returning to work with Mahoney or working on an "as-needed basis"

59. Plaintiff never stated that she would not return to work for Edward Jones but that she would not return to work with Mahoney. (Miller Depo. at 229)

The Plaintiff,
MARIAN DEBORAH MILLER,

Vlad G. Spitzer, Esq.
Federal Bar No. ct14260
Spitzer & Brey, LLC.
239 Main Street
Westport, CT 06880
(203) 316-8422

## CERTIFICATION

I hereby certify that pursuant to section 5(b) of the Federal Rules of Civil Procedure, a copy of the foregoing was mailed on June 25, 2004, postage prepaid to:

Fred A. Ricks, Jr. Esq.
Harris Dowell Fisher & Harris, L.C.
15400 South Outer Forty – Suite 202
St. Louis, Missouri 63017-2063

Michael N. LaVelle, Esq.
Pullman & Comley, LLC
850 Mail Street, P.O. Box 7006
Bridgeport, CT 06601-7006

Peter E. Gillespie, Esq.
46 Riverside Avenue
Westport, CT 06880

_____
Lewis D. Brey