proceeds in the face of such knowledge, where it would not be so if he did not know." (Internal quotation marks omitted.) Id. The requirement of outrageous conduct may arise where there is an "abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." Mellaly v. Eastman Kodak Company, 42 Conn.Sup. 17, 20 (1991, Berdon, J) quoting 1 Restatement (Second) of Torts Section 46, comment (d); Champion v. Lipscomb, supra 8 CSCR 562. Additionally, "alleged retaliatory conduct is that type of extreme and outrageous conduct, which, together with the other elements of the tort, constitutes intentional infliction of emotional distress." (internal quotation marks omitted). Talit v. Peterson, 44 Conn.Supp. 490, 498.

In the case at bar, Plaintiff alleges a series of incidents which, taken as a whole, amount to extreme and outrageous conduct by Edward Jones. As communicated by Plaintiff in her correspondence to Rarick on November 9, 2001, Plaintiff had suffered harassment at the hands of Mahoney since the inception of her position on July 11, 2001. Plaintiff worked in the close confines of an office with Mahoney, where she was subjected to his speculation regarding her sexual orientation, derogatory references to her age, religion, and gender. Connecticut courts consider "racial, ethnic, religious or sexual slurs" in the workplace sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress based on the "strong policy expressed by statute in [Connecticut] prohibiting discrimination on the basis of race, sex, or national origin." Leone v. New England Communications, 2002 WL 1008470, *3 (Conn.Super., April 10, 2002, Quinn, J.). Edward Jones Defendants go to great lengths to deny that Plaintiff reported Mahoney's harassing conduct from the beginning, insisting that they were only aware of Mahoney's harassing conduct in November, 2001, and even then choosing to characterize it as a "conflict of personalities." However, in July and August 2001, Plaintiff complained about Mahoney's harassing conduct including his comments of a sexual nature such as referring to her as a "lipstick lesbian" to Commander, who was witness to Mahoney's behavior that she acknowledged was "demanding"

29

and "condescending," which Plaintiff believed to be motivated by discrimination on the basis of her gender. Commander assured Plaintiff that she would inform Michael Cummins, the Regional Leader of Mahoney's behavior and indicated that Mahoney was already on probation. However, as a result of Plaintiff reporting Mahoney's harassing conduct to Commander, Mahoney angrily confronted Plaintiff in a threatening manner, which exacerbated the situation and caused Plaintiff to fear for her personal safety as well as her position.

Plaintiff disclosed to Rarick that she had complained repeatedly to regional leaders in the past, which included Cummins and Mosca. Pursuant to the "nondiscrimination" policy and "sexual harassment" policy, as regional leaders, these individuals are "specifically responsible for reporting to the Associate Relations Department any information/issue on the topic of harassment or discrimination, regardless of its source." However, Cummins proved ineffective in dealing with the situation. Additionally, instead of reporting or investigating Mahoney, Mosca insisted that Plaintiff ignore Mahoney and do her job. Moreover, Lyn Vasil, who admitted that Plaintiff had complained to her regarding Mahoney, acknowledged that he was "too demanding" and "overstepped his boundaries," blamed Plaintiff for allowing her supervisor, Mahoney to "overstep his boundaries."

As a result, regardless of the concerns raised regarding Mahoney, Edward's continued refusal to acknowledge and address Mahoney's continuously sexually harassing behavior, led Plaintiff to believe that Defendants were ineffective at dealing with the situation and its "non-discrimination" policy and "sexual harassment" policy were ineffective.

Defendants have chosen to penalize and attack Plaintiff for forcing their hand in dealing with Mahoney by labeling her "insubordinate," in spite of the fact Edward Jones Defendants admitted that "it was inappropriate for Mr. Mahoney to have made any comments of a sexual nature." After months of tolerating the hostile environment she was subjected to which went virtually ignored by Defendants, in fear for her safety, Plaintiff finally pleaded with Rarick via

correspondence and telephone to address Mahoney's sexually harassing conduct.[4] Additionally, counsel for Plaintiff forwarded Defendants correspondence detailing Plaintiff position and informed of her fear to return to such a hostile environment with the continued presence of Mahoney. Despite the severity of the incidents detailed in her complaint and the fact Edward Jones Defendants acknowledge that Mahoney engaged in offensive behavior which Rarick assured Plaintiff would lead to the termination of Mahoney's employment, Edward Jones Defendants refused to terminate Mahoney's position and in fact insisted that Plaintiff return to work with him in the close confines of his office instead of transferring her to another office as she repeatedly requested after placing her on a "as needed" basis for complaining about Mahoney, which forced her to remain unpaid for two months. In essence, Plaintiff would return to working under Mahoney, the man who had sexually harassed her and had confronted Plaintiff in a threatening manner when she had initially reported his conduct to Commander.

