UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

----------------------------------------------------------X

MARIAN DEBORAH MILLER,

             Plaintiff,

   -against-                                      CIV NO.
                                                   3:03CV 0193 (MRK)

EDWARD D. JONES & CO., L.P.,
MICHAEL MAHONEY, MICHAEL
CUMMINS, BARBARA MOSCA, and
STEVEN RARICK,

            Defendants.                June 25, 2004

----------------------------------------------------------X

### LOCAL RULE 56(a)2 STATEMENT IN OPPOSITION TO DEFENDANT EDWARD JONES MOTION FOR SUMMARY JUDGMENT

      Plaintiff Marian Deborah Miller respectfully submits this statement in opposition to Defendant Edward D. Jones & Co., L.P ("Edward Jones") motion for summary judgment and submits the following are genuine issues of fact to be tried in this case:

#### Background Information On the Individual Defendants

1.     Admits the allegations contained in paragraph 1.

2.     Admits the allegations contained in paragraph 2.

3.     Admits the allegations contained in paragraph 3.

4.     Admits the allegations contained in paragraph 4.

5.     Admits the allegations contained in paragraph 5 in so far as Edward Jones followed its standard hiring practices in hiring the individual defendants but Denies that the employment file for Defendant Mahoney "contains no information that would raise any question about their fitness for employment at Edward Jones."

### Background Information on Plaintiff

6. Admits the allegations contained in paragraph 6.

7. Admits the allegations contained in paragraph 7.

8. Denies the allegations contained in paragraph 8 in so far as the physical abuse of Ms. Miller and the prosecution of the co-worker occurred after her employment at Edward Jones and not before. (Miller Depo. at 250).

### Plaintiff's Employment with Edward Jones

9. Admits the allegations contained in paragraph 9.

10. Denies the allegations contained in paragraph 10 in so far as Plaintiff was not a BOA when she started working at Edward Jones, but a BOA in training. (Miller Depo. at 280-281).

11. Denies the allegations contained in paragraph 11 in so far as Plantiff was not a BOA but a BOA in training and her duties were among other things, to be trained in Edward Jones systems. (Miller Depo. at 280-281).

### Edward Jones Discrimination and Harassment Policies

12. Admits the allegations contained in paragraph 12.

13. Admits the allegations contained in paragraph 13.

14. Admits the allegations contained in paragraph 14.

15. Admits the allegations contained in paragraph 15.

16. Admits the allegations contained in paragraph 16.

### Defendant Michael Mahoney's Alleged Conduct, In General

17. Admits the allegations contained in paragraph 17 only in so far as it relates to Mahoney's employment prior to Edward Jones. With regards to his Employment at Edward Jones, Mahoney was disciplined and was on probation. (Miller Depo. at 63).

18. Denies the allegations contained in paragraph 18 in so far as a characterization of Mahoney's interactions with and treatment of Shannon Bogus. (Miller Depo. at 63-64).

19. Admits the allegations contained in paragraph 19.

20. Admits the allegations contained in paragraph 20.

21. Admits the allegations contained in paragraph 21.

22. Admits the allegations contained in paragraph 22.

23. Admits the allegations contained in paragraph 23.

24. Admits the allegations contained in paragraph 24.

25. Admits the allegations contained in paragraph 25.

26. Admits the allegations contained in paragraph 26.

27. Admits the allegations contained in paragraph 27.

28. Denies the allegations contained in paragraph 28 due to the fact that Plaintiff that Plaintiff "gathered her belongings and left after Mahoney said to her very near her face and calling Plaintiff "you stupid idiot" . He also said to Plaintiff "Nobody F's with me" "and gets away with it". She took this behavior as threatening. (Miller Depo. at 360-361)

29. Denies the allegations in paragraph 29 in so far as Plaintiff did say that she felt threatened by Mahoney's behavior. (Miller Depo. at 360-361)

30. Admits the allegations contained in paragraph 30.

### Mahoney's Alleged Conduct Relating to Sexual Orientation

31. Denies the allegations contained in paragraph 31 in that Plaintiff did not admit that Mahoney did not discriminate against her solely on the basis of her sexual orientation and did state that Mahoney's treatment of her was because of her gender as well. (Miller Depo. at 298).

