**B.     Retaliation Claims**

**1.     Protected activity**

Plaintiff's only response on "refusal to submit" as protected activity is to flatly state it is "entirely inaccurate" to characterize her action as "passive submission" (Pltf. Opp. at 22, ¶ 3) She offers no explanation of this statement. In particular, she provides no justification for remaining silent for so long about the allegedly unlawful conduct, while loudly complaining about Mahoney's lawful, if unpleasant, conduct. Further, Plaintiff simply ignores Edward Jones' arguments regarding her complaints as protected activity.

**2.     Adverse action**

Plaintiff alleges two adverse employment actions: 1) Edward Jones's alleged failure to take action in response to her complaints; and 2) her alleged constructive discharge (Pltf. Opp. at 23, ¶2 – 26, ¶3). On the first point, Plaintiff's citation of *Richardson* is inapposite. *Richardson* does not hold that failure to remedy any kind of unlawful harassment may be an adverse employment action. Rather, it refers expressly to failure to remedy ***retaliatory*** harassment.[14] Here, the harassment Plaintiff claims Edward Jones allowed was allegedly motivated by sex, age, and religion, not retaliation. Similarly, if a constructive discharge is to be considered adverse employment action supporting a retaliation claim, the conduct leading to the resignation must be retaliatory, not otherwise discriminatory. Stating that the conduct was Edward Jones' insistence that she return to work with Mahoney does not establish a retaliatory motive, but merely underlines that the alleged constructive discharge was based on Mahoney's allegedly discriminatory conduct, not any retaliatory conduct.

**3.     Causal connection**

Plaintiff does not address the defense arguments on this element of a retaliation claim.

---

[14] See 180 F.3d at 445 (discussing various courts' views on "whether an employee suffers 'adverse employment action' . . . when . . . employer allows her co-workers to harass her ***because she engaged in protected activity***") (emphasis added).

16

### C.     Aiding and Abetting

Contrary to Plaintiff's assertion (Pltf. Opp. at 27, ¶2), Defendants' interpretation of *Perodeau* does **not** "frustrate[ ] the intent of § 46-60(a)(5) and render[ ] it void". *Perodeau's* holding that individual employees may not be liable under § 46-60(a)(1) compels the conclusion that they also may not be liable under § 46-60(a)(5) for their conduct as employees. Otherwise, since corporate liability must be based on the actions of individual employees, these employees could *always* be found to have aided and abetted the corporate violation, and *Perodeau* would offer them no protection whatsoever. Thus, it is **Plaintiff's** interpretation that "frustrates the intent" of *Perodeau,* because whenever a corporate employer would be liable for discrimination, individual employees would be personally liable as well, for aiding and abetting under § 46-60(a)(5).

On the other hand, it is not true that Defendants' interpretation would read § 46-60(a)(5) completely out of the statute and render[ ] it void. For example, it would still be applicable where corporate discrimination also involved other individuals or corporations such as customers, unions, or business associates of the employer. Such parties could not be liable as employers under § 46-60(a)(1), but could be liable for aiding and abetting under § 46-60(a)(5). Defendants submit this is the clear intent of § 46-60(a)(5), and the only interpretation consistent with *Perodeau*.[15]

Plaintiff appears to contend that Edward Jones, Rarick, Cummins, and Mosca aided and abetted violations by Mahoney, not violations by Edward Jones (Pltf. Opp. at 27, ¶2). As pointed out in these Defendants' Memoranda in Support, such arguments present the additional difficulty that under *Perodeau* Mahoney cannot be liable, so there are no violations to aid and abet. Moreover, Plaintiff presents no factual basis for any of these Defendants to be liable for

---

[15] Plaintiff's reference to *Murphy* is misplaced, as this case predated and was clearly overruled by *Perodeau* in that it held individual employees could be liable under § 46-60(a)(1). *Murphy* said it would be illogical to hold supervisory employees liable for aiding and abetting, but allow them to escape liability for actually engaging in prohibited acts. *Perodeau* turns this on its head: it would be illogical to allow supervisory employees to escape liability for actually engaging in prohibited acts (as *Perodeau* holds), but hold them liable for aiding and abetting.