Edward Jones attempts to characterize the "pattern of conduct" as a "type routinely portrayed on network television," commenting, "many citizens have been subjected to comments, inquiries, and conversations on the subject of sexual orientation (their own and that of others) 'without catastrophic harm,'" and "[s]urely, untold millions of American workers silently endure such working conditions 'without catastrophic harm.'" Plaintiff vehemently disagrees with this callous characterization, and in permitting Defendant to do so, Edward Jones again attempts to minimize the damage done to Plaintiff, with the implication that if it is happening on television, she should just silently endure it. Unfortunately, this response is characteristic of the response that Plaintiff received for her numerous complaints after working in the close confines of an office with a man who speculated on the sexuality of her young children. Plaintiff provides a detailed account

---

[4] Defendants draw attention to and appear to mock the fact Plaintiff transmitted by facsimile correspondence to Rarick on November 9, 2001 twice. However, Plaintiff sent the document a second time when Rarick failed to respond after she had initially sent it, which he assured her he would, which prompted her to believe that either he was ignoring her complaint, which was consistent with Defendants' behavior in the past, or that he had not received it.

of incidents throughout her employment including Edward Jones' failure to effectively address Mahoney's harassing conduct for months, in fact encouraging it by forcing Plaintiff to work in close contact with him, refusing to address her complaints by reporting them to someone who could effectively deal with it as outlined in company policy, retaliating against Plaintiff after her complaints, and culminating with her subsequent termination that clearly illustrates the behavior of Edward Jones Defendants was indeed extreme and outrageous in order to support claims for intentional and negligent infliction of emotional distress. See also Lapadula v. City of Middletown, 1994 WL 450329, *2 (Conn.Super., Aug. 16, 1994, Gaffney, J.) (In an emotional distress case where "the inferences which the parties seek to have drawn with questions of motive, intent and subjective feelings and reactions," summary judgment is particularly inappropriate) (quoting Connell v. Colwell, 214 Conn. 242, 251 (1990)).

### b. Negligent Infliction of Emotional Distress

Although Edward Jones Defendants assert that Connecticut law precludes Plaintiff from relying on their extreme and outrageous conduct prior to the termination of her employment in order to maintain a claim for negligent infliction of emotional distress, Plaintiff alleges a sufficient claim for negligent infliction of emotional distress and a question of fact exists as to whether Edward Jones' conduct was in fact negligent with regard to its treatment and termination of Plaintiff.. The tort of negligent infliction of emotional distress has been recognized relatively recently in Connecticut. In the seminal decision of Montinieri v. Southern New England Telephone Co., 175 Conn. 337 (1978), the Connecticut Supreme Court allowed recovery for unintentionally caused emotional distress if the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that the distress, if caused, might result in illness or bodily harm. "Emotional distress can be a foreseeable injury in an ongoing employment relationship." Perodeau v. City of Hartford, 259 Conn. 729, 756 (2002). In Morris v. Hartford