32. Denies the allegations contained in paragraph 31 were examples of solely sexual orientation discrimination but were examples of gender discrimination as well. (Miller Depo at 298).

33. Admits the allegations contained in paragraph 33.

34. Admits the allegations contained in paragraph 34.

35. Admits the allegations contained in paragraph 35.

36. Admits the allegations contained in paragraph 36.

37. Admits the allegations contained in paragraph 37.

38. Admits the allegations contained in paragraph 38.

39. Admits the allegations contained in paragraph 39.

40. Admits the allegations contained in paragraph 40.

### Mahoney's Other Alleged Conduct Relating to Plaintiff's Sexuality

41. Admits the allegations contained in paragraph 41.

### Mahoney's Alleged Conduct Relating to Plaintiff's Privacy and Personal Property

42. Admits the allegations contained in paragraph 42.

### Mahoney's Alleged Comments Relating to Plaintiff's Age

43. Admits the allegations contained in paragraph 43.

44. Admits the allegations contained in paragraph 44.

### Mahoney's Alleged Comments Relating to Plantiff's Religion

45. Admits that Plaintiff was told that she was going to get "fired". Denies that Plaintiff was able to take off two days for the holiday of Succoth, which were the days in question, not Rosh Hashanah and Yom Kippur. (Miller Depo. at 314-315)

46. Admits the allegations in paragraph 46 but denies there is a distinction between the derogatory terms used to describe Rosh Hashannah.

47. Admits the contained in paragraph 47.

### Plaintiffs Communications With Edward Jones Employees Regarding Mahoney's Alleged Conduct

48. Admits the allegations contained in paragraph 48.
49. Admits the allegations contained in paragraph 49.
50. Admits the allegations contained in paragraph 50.
51. Admits the allegations contained in paragraph 51
52. Admits the allegations contained in paragraph 52.
53. Admits the allegations contained in paragraph 53.
54. Admits the allegations contained in paragraph 54.
55. Admits the allegations contained in paragraph 55.
56. Admits the allegations contained in paragraph 56.
57. Admits the allegations contained in paragraph 57.
58. Admits the allegations contained in paragraph 58.
59. Admits the allegations contained in paragraph 59.

60. Admits the allegations contained in paragraph 60.

61. Admits the allegations contained in paragraph 61.

62. Admits that allegations contained in paragraph 62.

63. Admits the allegations contained in paragraph 63.

64. Admits the allegations contained in paragraph 64.

65. Admits the allegations contained in paragraph 65.

66. Admits the allegations contained in paragraph 66.

67. Admits the allegations contained in paragraph 67.

68. Admits the allegations contained in paragraph 68.

69. Admits the allegations contained in paragraph 69.

70. Admits the allegations contained in paragraph 70.

71. Admits the allegations contained in paragraph 71.

72. Admits the allegations contained in paragraph 72.

73. Admits the allegations contained in paragraph 73.

74. Admits the allegations contained in paragraph 74.

75. Admits the allegations contained in paragraph 75.

76. Admits the allegations contained in paragraph 76.

77. Admits the allegations contained in paragraph 77.

78. Admits the allegations contained in paragraph 78.

79. Admits the allegations contained in paragraph 79.

80. Admits the allegations contained in paragraph 80.

81. Admits the allegations contained in paragraph 81.

82. Admits the allegations contained in paragraph 82 and further states that Plaintiff told Sullivan that Mahoney's conduct is "harassment". (Miller Depo. at 201)