17

aiding and abetting. She relies on her allegations of retaliation and failure to address known sexually harassing conduct (Pltf. Opp. at 27, ¶ 2), allegations that, as discussed in Defendants' Memoranda In Support and in Sections I and II.B., above, are not supported by the record.

Finally, it is meaningless for Plaintiff to insist on aiding and abetting liability against Edward Jones. This Defendant either is or is not liable under § 46-60(a)(1) for CFEPA violations based on its employees' conduct; and the aiding and abetting claim adds nothing but unnecessary complication and confusion.

### D.  Intentional Infliction Of Emotional Distress

Plaintiff's response focuses exclusively on the "extreme and outrageous" element of this tort and completely ignores the first element -- intent to inflict emotional distress (or knowledge it was likely). Plaintiff cites three atypical Connecticut cases (one of them unpublished) allowing intentional infliction claims to proceed based on alleged workplace conduct, but these cases all involved motions to strike, not summary judgment.[16] The courts in these cases thus did not have factual records upon which to consider this element of the tort, and did not discuss it -- evidently it was simply presumed because adequately pleaded. Here we are at a much different stage of litigation, with a fully developed record following extensive discovery, and Plaintiff must at least demonstrate the existence of a genuine issue of material fact on this element of the tort. She has not done this, particularly with respect to Defendants Edward Jones, Rarick, Cummins, and Mosca, who at most are claimed to have been negligent because they allegedly were "ineffective" in responding to her complaints. It would be quite a conspiracy indeed, and one wholly unsupported by the record, if all of these persons embarked upon a deliberate course of ignoring their duties under the law and under Edward Jones' policies for the express purpose of causing Plaintiff to suffer severe emotional distress, or knowing such distress was likely. Even as to Mahoney, Plaintiff cites no evidence whatsoever that he intended to cause emotional

---

[16] *Leone v. New England Commun.*, 2002 WL 1008470 (Conn.Super. 2002) (unpublished); *Mellaly v. Eastman Kodak Co.* 42 Conn.Supp. 17, 597 A.2d 846 (1991); *Talit v. Peterson*, 44 Conn.Supp. 490, 692 A.2d 1322 (1995).

distress or knew such distress was likely, nor can these essential facts reasonably be inferred from the record evidence.

With respect to both the intent and "extreme and outrageous" conduct elements, Plaintiff attempts to blame Defendants for Plaintiff's own passivity, relying on conclusory allegations that Defendants were aware Plaintiff was suffering, or likely to suffer, extreme emotional distress, but callously ignored her plight. As discussed in Edward Jones' Reply, such allegations are simply not supported by the record, and Plaintiff has not even attempted to demonstrate that they are -- **her entire argument on this tort lacks a single citation to the record**.

In attempting to show "extreme and outrageous" conduct, Plaintiff relies on the alleged "angry confrontation" (Pltf. Opp. at 30, ¶ 1), which is not supported by the record evidence she cites for it elsewhere (Pltf. Opp. at 7, ¶2), as discussed in Edward Jones' Reply. She also apparently would characterize the decision not to immediately terminate Mahoney, but instead warn him of potential termination, as "extreme and outrageous" (Pltf. Opp. at 31, ¶ 1). Plaintiff has admitted that Rarick's investigation was inconclusive and that he warned Mahoney that if he violated Edward Jones' policies prohibiting employment discrimination and sexual harassment, it would result in discipline up to and including discharge (Pltf. response to Jones Stmt. ¶ 135). Applying this tort to such a management decision would set a terrible precedent -- putting employers in the position of potentially being accused of "extreme and outrageous" conduct both for terminating an employee and for not doing so.