32

Courant Co., 200 Conn. 676 (1986), the court decided that a wrongful termination is not a necessary prerequisite for a claim of negligent infliction of emotional distress. In <u>Parsons v. United Technologies Corp.</u>, 243 Conn. 66 (1997), the court, relying on <u>Morris</u> concluded that "negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process." "Accordingly, read together, <u>Morris</u> and <u>Parsons</u> merely stand for the proposition that, in cases where the employee has been terminated, a finding of a wrongful termination is neither a necessary nor a sufficient predicate for a claim of negligent infliction of emotional distress." <u>Perodeau</u>, supra, at 751. Although subsequent decisions by the lower Connecticut courts concluded that a termination is a prerequisite for a claim for negligent infliction of emotional distress in an employment setting, those courts had relied exclusively on the Connecticut Supreme Court's decisions in <u>Morris</u> and <u>Parsons.</u> <u>Id.</u> at 754. In <u>Perodeau</u>, the Connecticut Supreme Court acknowledged that the courts had misread those decisions. <u>Id.</u> In <u>Perodeau</u>, although the facts of that case did not involve a termination of the plaintiff's employment, the Connecticut Supreme Court held "individual employees could not be liable for negligent infliction of emotional distress arising out of actions or omissions occurring within the context of a continuing employment relationship." Moreover, although the court concluded that in an ongoing employment relationship, an individual employee could not be liable for negligent infliction of emotional distress, the court did not decide a case involving a termination but acknowledged that in cases involving a termination of employment, on the other hand, the employee can no longer use the threat of a lawsuit to influence the conduct of his employer and fellow employees. <u>Id.</u> at 758. The <u>Perodeau</u> court found that all employees must expect some stress in the workplace, that sanctioning such liability would promote spurious claims, and that the fear of litigation would have a chilling effect on ongoing employment relationships – but that these considerations diminish significantly once the relationship is ended. <u>Id.</u> at 757-759.

In the case at bar, Plaintiff's employment was terminated. As a result, she is not in a position to influence the conduct of her former employer or fellow employees. Therefore, the public policy concerns raised by Perodeau do not apply to the facts of Plaintiff's case. The extreme and outrageous behavior engaged in by Edward Jones Defendants caused Plaintiff emotional distress and was foreseeable to them. Nevertheless, the termination process with respect to Plaintiff was extended throughout the course of Plaintiff's employment relationship, by virtue of Edward Jones Defendants' retaliatory conduct, so that it is impossible to draw a bright line between conduct occurring in the course of the employment relationship and conduct occurring in the termination of employment. As a result, there is enough evidence to create a material issue of fact as to whether negligent conduct occurred within the continuing employment context or in the termination of employment.

### G.    Vicarious Liability/ Respondeat Superior

Defendants assert that the claims of intentional torts, namely, intentional infliction of emotional distress and invasion of privacy directed against Edward Jones Defendants are deficient because they do not support vicarious liability/respondeat superior. "[T]he servant's conduct is within the scope of his employment if it is of the kind which he is employed to perform, occurs substantially within the authorized limits of time and space, and is actuated, at least in part, by a purpose to serve the master." (internal quotation marks omitted). Eldridge v. Free N Easy, Inc., Superior Court, judicial district of Stamford, Docekt No. 116177(August 13, 1993, Lewis, J.), quoting Prosser and Keaton on Torts, 5th ed., p. 502 (1984). "Furthermore, under the doctrine of respondeat superior, the focus is on the employee's conduct rather than the employer's knowledge or approval of the acts." Id., citing Belanger v. Village Pub I, Inc., 26 Conn.App. 509, 520 (1992).

Moreover, Section 317 of the Restatement states: "A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to

34

prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if (a) the servant (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or (ii) is using the chattel of the master, and (b) the master (i) knows or has reason to know that he has the ability to control his servant, and (ii) knows or should know of the necessity and opportunity for exercising such control." 2 Restatement (Second) Torts, Duty of Master to Control Conduct of Servant Section 317, p. 125 (1965). Comment (a) to Section 317 states: "The rule stated in this Section is applicable only when the servant is acting outside the scope of his employment." 2 Restatement (Second), supra, Section 317, comment (a). Under Connecticut law, a defendant does not owe a duty of care to a plaintiff to protect her from another employee's actions unless the defendant knows or has reason to know that the employee has a propensity to engage in tortious conduct. See v. Bridgeport Roman Catholic Diocesan Corp., Superior Court, Judicial District of Fairfield at Bridgeport, Docket No. 300948 (July 31, 1997) (Thim, J) (20 CONN L.RPTR. 271). "In such instances, the defendant's liability is not vicarious, but direct and personal." Surowiec v. Security Forces, Inc., Superior Court, Judicial District of Hartford-New Britain at Hartford, Docket No. 547875 (May 23, 1995) (Sheldon, J). I

In 1998, the United States Supreme Court decided the companion cases of Burlington Industries, Inc. v. Ellerth and Faragher v. City of Boca Raton, both of which contained allegations of hostile work environment sexual harassment. 524 U.S. 742 (1998), 524 U.S. 775 (1998) In these opinions, the Court clarified how vicarious liability should apply in all types of sexual harassment claims. The Court indicated that principles of agency law, and not the labels of "quid pro quo" and "hostile work environment," determine an employer's vicarious liability. Under agency principles, a master is not generally liable for the torts of a servant that are committed outside the scope of employment, but employer liability may attach where an employee has been aided in accomplishing a tort by the existence of the agency relationship. However, the Court

explained that this standard by itself is not enough to give rise to employer liability for sexual harassment because most workplace harassers are aided by the employment relationship simply by virtue of the proximity and regular contact they have with other employees. What is needed for liability to attach, the court stated, is "something more than the employment relation itself." The Court evaluated the "something more" standard in the context of hostile work environment claims, stating, "a[n] employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee."