83. Admits the allegations contained in paragraph 83.

### Plaintiff's Letter to Rarick

84. Admits the allegations contained in paragraph 84.

85. Admits the allegations contained in paragraph 85.

86. Admits the allegations contained in paragraph 86.

87. Admits the allegations contained in paragraph 87.

88. Admits the allegations contained in paragraph 88.

89. Admits the allegations contained in paragraph 89.

90. Admits the allegations in paragraph 90 and furthermore states that Plaintiff did make numerous complaints to Rarick that constituted illegal discrimination by Mahoney against the Plaintiff including the use of the work "fuck" along with various other issues of profanity and abuse that Rarick failed to investigate or resolve. (Miller Depo. at 205-211)

### Rarick's Investigation Into Plaintiff's Complaints About Mahoney

91. Denies the first part paragraph 90 in that there is no factual foundation for what Rarick's understanding was or wasn't or should or should not have been with regards to this investigation, nor is any evidentiary support cited in the record of these proceedings for such a statement. Admits the balance of paragraph 90 with respect to what Rarick did in conducting an investigation.

92. Admits the allegations contained in paragraph 92.

93. Admits the allegations contained in paragraph 93.

94. Admits the allegations contained in paragraph 94.

95. Admits the allegations contained in paragraph 95.

96. Admits the allegations contained in paragraph 96.

97. Admits the allegations contained in paragraph 97.

98. Admits the allegations contained in paragraph 98.

99. Admits the allegations contained in paragraph 99.

100. Admits the allegations contained in paragraph 100.

101. Admits the allegations contained in paragraph 101.

102. Admits the allegations contained in paragraph 102.

103. Admits the allegations contained in paragraph 103.

104. Admits the allegations contained in paragraph 104.

105. Admits the allegations contained in paragraph 105.

106. Admits the allegations contained in paragraph 106.

107. Admits the allegations contained in paragraph 107.

108. Admits the allegations contained in paragraph 108.

109. Admits the allegations contained in paragraph 109.

110. Admits the allegations contained in paragraph 110.

111. Admits the allegations contained in paragraph 111.

112. Admits the allegations contained in paragraph 112.

113. Admits the allegations contained in paragraph 113.

114. Admits the allegations contained in paragraph 114.

115. Admits the allegations contained in paragraph 115.

116. Admits the allegations contained in paragraph 116.

117. Admits the allegations contained in paragraph 117.

118. Admits the allegations contained in paragraph 118.

119. Admits the allegations contained in paragraph 119.

120. Admits the allegations contained in paragraph 120.

121. Admits the allegations contained in paragraph 121.

122. Admits the allegations contained in paragraph 122.

123. Admits the allegations contained in paragraph 123.

124. Admits the allegations contained in paragraph 124.

125. Admits the allegations contained in paragraph 125.

126. Admits the allegations contained in paragraph 126.

127. Admits the allegations contained in paragraph 127.

128. Admits the allegations contained in paragraph 128.

129. Admits the allegations contained in paragraph 129.

130. Admits the allegations contained in paragraph 130.

131. Admits the allegations contained in paragraph 131.

132. Admits the allegations contained in paragraph 132.

133. Admits the allegations contained in paragraph 133.

134. Admits the allegations contained in paragraph 134.

135. Admits the allegations contained in paragraph 135.

### Plaintiff's Employment Status and Ultimate Resolution

136. Admits the allegations contained in paragraph 136 but denies that Plaintiff did not want to return to her employment. (Miller Depo. at 229)

137. Admits the allegations contained in paragraph 137.

138. Admits the allegations contained in paragraph 138.

139. Admits the allegations contained in paragraph 139.

140. Admits the allegations contained in paragraph 140.

141. Admits the allegations contained in paragraph 141.

142. Admits the allegations contained in paragraph 142.

143. Admits the allegations contained in paragraph 143.

144. Admits the allegations contained in paragraph 144.

145. Admits the allegations contained in paragraph 145.

146. Admits the allegations contained in paragraph 146.

147. Admits the allegations contained in paragraph 147.

148. Admits the allegations contained in paragraph 148.

149. Admits the allegations contained in paragraph 149.

150. Admits the allegations contained in paragraph 150.

151. Admits the allegations contained in paragraph 151.

152. Admits the allegations contained in paragraph 152 but denies that Plaintiff refused to return to work, only that she did refuse to work for Mahoney. (Miller Depo. at 229).