Plaintiff apparently would also characterize the failure to transfer her to a different office as "extreme and outrageous" (Pltf. Opp. at 31,¶ 1). However, she has admitted that during December, 2001, and January, 2002, it was unclear whether an open position in another office could be found (Pltf. response to Jones Stmt. ¶ 141). Again, characterizing such everyday management decisions as tortious would set a dangerous precedent for court micro-management of personnel decisions.

19

Plaintiff's disagreement with Edward Jones' characterization of the alleged conduct, and her suggestion that the "implication [is] that if it is happening on television, she should just silently endure it" (Pltf. Opp. at 31, ¶ 2) is way off the mark. Edward Jones did *not* expect her to "silently endure it." To the contrary, Edward Jones expected her to speak up, following the company policies, of which she admittedly had been initially informed and subsequently reminded (Pltf. response to Jones Stmt. ¶¶ 12, 79), thus taking advantage of the fact that in St. Louis an entire Associate Relations Department is dedicated to dealing with such employee concerns.

Plaintiff also would have the court find her "termination" "extreme and outrageous" (Pltf. Opp. at 32, ¶ 1). However, by extensively arguing she suffered a **constructive** discharge (Pltf. Opp. at 23, ¶2 - 26, ¶ 2), Plaintiff has effectively admitted her employment with Edward Jones ended due to her resignation, not Edward Jones' unilateral action. The "termination" was simply Edward Jones' acknowledgment of her resignation – her unreasonable refusal to return to work with Mahoney after her complaint had been investigated. Such an acknowledgment of resignation under these circumstances is certainly not "extreme and outrageous" conduct intended or likely to cause emotional distress.

Finally, Plaintiff cites the Restatement, as quoted in *Mellaly*, for the proposition that conduct may be shown to be "extreme and outrageous" merely because it involves abuse of a position of authority (Pltf. Opp. at 29, ¶1). If this were sufficient, then every allegation of harassment or discrimination by a supervisor would support liability under this tort. However, as the cases cited in Edward Jones' memorandum in support clearly indicate, Connecticut case law does not support such an expansive interpretation, but rather shows courts have exercised great caution in applying of this tort to employment discrimination, particularly to allegations of wrongful termination and failure to remedy harassment (Jones Memo in Supp. at 30-32 & nn. 54-55). Further, *Mellaly* itself does not rely on the quoted proposition. Instead, the next sentence, omitted by Plaintiff, states that conduct may be shown to be "extreme and

outrageous" by establishing that the actor knew the plaintiff was "peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity." The holding in *Mellaly* that the allegations of "extreme and outrageous" conduct were sufficient on their face to withstand a motion to strike was based on a combination of supervisory status and such knowledge (of the plaintiff's disease of alcoholism). Here there is no evidence whatsoever that any of the Defendants knew Plaintiff had any "physical or mental condition or peculiarity" rendering her "peculiarly susceptible to emotional distress."

### E. Negligent Infliction of Emotional Distress

Plaintiff completely misconstrues and misapplies *Perodeau*. As Plaintiff states (Pltf. Opp. at 33), *Perodeau* says prior decisions holding "termination is a prerequisite for a claim for negligent infliction of emotional distress in an employment setting" had misread *Morris* and *Parsons*, which did not compel this conclusion. But *Perodeau* then considers this issue as a matter of first impression, reaching precisely the same conclusion. *Perodeau* holds there is no liability for "negligent infliction of emotional distress arising out of conduct occurring within a continuing employment context, as distinguished from **conduct occurring in the termination** of employment," thus holding that termination is a prerequisite. 259 Conn. at 762-63. Further, in *Perodeau*, the Supreme Court of Connecticut quoted the holding of *Parsons* that "negligent infliction of emotional distress in the employment context arises only where it is 'based upon unreasonable conduct of the defendant **in the termination process**.'" *Id.* at 750 (emphasis added). Reading these decisions together, it is clear that a negligent infliction claim can only be based on the manner in which a termination is carried out, not its motivation. Plaintiff's argument that "the termination process . . . was extended throughout the course of Plaintiff's employment relationship" (Pltf. Opp. at 34 ¶ 1) is directly contrary to the rationale of *Perodeau*. Allowing such claims would have precisely the chilling effect on ongoing employment conduct that *Perodeau* sought to avoid.