### 1. Intentional Infliction of Emotional Distress

In the case at bar, an agency relationship between Mahoney, Cummins, Mosca, Rarick and Edward Jones existed. The extreme and outrageous conduct they engaged in with respect to Plaintiff employment including their failure to effectively address Mahoney's harassing conduct for months, in fact encouraging it by forcing Plaintiff to work in close contact with him, refusing to address her complaints by reporting them to someone who could effectively deal with it as outlined in company policy, retaliating against Plaintiff for her complaints, and the subsequent termination of Plaintiff's employment, were done in their capacity as managers and supervisors of Edward Jones. The requirement of outrageous conduct may arise where there is "an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." Mellaly, supra at 20.

Thus, Edward Jones Defendants' extreme and outrageous acts were done within the scope of their employment. Moreover, if the Court finds that Mahoney, Cummins, Mosca, and Rarick were not acting within the scope of their employment, as Mahoney, Cummins, Mosca, and Rarick were upon Edward Jones' property and using Edward Jones in furtherance of their conduct, and Edward Jones knew it had the ability to control its employees Mahoney, Cummins, Mosca, and Rarick, Edward Jones was under a duty to prevent them from intentionally harming Plaintiff or from so

36

conducting themselves as to create an unreasonable risk of bodily harm to her, and as such directly liable.

        2.      Defendants' Motion for Summary Judgment on
                  Plaintiff's Invasion of Privacy Claim Must be Denied

In Count Thirteen of the Complaint, Plaintiff alleges that Defendant Edward Jones should be held vicariously liable for an alleged invasion of privacy by Mahoney into Plaintiff's "sexual nature and personal relationships." In the case at bar, Mahoney was an agent of Edward Jones. The extreme and outrageous conduct he engaged in namely, the invasion of privacy, with respect to Plaintiff's sexual nature and personal relationships, was done in his capacity as supervisor of Edward Jones. "[H]ighly personal questions or demands by a person...may be regarded as an intrusion on psychological solitude or integrity and hence an invasion of privacy." See Anne C. Bonnano v. Dan Perkins Chevrolet, 2000 WL 192182 (Conn.Super.)) at 2.

Thus, Mahoney's invasion of Plaintiff's privacy was done within the scope of his employment. Moreover, assuming arguendo Mahoney was not acting within the scope of his employment, as Mahoney was upon Edward Jones' property and using Edward Jones in furtherance of his invasion of Plaintiff's privacy, and Edward Jones knew it had the ability to control its employee Mahoney, Edward Jones was under a duty to prevent him from intentionally harming Plaintiff or from so conducting himself as to create an unreasonable risk of bodily harm to her, and as such it is directly liable. However, in the case at bar, Edward Jones Defendants preferred that Plaintiff silently endure the offensive conduct which was "routinely played on network television."

    H.      Defendants' Motion for Summary Judgment on Plaintiff's
            Negligent Hiring, Supervision, and Retention Claims Must be Denied

Plaintiff alleges that Edward Jones is directly liable for negligently hiring, supervising, and retaining Mahoney, Rarick, Cummins, and Mosca.

37

1. <u>Negligent Hiring</u>

In <u>Shanks v. Walker</u>, 116 F.Supp. 2d 311, 314 (D.Conn. 2000), in which an employee brought an action against her former employer, the Court stated, "Plaintiff may state a cause of action for the negligent hiring of an employee." In paragraph 144 of her Complaint, Plaintiff alleges "Defendant had a duty to hire managers and employees who would not harass and humiliate Defendant's employees." Plaintiff provides a detailed account in her allegations regarding the unfitness and incompetence of Mahoney, Rarick, Cummins, and Mosca regarding their roles as supervisors and how she was injured as a result of them. Defendant contends that it conducted standard background and reference checks for hiring the individual Defendants. However, in paragraph 145 of the Complaint, Plaintiff alleges, "Defendant knew or should have known that Mahoney, Rarick, Cummins, and Mosca had a propensity to engage in the behavior described herein and were unfit and incompetent as supervisors." Plaintiff has sufficiently alleged facts that would support a cause of action for negligent hiring claims.