153. Admits the first sentence of paragraph 153 but states that Plaintiff was terminated from her employment as per the letter of February 28, 2002, as referred to in the previous paragraph. Further admits the balance of paragraph 153.

## **DISPUTED ISSUES OF MATERIAL FACT**

Fed R. Civ. Pro. Rule 56(a)1 states that: "There shall be annexed to a motion for summary judgment a document entitled "Local Rule 56(a)1 Statement" which sets forth in separately numbered paragraphs a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried." Yet, remarkably, Edward Jones states that: "Defendant reserves the right to present evidence at trial, controverting such facts." Edward Jones further states that: "where there are significant differences between the testimony of Plaintiff and of Defendant's witnesses, Plaintiff's version is given." Where admitted therefore, Plaintiff contends that Edward Jones version of the facts constitute the issues in this case that are disputed and should be tried. Accordingly, what follows is a supplement to the issues of fact presented by Edward Jones that the defendant itself claims it will dispute at trial.

1. Plaintiff was discriminated against in terms and conditions of her employment on the basis of her gender, age religion, and sexual orientation and subsequently terminated from from Edward Jones after having complained about the sexual harassment she was subjected to by Michael Mahoney. (Complaint, paragraph 2)

2. Edward Jones did not maintain an effective sexual harassment policy. In addition, there had never been any sexual harassment training at Edward Jones at the time of Plaintiff's termination. Edward Jones did not follow proper procedures mandated by their sexual harassment policy in that it failed to

properly investigate Plaintiff's complaints and/or resolve those complaints. (Complaint, paragraph 6)

3. Plaintiff made complaints about Mahoney's treatment of her, first to John Sullivan and then at Sullivan's bequest, to Steven Rarick. Both of whom are Human Resources Employees of Edward Jones. (Rarick Affidavit at 2)

4. Plaintiff's letter, describes Mahoney's conduct as "verbally and emotionally abusive," "erratic," "intrusive," "condescending," as "making comments about my personal life," making "offensive gestures," "name calling," (Exhibt A, Rarick Affidavit and Rarick Affidavit at 2)

5. Rarick commenced an investigation into Plaintiff's allegations against Mahoney in her letter to John Sullivan. (Rarick Affidavit, paragraph 8)

6. Rarick spoke on the telephone with the Plaintiff on November 12, 2001 with Plaintiff about her allegations against Mahoney. (Rarick Affidavit, paragraph 9-15)

7. Mahoney discussed "lesbianism" with Plaintiff. (Miller Depo. at 300)

8. Mahoney asked Plaintiff to take a number of his lesbian clients out for dinner (Miller Depo at 300, 304-305).

9. Mahoney stated to Plaintiff that she "would make a good lipstick lesbian" (Miller Depo at 300)

10. Mahoney stated to Plaintiff that he had somebody who was gay and worked for him and he liked that a lot and it was too bad she wasn't gay" (Miller Depo. at 302, 304)

11. Mahoney would put on Plaintiff's scarves and her coat and parade around the office. (Miller Depo. at 303)

12. Mahoney asked Plaintiff whether either of her sons were gay. (Miller Depo. at 124-125)

13. Mahoney asked Plaintiff questions and made comments about Plaintiff's boyfriend stating that if Plaintiff was no longer seeing him that Mahoney could and that Plaintiff's boyfriend would enjoy Mahoney better. (Miller Depo. 73-74, 186-187)

14. Mahoney stated to Plaintiff that he would like her to be a lesbian, stating that she "would make a wonderful lipstick lesbian, and that [she] should frequent the…lipstick lesbian bars in New York and that [she] should pick up clients for him that way. (Miller Depo. at 186, 188-89, 304)

15. Mahoney stated to Plaintiff that some of the lesbian clients would like Plaintiff and she could take them out for dinner. (Miller Depo. at 186, 305)