21

### F. Vicarious Liability/Respondeat Superior

Plaintiff effectively concedes Defendants' position on this issue. Her argument gives lip service to the scope of employment standard without challenging Defendants' application of it (Pltf. Opp. at 34, ¶ 2). Instead, Plaintiff seeks to deflect attention from this weakness by instead arguing direct liability based on failure to properly supervise (Pltf. Opp. at 35, ¶ 1), which is the subject of a separate claim and of no assistance in rebutting Defendants' arguments on *respondeat superior*. Plaintiff also confuses the issue by raising the vicarious liability standard applied under Title VII, which is subject to the *Faragher/Ellerth* affirmative defense and not applicable to state law tort claims (Plaintiff Opp. At 35 ¶ 2). Finally, Plaintiff's discussion of scope of employment in connection with her intentional infliction of emotional distress claim (Pltf. Opp. at 35, ¶ 2-3) is a red herring to the extent it argues **Cummins, Moscow, and Rarick** acted within the scope of their employment. Defendants did not contend otherwise, but only that if **Mahoney** engaged in the conduct alleged, it would not have been within the scope of his employment.

### G. Invasion Of Privacy

Plaintiff's brief argument on this claim begins with a complete *non sequitur*: 1) "highly personal questions or demands . . . may be. . . an invasion of privacy" and "**thus**" 2) "Mahoney's invasion of Plaintiff's privacy was done within the scope of his employment." There is no connection whatsoever between these two propositions beyond their proximity in Plaintiff's memorandum. Plaintiff's second argument refers to "an unreasonable risk of **bodily** harm," which is entirely unsupported by the record, and in any event again simply recasts the negligent supervision claim.

### H. Negligent hiring, supervision, and retention

Plaintiff vainly attempts to create a factual issue here by denying "that the employment file for Defendant Mahoney 'contains no information that would raise any question about their [sic] fitness for employment at Edward Jones'" (Pltf. response to Jones Stmt. ¶ 5). This double

negative would suggest Plaintiff has information raising such a question about fitness, but Plaintiff cites no evidence whatsoever in support of this denial. Further, Plaintiff does not even make such a bare denial with respect to the employment files of the other individual Defendants. Lacking any evidence, Plaintiff falls back on the allegations of her Complaint (which are clearly irrelevant for summary judgment purposes) and her wholly unsupported mantra of retaliation and ignored complaints of unlawful harassment and discrimination (Pltf. Opp. at 38-40).

To the extent Plaintiff's claim is based on Edward Jones' retention of Mahoney after Rarick's investigation, Plaintiff suffered no damages. She refused thereafter to return to work with Mahoney. So she suffered no discrimination or harassment at the hands of Mahoney as a proximate result of the decision to retain him at this time. Finally, finding even a triable issue of fact as to negligent retention here would set a horrible precedent, putting the courts in the position of micro-managing and second-guessing an employer that conducted a thorough investigation, decided in its best judgment that termination was not warranted, and took other corrective action.

Respectfully submitted,

DEFENDANT Edward Jones & Co., L.P.

By: *Michael N. LaVelle*
Michael N. LaVelle, Esq. 06170
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006
(203) 330-2000
(203) 330-2288 (Facsimile)

By: *Fred A. Ricks, Jr.*
Fred A. Ricks, Jr., Esq.
Harris Dowell Fisher & Harris, L.C.
15400 South Outer Forty, Suite 202
St. Louis, Missouri 63017
(636) 532-0300
(636) 532-0246 (Facsimile)

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, to the following parties:

Peter E. Gillespie, Esq.
Attorney at Law
46 Riverside Avenue
Westport, CT  06880
(203) 227-7000

Vlad Spitzer, Esq.
Spitzer & Brey, LLC
239 Main Street, 2nd Floor
Westport, CT  06880
(203) 226-3266 Ext. 14