2. <u>Negligent Supervision and Retention</u>

Under Connecticut law, a plaintiff may bring an action against an employer for negligent supervision of its employees. <u>Gutierrez v. Thorne</u>, 13 Conn.App. 493, 500 (1988). "A plaintiff must plead and prove that she suffered an injury due to the defendant's failure to supervise an employee whom the defendant had a duty to supervise." <u>Roberts v. Circuit-Wise, Inc.</u>, 142 F.Supp.2d 211 (2001). In paragraph 144 of her Complaint, Plaintiff alleges, "Defendant had a further duty to evaluate and supervise their managers and protect their employees from harassment and humiliation by Defendant's managers and employees." In paragraph 147 of her Complaint, Plaintiff alleges, "As a consequence of Defendant's negligence in the hiring, supervision, and retention of Mahoney, Rarick, Cummins, and Mosca, and its negligence in assigning Mahoney to supervise Plaintiff, Plaintiff has been damaged in loss of wages and benefits, and she continues to

suffer severe emotional and psychological distress, depression, humiliation, mental anguish, embarrassment, and damage to her career and reputation."

Additionally, "negligent retention occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicate his unfitness and the employer fails to take further action." Doe, PPA v. Abrahante, 1998 WL 225089 (Conn.Super.) (April 28, 1998). In her Complaint, Plaintiff provides a detailed account which clearly illustrates that contrary to Defendants' assertion that "Edward Jones did not know or have reason to know Mahoney had a propensity to engage in unlawful or tortious conduct" and "[a] reasonable jury could not find Edward Jones negligent in not terminating Mahoney's employment at this time," after being aware of Mahoney's egregious and continuous conduct for over four months, during which time, Plaintiff was forced to work under his direct supervision, alone in the office with him, Edward Jones was reluctant to terminate Mahoney's employment instead manufacturing reasons to discredit Plaintiff, such as alleging she frequently used her cell phone in the office. Edward Jones insistence that Plaintiff return this hostile environment as the only option for her employment rather than being transferred to another office, while Edward Jones continued to maintain a relationship with Mahoney, which would put him in contact with Plaintiff was retaliatory toward Plaintiff and resulted in the termination of her employment. Moreover, Edward Jones continued to retain Mahoney despite the fact he was assigned a "coach" for the express purpose of addressing his personnel issues because "Edward Jones knew he was difficult to work with." Def.Memo at footnote 52 at p. 39. Edward Jones maintained a two-person office in Stamford, Connecticut, consisting of Mahoney and Plaintiff. As Mahoney's position was critical to the success of Edward Jones' business, it was reluctant to terminate his employment. As a result, Edward Jones retaliated against Plaintiff by reducing her hours to an "as needed basis," and punishing her for her complaints against Mahoney by terminating her position. In addition, Edward Jones continues to retain Mosca, Cummins and Rarick despite the fact that they proved to be unfit

39

as supervisors in effectively addressing Plaintiff's complaints of sexual harassment, as Edward Jones took no action in response to plaintiff's complaints and refused to acknowledge any responsibility, as characterized by Mosca's failure as regional leader to intervene, but instead her advice to plaintiff to go back to the office despite her clear distress over Mahoney's harassing conduct. Additionally, Mosca did not report the conduct or plaintiff's distress to Associate Relations as instructed in Edward Jones' nondiscrimination policy.

As a result, Plaintiff has sufficiently alleged facts that would support a cause of action for negligent supervision and retention claims.

## IV. Conclusion

For all the foregoing reasons, Plaintiff respectfully requests that this Court deny Edward Jones' Motion for Summary Judgment in its entirety.

Respectfully Submitted,

MARIAN DEBORAH MILLER
PLAINTIFF

By:_____
Vlad G. Spitzer ct14260
Spitzer & Brey L.L.C.
239 Main Street
Westport, CT 06880
(203) 226-3266 telephone
(203) 226-3262 telecopier
email: vgspitzer@spitzerbrey.com