16. Plaintiff testified that her objection to her entertaining Mahoney's lesbian clients changed his mood, demeanor, and behavior towards her. (Miller Depo. 304-305)

17. Mahoney asked to borrow clothing Plaintiff was wearing on a number of occasions. (Miller Depo. 312, 368)

18. Mahoney made references on a daily basis to his homosexual clients as being "cute," or whether he was a "top" or "bottom." (Miller Depo. at 195-196, 200)

19. Mahoney "told [Plaintiff] a few times that she had a nice rack," which she understood to mean that "she had nice breasts." (Miller Depo. at 199)

20. Mahoney called Plaintiff at home during non-working hours several times a week, asking her to pick up coffee and a bagel or muffin for his breakfast. (Miller Depo. 333-336)

21. Mahoney asked Plaintiff about her sexual relations with her boyfriend. (Miller Depo. 334, 336-37)

22. Mahoney discussed the sexual orientation of her children with Plaintiff (Miller Depo. 334, 337-338)

23. Mahoney put on Plaintiff's scarf and coat on a number of occasions and "parading around the room." (Miller Depo. 182, 334, 338)

24. Mahoney moved Plaintiff's handbag under her desk during her absence leaving its contents in "disarray" (Miller Depo. 182, 334, 340)

25. Mahoney told Plaintiff that he was 12 years younger faster than she was. Plaintiff asked if Mahoney was making a comment about her age and he responded that he was. (Miller Depo. at 232)

26. Mahoney stated that he could run circles around Plaintiff and that she was too old for her job. (Miller Depo. at 237)

27. Mahoney told Plaintiff that if she didn't work on two Jewish holidays that she would get fired. (Miller Depo. at 125)

28. Mahoney told Plaintiff was not allowed to take off two days for the Jewish holiday of Succoth. (Miller Depo. at 315)

29. Mahoney made fun of the Jewish holiday of Rosh Hashanah by referring to it as "Rush Ahama." (Miller Depo. at 147)

30. Mahoney made fun of the Jewish holiday of Rosh Hashanah by referring to it as "rush-a –home-a." (Miller Depo. at 313)

31. Mahoney denied Plaintiff her request to leave early for Yom Kippur, instead keeping her half an hour late. (Miller Depo. 314)

32. Mahoney attempted to call Plaintiff at home on the Jewish holidays when Jews are not permitted to answer the telephone, which conduct Plaintiff thought was "absolutely humiliating." (Miller Depo. at 321.)

33. Plaintiff stated that that she reported problems she was having with Mahoney to Kristin Commander, Lynn Vasil, Michael Cummins, Barbara Mosca, Shannon Bogus, Amy (Plaintiff did not remember her last name) John Sullivan, Steve Rarick, and Lynn Comida. ( Miller Depo. at 274-275)

34. The Edward Jones sexual harassment policy provides that general principals, department leaders, team leaders, managers, investment representatives, branch staff associates, regional leaders and associates in departments other than Associate Relations "have a responsibility to report information on sexual harassment to Associate Relations. (Miller Depo. Exhibit 12). Edward Jones nondiscrimination policy contains a similar provision (Miller Depo. Exhibit 11).

35. Commander and Vasil were the BOA's for Defendant Cummins office. (Miller Depo. at 59)

36. Commander visited the Stamford office where Plaintiff was working, twice. (Miller Depo. at 60, 396-397)

37. Plaintiff had dozens of conversations with Commander. (Miller Depo. at 119)

38. In those conversations Plaintiff told Commander that Mahoney was a " very inappropriate person to work for." That he was "intrusive." That his office decorum was "inappropriate" That his "demeanor was inappropriate." (Miller Depo. at 121)

39. Plaintiff told Commander that Mahoney would refer to his male homosexual friends as "she." That Mahoney would have "flamboyant" conversations in the office causing Plaintiff to close the door to Mahoney's office for fear that clients sitting in the office could overhear Mahoney. (Miller Depo. at 123)

40. Commander told Plaintiff that Mahoney would throw paper at her. Commander told Plaintiff that Mahony had thrown a garbage can at his former BOA, Shannon Bogus and that Plaintiff should be careful. (Miller Depo. at 124)

41. Plaintiff told Commander that Mahoney had asked Plaintiff about whether one of her sons is gay. (Miller Depo. at 124)

42. Plaintiff told Commander that Mahoney threatened her with termination saying that "if you don't clean the office you're going to get fired," if you don't go get my lunch, you're going to get fired," "if you don't attend work on two separate Jewish holidays, you're going to get fired." (Miller Depo. at 125-126)

43. At one point around the "twelfth phone call" Commander and Lynn Vasil urged Plaintiff to report her concerns about Mahoney to "Human Relations." Whereupon Plaintiff stated back that she thought she would get fired if she talked about Mahoney's conduct. (Miller Depo. page 130)

44. Plaintiff told Vasil that Mahoney often sent her out to get his breakfast and lunch and had her make coffee and do personal work for him. Vasil said "she was not supposed to do any of that." (Miller Depo. at 85)

45. Plaintiff told Vasil that Mahoney "was very abusive" and had asked her son to do computer work for which he never paid him and that he had Plaintiff stay

late to stuff envelopes for Mahoney's condominium association. (Miller Depo at 95-96)

46. Plaintiff told Vasil that Commander that Mahoney "would put her coat on and prance around the room and swing it about, including her scarf" (Miller Depo. at 17)

47. Plaintiff told Vasil and Commander that Mahoney asked her whether either of her sons were gay. (Miller Depo at 25)

48. Vasil and Commander told Plaintiff to contact the Associate Relations Department. ( Miller Depo. at 126)

49. Plaintiff contacted Associate Relations and spoke with Amy Draper telling her that Mahoney was "almost tyrannical" had intolerable mood swings and was very difficult to work with. Plaintiff also stated that Mahoney made fun of the Jewish holidays. Plaintiff requested that she be transferred to another office. (Miller Depo. at 146-147)

50. Plaintiff spoke with John Sullivan of the Associate Relations department. (Miller Depo. 176, 178)

51. Plaintiff told Sullivan that Mahoney's conduct was very abusive…intrusive and totally inappropriate." (Miller Depo. at 201)

52. Sullivan instructed Plaintiff to write to Steve Rarick in the Associate Relations Department about what happened with Mahoney. He told Plaintiff to make her letter "short and sweet." (Miller Depo. at 202)

53. In her letter to Rarick, Plaintiff did not include all her complaints because she stated she encompassed her complaints with the words "abusiveness and harassment." Otherwise the letter would have been too long. (Miller Depo. at 181)

54. Plaintiff said it was embarrassing to put the matter into writing and would have preferred to speak to someone about these issues. (Miller Depo. at 184)

55. Rarick had a discussion with Plaintiff about her letter to him on November 12, 2001. (Miller Depo. at 204)

56. Rarick's notes reflected that Plaintiff among other things, told him that Mahoney: "used profanity in the office," "called her stupid." "would say "fuck" at least a dozen times a day," "she would not be allowed to take a lunch break or if she did would have to pick up lunch for him." "called her at home in the morning and told her to bring him breakfast," "had her doing all of the office cleaning." (Miller Depo. at 206-207)

57. Plaintiff told Rarick that she was fearful of work in the office with Mahoney because: "He came too close to striking me and hurting me and I refuse to return there." (Miller Depo at 225)

58. As a result of Rarick's investigation Plaintiff was given the option of either returning to work with Mahoney or working on an "as-needed basis"

59. Plaintiff never stated that she would not return to work for Edward Jones but that she would not return to work with Mahoney. (Miller Depo. at 229)

The Plaintiff,
MARIAN DEBORAH MILLER,

_____
Vlad G. Spitzer, Esq.
Federal Bar No. ct14260
Spitzer & Brey, LLC.
239 Main Street
Westport, CT 06880
(203) 316-8422
