# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MARIAN DEBORAH MILLER,         :
:
        Plaintiff,        :
:
v.        :    NO.  3:03CV0193 (MRK)
:
EDWARD JONES & CO, ET AL.,        :
:
        Defendants.        :

## <u>MEMORANDUM OF DECISION</u>

In this case, Plaintiff Marian Deborah Miller sues Defendants Edward Jones & Co.

("Edward Jones") and a former Edward Jones investment representative, Defendant Michael

Mahoney, for employment discrimination in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000 *et seq*.  Plaintiff also asserts a number of state statutory and common law

claims.  Pending before the Court are Motions for Summary Judgment by Edward Jones & Co.

[doc. #56] and Michael Mahoney [doc. #52].[1]  The Court GRANTS in part and DENIES in part

both motions [doc. ## **52**, **56**].

## I.

The following facts are undisputed unless otherwise noted.[2]  Defendant Edward Jones is

---

[1]  In her Complaint, Ms. Miller also sued Michael Cummins, Barbara Mosca and Steven Rarick.  *See* Compl. [doc. # 1] at 1.  However, at oral argument on October 13, 2004, the parties stipulated to dismissal with prejudice of all Ms. Miller's claims against Michael Cummins, Barbara Mosca, and Steven Rarick [doc. ## 100-101].  Therefore, the only defendants remaining in this case are Edward Jones and Michael Mahoney.

[2]  The facts are drawn from the following pleadings and exhibits attached thereto: Edward Jones' Memorandum in Support of Summary Judgment [doc. #56] ("Edward Jones' Mem. in Supp. Summ. J."); Edward Jones' Local Rule 56(a)(1) Statement [doc. #58] ("Edward Jones' 56(a)(1) Stmt."); Plaintiff's Memorandum of Law in Opposition to Edward Jones' Motion for

an investment company.  Ms. Miller worked for Edward Jones as a Branch Office Administrator

("branch administrator") at its branch office in Stamford, Connecticut for approximately four

months, from July 7, 2001 to November 9, 2001.  Edward Jones' 56(a)(1) Stmt. ¶ 10; Pl.'s

56(a)(2) Stmt. Re: Edward Jones ¶ 10.  Edward Jones' branch offices are typically staffed by only

two employees: an investment representative and a branch administrator.  Edward Jones' 56(a)(1)

Stmt. ¶ 9; Pl.'s 56(a)(2) Stmt. Re: Edward Jones ¶ 9.  The investment representative is a retail

stockbroker and he or she has primary responsibility for the branch office; the branch

administrator provides support services to the investment representative.  Edward Jones' 56(a)(1)

Stmt. ¶¶ 9-11; Pl.'s 56(a)(2) Stmt. Re: Edward Jones  ¶¶ 9-11.  During the entire time Ms. Miller

worked for Edward Jones, she worked in the Stamford office and reported to Defendant Michael

Mahoney, who was the investment representative in the Stamford office.  Edward Jones' 56(a)1

Stmt. ¶ 1; Pl.'s 56(a)(2) Stmt. Re: Edward Jones ¶ 1.

 Ms. Miller's and Mr. Mahoney's working relationship was, at best, a rocky one.  Ms.

Miller makes numerous allegations against Mr. Mahoney (which will be discussed in greater

detail below), accusing him of making derogatory and insulting statements regarding Ms. Miller's

gender, sexuality, age and race and also of engaging in a series of harassing conduct toward her.

---

Summary Judgment [doc. #86] ("Pl.'s Mem. in Opp. to Edward Jones' Mot. for Summ. J.");
Plaintiff's Local Rule 56(a)(2) Statement Re: Edward Jones' [doc. #87] ("Pl.'s 56(a)(2) Stmt. Re:
Edward Jones"); Michael Mahoney's Memorandum in Support of his Motion for Summary
Judgment [doc. #53] ("Mahoney's Mem. in Supp. Summ. J."); Michael Mahoney's Local Rule
56(a)(1) Statement [doc. #54] ("Mahoney's 56(a)(1) Stmt."); Plaintiff's Memorandum of Law in
Opposition to Mahoney's Motion for Summary Judgment [doc. #83] ("Pl.'s Mem. in Opp.
Mahoney's Mot. for Summ. J."); Pl.'s Local Rule 56(a)(2) Statement Re: Mahoney [doc. #84]
("Pl.'s 56(a)(2) Stmt. Re: Mahoney"); Defendants' Consolidated Reply to Plaintiff's Opposition to
Summary Judgment [doc. #93] ("Defs.' Reply").  For the sake of simplicity, the Court will cite
primarily to the Local Rule 56(a)(2) Statement submitted by Edward Jones, since it incorporates
facts regarding claims against both defendants.

Edward Jones' 56(a)(1) Stmt. ¶¶ 17-47; Pl.'s 56(a)(2) Stmt. Re: Edward Jones ¶¶ 17-47.  Ms. Miller also asserts that during her brief tenure at Edward Jones, she made numerous complaints about Mr. Mahoney's behavior to various Edward Jones employees.  Edward Jones' 56(a)(1) Stmt. ¶¶ 48, 90; Pl.'s 56(a)(2) Stmt. Re: Edward Jones ¶¶ 48, 90.  She further claims that Mr. Mahoney learned about her complaints and at one point confronted her, asking: "If you had a problem with me, why didn't you just come to me?"  Miller Dep. [doc. #68] at 97.

On November 9, 2001, Ms. Miller and Mr. Mahoney had a heated discussion during which Ms. Miller claims that Mr. Mahoney began "yelling and screaming" at her in such a threatening manner that she feared for her safety.  Edward Jones' 56(a)(1) Stmt. ¶ 29-30; Pl.'s 56(a)(2) Stmt. Re: Edward Jones ¶ 29-30; Miller Dep. [doc. #68] at 354 (stating she walked out because she was afraid "of being assaulted").  Shortly after this confrontation with Mr. Mahoney on November 9, Ms. Miller wrote to Steven Rarick, an employee in the Edward Jones employee relations department.  In her November 11 letter to Mr. Rarick, Ms. Miller stated that she "cannot continue to work directly for [Mahoney]."  Edward Jones' 56(a)(2) Stmt. ¶ 89; Pl.'s 56(a)(2) Stmt. Re: Edward Jones ¶ 89; Letter of 11/11/2001, Ex. A [doc. #68].

On November 12, the day after he received Ms. Miller's letter, Mr. Rarick began an investigation of her complaints.  Edward Jones' 56(a)(1) Stmt. ¶ 91; Pl.'s 56(a)(2) Stmt. Re: Edward Jones ¶ 91.  Mr. Rarick interviewed a number of employees, including Ms. Miller and Mr. Mahoney, but he ultimately decided that Mr. Mahoney had not sexually harassed Ms. Miller or violated the company's employment policies.  Edward Jones' 56(a)(2) Stmt. ¶ 135; Pl.'s 56(a)(2) Stmt. Re: Edward Jones ¶ 135.  Nevertheless, Mr. Rarick reminded Mr. Mahoney that if he violated the company's sexual harassment policies, he would be disciplined, and possibly

3

discharged. *Id*.

Mr. Rarick also informed Ms. Miller of the results of his investigation and asked her to return to work. Ms. Miller refused to come back to work with Mr. Mahoney in the Stamford branch office, and she requested a transfer to another office. However, Edward Jones was unable to find Ms. Miller a branch administrator position in another branch office. Edward Jones' 56(a)(1) Stmt. ¶¶ 141, 152; Pl.'s 56(a)(2) Stmt. Re: Edward Jones ¶¶ 141, 152. Nevertheless, Edward Jones placed Ms. Miller on a leave of absence and continued to pay her until December 31, 2001. Edward Jones' 56(a)(2) Stmt. ¶ 137; Pl.'s 56(a)(2) Stmt. Re: Edward Jones ¶ 137.

In the November-December period, Ms. Miller retained a lawyer to represent her interests, and sometime during the month of December, Ms. Miller's attorney informed Edward Jones that Ms. Miller would never return to the Stamford office. Edward Jones' 56(a)(1) Stmt. ¶¶ 143; Pl.'s 56(a)(2) Stmt. Re: Edward Jones ¶¶ 143. On February 21, 2002, the company sent Ms. Miller's attorney a warning letter stating that if Ms. Miller did not return to work before the end of February, Edward Jones would deem her to have resigned as of February 28, 2002. *See* Letter of 2/21/2002, Ex. D, [doc. #68]. On March 5, 2002, having received no response from Ms. Miller or her lawyer, Edward Jones terminated Ms. Miller's employment due to her failure to return to work. Edward Jones' 56(a)(1) Stmt. ¶ 152; Pl.'s 56(a)(2) Stmt. Re: Edward Jones ¶ 152.

## II.

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(c). A genuine issue of fact exists when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome if the substantive law renders them so. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the moving party carries its burden, the party opposing summary judgment "may not rest upon mere allegations or denials," rather, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court must draw all ambiguities and inferences in favor of the plaintiffs. *See Anderson*, 477 U.S. at 255. However, to defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

The Second Circuit has cautioned district courts that they must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.' " *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citations omitted). Nevertheless "[s]ummary judgment is appropriate even in discrimination cases," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), since "a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp*, 118 F.3d at 110.

5

### III.

In her complaint, Ms. Miller makes numerous allegations of sexual harassment against Edward Jones.  However, at oral argument, Ms. Miller's attorney clarified that Ms. Miller brings only a hostile work environment claim against Edward Jones and she does not assert a separate claim for sexual harassment under Title VII.  Therefore, the Court will address Ms. Miller's allegations of sexual harassment only as they may support her claim for a sexually hostile work environment, which is set forth in Count Two of the complaint, and will deem any separate claim for sex harassment to have been abandoned.

To state a claim for hostile work environment based on sex, a plaintiff must demonstrate "conduct (1) that is 'objectively' severe or pervasive – that is [conduct that] creates an environment that a reasonable person would find hostile or abusive [the 'objective' requirement], (2) that the plaintiff 'subjectively' perceive[s] as hostile or abusive [the 'subjective' requirement], and (3) that creates such an environment *because of* plaintiff's sex . . . [the 'prohibited causal factor' requirement]."  *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (emphasis added). In order to be actionable, the conduct complained of must be must be " 'sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment.' "  *Pa. State Police v. Suders*, 124 S. Ct. 2342, 2347 (2004) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)); *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) ("the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive") (citation and quotation marks omitted).  However, "the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all

but the most egregious cases." *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (citation omitted).

Courts use a "totality of the circumstances" approach for determining whether a plaintiff's work environment is sufficiently hostile to support a hostile work environment claim. Among the factors courts must consider are: "(1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's work performance." *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 319 (2d Cir. 1999) (citations and quotations omitted). A plaintiff can establish a hostile work environment by showing "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Cruz v. Coach Stores, Inc*., 202 F.3d 560, 570 (2d Cir. 2000) (citation and quotation marks omitted).

Ms. Miller bases her hostile work environment claim primarily on Mr. Mahoney's alleged hostility based on her gender, but she also argues that the sexually hostile environment he created was exacerbated by his hostility toward her based on her age and religion as well. *See Cruz*, 202 F.3d at 572 (stating that one type of hostility can exacerbate the effect of another, and that such aggravating harm is legally cognizable). The Second Circuit recently clarified in *Feingold* that Mr. Mahoney's alleged hostility to Ms. Miller based on age and religion can be considered by the trier-of-fact when evaluating her primary hostile work environment claim based on gender. *Feingold*, 336 F.2d at 151-52.

According to Ms. Miller, Mr. Mahoney, who is homosexual, engaged in a lengthy list of hostile acts during the four months that they worked together, including but not limited to the

following conduct: (1) telling Ms. Miller, who is heterosexual, that she would make a "good lipstick lesbian," *see* Miller Dep. [doc. #68] at 298-99; (2) suggesting, nearly a dozen times, that she take some of his lesbian clients out to dinner and implying that she should engage in sexual relations with them, *see id.* at 186, 188, 305; (3) asking her about her sons' sexual orientations, *see id.* at 301-02; (4) asking if her boyfriend was gay, *see id.* at 73-74, 186-87; (5) noting on a few occasions that she "had a nice rack," *see id.* at 199; (6) informing her that she was too old for her job, *see id.* at 232; (7) deliberately mispronouncing the names of Jewish clients in her presence, see *id.* at 125, 315-16; (8) calling her at home during a Jewish holiday, *see id.* at 321; and (9) refusing to give her time off for Succoth, *see id.* at 314-15.  *See also* Edward Jones' 56(a)1 Stmt. ¶ 17-46; Pl.'s 56(a)(2) Stmt. Re: Edward Jones ¶ 17-46.

Taking Ms. Miller's allegations as true, as the Court must at this stage, the Court concludes that a reasonable jury could find that Mr. Mahoney's conduct toward Ms. Miller was severe and pervasive enough to create an environment that a reasonable person would find hostile and that Ms. Miller subjectively perceived this environment as hostile and abusive. Therefore, Ms. Miller has submitted sufficient evidence to satisfy the first two of the three requirements of her hostile work environment claim.  *See, e.g.*, *Cruz*, 202 F.3d at 570-71 (ongoing barrage of racial slurs and sexist comments was sufficient to allege a racially-hostile environment); *Raniola v. Bratton*, 243 F.3d 610, 621 (2d Cir. 2001) (triable issues existed where plaintiff demonstrated that she was subjected to offensive sex-based remarks, disproportionately burdensome assignments, and workplace sabotage over the course of two and a half years); *Burford v. McDonald*'s *Corp.*, 321 F. Supp. 2d 358, 363 (D. Conn. 2004) (denying summary judgment to employer where plaintiff's supervisor made repeated comments about her anatomy

and engaged in unwanted physical contact with her).

However, Edward Jones contends that Ms. Miller has not submitted evidence satisfying the third, "prohibited causal factor" requirement – that is, evidence from which a reasonable juror could conclude that Mr. Mahoney's conduct and comments were *because of* Ms. Miller's sex. In particular, Edward Jones argues that the "undisputed fact that Mr. Mahoney was homosexual" negates *any* possible inference that Mr. Mahoney could have harassed Ms. Miller on the basis of her sex. *See* Edward Jones' Mem. in Supp. Summ. J. at 10. The Court disagrees. It is well established that "[h]arassing conduct need not be motivated by a sexual desire to support an inference of discrimination on the basis of sex. A trier of fact might reasonably find such discrimination," for example, "if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace." *Oncale v. Sundowner Offshore Servcs., Inc.*, 523 U.S. 75, 80-81 (1998) (also recognizing that a claim of same-sex harassment would be cognizable where there "is evidence that the harasser was homosexual"). A plaintiff's ability to make out a claim for sex-based harassment is not necessarily dependent on the gender or sexual orientation of the individuals involved. Rather, such a claim is dependent on whether there is evidence from which a reasonable trier of fact could conclude that the hostile work environment was created because of the plaintiff's gender. The Court concludes that Ms. Miller has satisfied that standard.

Edward Jones also makes much of the fact that at one point during her deposition, Ms. Miller stated that Mr. Mahoney harassed her because of her sexual orientation, rather than because of her sex. This distinction is crucial to Ms. Miller's Title VII claim, because "Title VII

9

does not proscribe discrimination because of sexual orientation."[3]  *Simonton v. Runyon*, 232 F.3d 33, 36 (2d Cir. 2000); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 259 (1st Cir. 1999); *Williamson v. A.G. Edwards & Sons, Inc.*, 876 F.2d 69, 70 (8th Cir. 1989).  Nevertheless, the Court does not find the colloquy during Ms. Miller's deposition to be dispositive.  In fact, it appears far more likely to this Court that Ms. Miller was confused by defense counsel's line of questioning.  *See* Miller Dep. [doc. #68] at 298-303.  Thus, when the defense counsel asked Ms Miller, "Are you saying that Mr. Mahoney did something that discriminated against you based on your gender, that you're female?" Ms. Miller asked her attorney, "I don't quite understand what he's saying to me.  Do you understand what he's saying?"  *Id*. at 298.  Shortly thereafter, defense counsel asked Ms. Miller if her claim was that Mr. Mahoney "was discriminating against you because of your heterosexual orientation?" and Ms. Miller responded "[t]hat was *one* reason."  *Id*. (emphasis added).

Ms. Miller never testified that Mr. Mahoney's conduct was based solely upon her sexual orientation, as Edward Jones contends.  In any event, regardless how Ms. Miller's answer to that single question should be construed, the Court believes that a reasonable juror could find from the entirety of her testimony about Mr. Mahoney's comments and conduct that he was harassing her and was hostile to her on the basis of her gender.

That conclusion does not end the analysis, however.  For Ms. Miller must also show that "a specific basis exists for imputing the conduct [of Mr. Mahoney] that created the hostile

---

[3] By contrast, Connecticut's statutory prohibition on employment discrimination extends to discrimination on the basis of sexual orientation.  *See Levy v. Comm'n on Human Rights and Opportunities,* 236 Conn. 96, 102 (1996) ("state law protects individuals from employment discrimination based upon their sexual orientation").

10

environment to the employer [Edward Jones]." *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 436 (2d Cir. 1999). Where, as here, the harassment is perpetrated by the victim's supervisor, an employer is presumed absolutely liable, although the employer may be able to interpose an affirmative defense to rebut that presumption. *Id*. at 441 (citing *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)). Where the harassment is attributed to a supervisor, a court first asks whether the supervisor's behavior culminated in a "tangible employment action" against the employee. "If it did, 'the employer will, *ipso facto*, be vicariously liable.' " *Petrosino v. Bell Atlantic*, 385 F.3d 210, 225 (2d Cir. 2004) (quoting *Mack v. Otis Elevator Co.*, 326 F.3d 116, 124 (2d Cir. 2003)) (internal citations omitted).

For purposes of her hostile work environment claim, Ms. Miller does not claim that the hostile environment created by Mr. Mahoney culminated in a tangible employment action. In those circumstances, the employer is entitled to interpose an affirmative defense known as the *Faragher/Ellerth* defense. In order to succeed on the *Faragher/Ellerth* defense, the employer must show that it: "(a) exercised reasonable care to prevent and correct promptly any sexually harassing behavior and (b) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employee, or to avoid harm otherwise." *Petrosino*, 385 F.3d at 225 (internal quotation and citations omitted). The burden on both requirements is borne by the employer, not the employee. *See Fitzgerald v. Henderson*, 251 F.3d 345, 357 (2d Cir. 2001).

Although it is a close question, the Court concludes that there are genuine issues of material fact regarding whether Edward Jones satisfies the first prong of the affirmative defense –

11

that is, whether it exercised reasonable care to prevent and promptly correct any sexually harassing behavior after receiving Ms. Miller's complaint. It is undisputed that Edward Jones had a sexual harassment policy in place that identified the Associate Relations Department as the "only department in the firm with the authority and responsibility for investigating sexual harassment claims." Edward Jones' 56(a)(1) Stmt. ¶ 13; Pl.'s 56(a)(2) Stmt. Re: Edward Jones ¶ 13. As soon as Ms. Miller complained to Mr. Rarick through her letter on November 11, 2001, Mr. Rarick promptly followed up on her complaints and conducted an investigation. Edward Jones' 56(a)(1) Stmt. ¶ 91; Pl.'s 56(a)(2) Stmt. Re: Edward Jones ¶ 91. It is also undisputed that although Mr. Rarick ultimately concluded that Mr. Mahoney had not violated any of Edward Jones' employment policies and that his conduct did not warrant termination or discipline, Mr. Rarick nonetheless warned Mr. Mahoney that any further allegations of misconduct could result in discipline. Edward Jones' 56(a)(1) Stmt. ¶ 135; Pl.'s 56(a)(2) Stmt. Re: Edward Jones ¶ 135. As a consequence, Ms. Miller does not allege that Mr. Rarick's investigation was inadequately performed. Nor does she argue that Mr. Rarick's conclusions themselves were unreasonable. *See Swenson v. Potter*, 271 F.3d 1184, 1196 (9th Cir. 2001) ("Obviously, the employer can act reasonably, yet reach a mistaken conclusion as to whether the accused employee actually committed harassment."); *See also Shaw v. AutoZone, Inc.*, 180 F.3d 806, 812 (7th Cir. 1999) ("the law does not require success--it only requires that an employer act reasonably to prevent sexual harassment").

Instead, Ms. Miller asserts that in the particular circumstances of this case, Edward Jones was unreasonable in refusing to separate Mr. Mahoney from her – either by reassigning Mr. Mahoney to a different office or granting Ms. Miller's request to be assigned to a different office.

12

Thus, she argues, the company offered her no alternative other than to return to work in a two-person office alone with the man (her supervisor) who was continually harassing her. The record shows that Edward Jones considered Ms. Miller's request to transfer to another office with a different investment representative, but the company was unable to find an open branch administrator position. Edward Jones' 56(a)(1) Stmt. ¶¶ 141, 152; Pl.'s 56(a)(2) Stmt. Re: Edward Jones ¶¶ 141, 152. As a result, Edward Jones was certainly in a difficult situation, and a trier of fact could, therefore, conclude that the company acted reasonably.

However, this case involves a branch office that consists of only two individuals and yet, the company made the decision not to separate Mr. Mahoney and Ms. Miller, despite Ms. Miller's concerns and complaints of harassment. Instead, in the face of Ms. Miller's complaints of harassment, the company required her to return to work alone with her alleged harasser, where there would be no witnesses and no one to protect Ms. Miller from further inappropriate conduct by Mr. Mahoney. In those circumstances, the Court cannot conclude as a matter of law that Edward Jones has so conclusively demonstrated the reasonableness of its remedial actions "so as to be absolved from liability for any gender-hostile work environment created" by Mr. Mahoney. *Petrosino*, 385 F.3d at 226 (reversing district court's grant of summary judgment where questions remained as to the effectiveness of employer's corrective actions); *White v. BFI Waste Services, LLC*, 375 F.3d 288, 299 (4th Cir. 2004) (denying summary judgment where there were "issues of material fact exist as to whether the policy was effectively enforced"); *Cardenas v. Massey*, 269 F.3d 251, 267 (3d Cir. 2001) (same); *see also Hatley v. Hilton Hotels Corp.*, 308 F.3d 473, 475 (5th Cir. 2002) (jury could find that employer acted unreasonably in failing to separate employees from their harassing supervisors). Accordingly, the Court denies summary judgment to Edward

13

Jones on Ms. Miller's hostile work environment claim under Title VII.

As to Ms. Miller's state law claims, at oral argument, the parties agreed that Ms. Miller's state hostile work environment claims should rise or fall with her federal claims. Therefore, the Court also denies Edward Jones summary judgment as to Ms. Miller's sex-based harassment claims in Counts Five and Ten under Conn. Gen. Stat. §§ 46a-60(a)(1) and 46a-60(a)(8)(c), the state statutory provisions regarding employment discrimination (including sexual-orientation discrimination) and hostile work environment claims, respectively. However, the Court concludes that there is no evidence supporting Ms. Miller's claims in Counts Eight and Nine under Conn. Gen. Stat. §§ 46a-60(a)(8)(a) and (b), which "refer to a type of sexual harassment known as 'quid pro quo.' " *Britell v. State*, No. CV 930351853S, 1997 WL 583840, at *13 (Conn. Super. Ct. Sep. 9, 1997). "The relevant inquiry in a quid pro quo case is whether the supervisor has linked tangible job benefits to the acceptance or rejection of sexual advances." *Karibian v. Columbia Univ.*, 14 F.3d 773, 778 (2d Cir. 1994). Ms. Miller has not alleged that Mr. Mahoney made any sexual advances towards her and has not alleged that any job benefits were conditioned on her acceptance of sexual advances. Therefore, the Court grants summary judgment to Edward Jones on Ms. Miller's claims in Counts Eight and Nine under Conn. Gen. Stat. §§ 46a-60(a)(8)(a) and (b).

## IV.

Ms. Miller's complaint also includes independent claims against Edward Jones for hostile work environment based on age and religion. *See* Compl. [doc. #1], Counts Two, Three and Five. At oral argument, however, Ms. Miller's counsel acknowledged that the record does not support an independent claim for a hostile work environment based on age. The Court concludes

14

that Ms. Miller cannot sustain a religion-based hostile work environment claim either.

The incidents that Ms. Miller relies on to support this claim consist of the following: (1) Mr. Mahoney mispronouncing the names Jewish clients and Jewish holidays; (2) Mr. Mahoney calling Ms. Miller at home during one Jewish holiday; (3) denying Ms. Miller time off for the holiday of Succoth; and (4) denying her request to leave early on Yom Kippur. *See* Edward Jones' 56(a)(1) Stmt. ¶¶ 45-47; Pl.'s 56(a)(2) Stmt. Re: Edward Jones ¶¶ 45-47. On the basis of this record, a reasonable jury could not find that these isolated incidents occurring over a span of four months were independently so "severe and pervasive" such that they, standing alone, "altered the terms of [Ms. Miller's] employment" and support an independent claim for religion-based discrimination. *Feingold*, 366 F.3d at 150 ("[T]he law requires harassment to be severe or pervasive before it can be actionable."). *See also Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998)) ("isolated remarks or occasional episodes of harassment will not merit relief under Title VII.") (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1306 n.5 (2d Cir. 1995). Therefore, the Court grants Edward Jones' motion for summary judgment with respect to Ms. Miller's age and religion-based hostile work environment claims under both state and federal law described in Counts Two, Three and Five of the Complaint.

## V.

Ms. Miller also asserts a Title VII retaliation claim against Edward Jones. *See* Compl. [doc. #1], Count Four. "In order to 'establish a prima facie case of retaliation, an employee must show: (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.' " *Feingold*, 366 F.3d at 156 (quoting *Quinn*, 159 F.3d at 769).

15

Ms. Miller alleges that Edward Jones retaliated against her by refusing to fire Mr. Mahoney and deliberately offering her no other choice than to return to work with Mr. Mahoney. Even assuming that Ms. Miller has established the first two elements of her claim, the Court cannot find any evidence in the record from which a jury could find that Edward Jones took the alleged adverse actions against Ms. Miller in retaliation for her complaints about Mr. Mahoney. In other words, Ms. Miller has produced no evidence that would allow a reasonable jury to conclude that there was a causal connection between her complaints against Mr. Mahoney and Edward Jones' refusal to discipline Mr. Mahoney or transfer Ms. Miller to another branch office.

It is undisputed that when Ms. Miller requested a transfer to another office, Edward Jones tried to find another opening for Ms. Miller, but no opening existed. *See* Edward Jones' 56(a)(1) Stmt. ¶¶ 141, 152; Pl.'s 56(a)(2) Stmt. Re: Edward Jones ¶¶ 141, 152. While there may be a question whether Edward Jones' actions constituted a reasonable response to Ms. Miller's complaints, as discussed above, Ms. Miller has not alleged any facts that would permit a jury to conclude that Edward Jones deliberately refused to transfer her to another branch office in retaliation for her complaints about Mr. Mahoney. Indeed, Ms. Miller's attorney conceded as much at oral argument. Similarly, there is no evidence that Edward Jones refused to fire Mr. Mahoney in retaliation for Ms. Miller's complaints. Even Ms. Miller does not dispute that Mr. Rarick investigated her complaints and simply concluded that Mr. Mahoney did not violate any company policy and that his conduct did not warrant termination. Edward Jones' 56(a)(2) Stmt. ¶ 135; Pl.'s 56(a)(2) Stmt. Re: Edward Jones ¶ 135.

Therefore, the Court grants Edward Jones' motion for summary judgment on Ms. Miller's retaliation claim under Title VII in Count Four. As with the other federal claims, the parties

agreed at oral argument that Ms. Miller's state law claim against Edward Jones for retaliation parallels her claim under Title VII. Therefore, the Court also grants summary judgment to Edward Jones on Ms. Miller's retaliation claim in Count Six under Conn. Gen. Stat. § 46a-60(a)(4).

## VI.

Ms. Miller also asserts certain statutory claims against Mr. Mahoney. In Count Six, she claims that Mr. Mahoney, individually, retaliated against her in violation of Conn. Gen. Stat. § 46a-60(a)(4). The elements of a claim of retaliation under § 46a-60(a)(4) are the same as for a retaliation under Title VII. *See Conte v. New Haven Bd. of Educ.*, No. CV020466475, 2003 WL 21219371, at *5 (Conn. Super. Ct. May 15, 2003) (citing *Treglia v. Manlius*, 313 F.3d 713, 720 (2d Cir. 2002)). However, unlike Title VII, an individual may be held liable under Connecticut's retaliation provision. *See Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 203 (D. Conn. 2000) ("[R]ecovery against a supervisory employee may be cognizable under the retaliation provision contained in section 46a-60(a)(4)."); *Robinson v. Conn. Rental Ctrs., Inc.*, No. CV 990087536, 2000 WL 1196689, at *3 (Conn. Super. Ct. Aug. 7, 2000) ("With respect to §§ 46a-60(a)(4) . . . the superior courts have clearly stated that an individual employee or supervisory employee may be held liable for violations of [the statute].").

Ms. Miller's claim, as explained by her attorney at oral argument, is that when Mr. Mahoney learned that Ms. Miller had complained about his behavior to Edward Jones employees, he retaliated against her by intensifying his harassing behavior. Ms. Miller's claim fails because she cannot establish the first prong of her *prima facie* case – that her complaints constituted a protected activity.

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz*, 202 F.3d at 566.  "Implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Galdieri-Ambrosini*, 136 F.3d 276, 292 (2d Cir. 1998); *Jamil v. Sec'y, Dep't of Defense*, 910 F.2d 1203, 1207 (4th Cir. 1990) ("Title VII is not a general 'bad acts' statute.").

The focus of the Court's inquiry is on substance rather than form.  Informal complaints like Ms. Miller's can constitute a protected activity, so long as they involve some "indicia of a complaint made against an unlawful activity." *Moran v. Fashion Inst. of Tech.*, No. 00CIV1275(KMW), 2002 WL 31288272, at *8 (S.D.N.Y. Oct. 7, 2002); *Cifra v. General Electric Co.*, 252 F.3d 205, 208 (2d Cir. 2001) (formal complaint not required).  Thus, complaints that are vague and ambiguous and do not sufficiently articulate the nature of the harassment do not constitute a protected activity.  *See, e.g.*, *West v. Mt. Sinai Med. Ctr.*, No. 00 Civ. 6191 (CBM), 2002 WL 530984, at *3-4 (S.D.N.Y. Apr. 9, 2002) (plaintiff did not specify that there was anything sexual about her alleged harasser's conduct, thus no reasonable jury could conclude that the employer understood that her complaint implicated Title VII).

As a preliminary matter, the Court notes that any complaints Ms. Miller made to members of the associate relations department following her November 9 confrontation with Mr. Mahoney (which did constitute protected activity since they were based on claims of gender-based discrimination) are irrelevant to her retaliation claim against Mr. Mahoney.  The reason is that Ms. Miller did not return to work after that date, foreclosing any possibility of further retaliation by Mr. Mahoney based on her protected activity following the November 9

18

confrontation.  *See* Edward Jones' 56(a)(1) Stmt. ¶ 136; Pl.'s 56(a)(2) Stmt. Re: Edward Jones ¶ 136.

Focusing on Ms. Miller's complaints about Mr. Mahoney before November 9, the facts show that Ms. Miller told Kristen Commander, another office administrator, that Mr. Mahoney was "very demanding" and that he threatened to fire Ms. Miller if she did not clean the office or get his lunch.  Edward Jones' 56(a)(1) Stmt. ¶ 61, 78; Miller Dep. at 125-26 [doc. #68].  She also told Lyn Vasil, also an office administrator, that she found Mr. Mahoney "a bit odd" and that he often had Ms. Miller do personal work for him.  Edward Jones' 56(a)(1) Stmt. ¶¶ 66, 68-69; Miller Dep. at 85; 95-96 [doc. #68].  The only complaint that Ms. Miller made prior to November 9 that intimated any conduct by Mr. Mahoney of even a vaguely sexual nature was when she told Ms. Vasil and Ms. Commander that Mr. Mahoney had asked her whether either of her sons was gay.  Edward Jones' 56(a)(1) Stmt. ¶¶ 77; Pl.'s 56(a)(2) Stmt. Re: Edward Jones ¶¶ 77.

On the basis of these complaints, a reasonable fact-finder could not conclude that Ms. Miller's pre-November 9 complaints were directed at conduct prohibited by Title VII.  *See Moran*, 2002 WL 31288272 at *8-*9 (plaintiff never stated he objected to his supervisor's conduct on the grounds of sexual harassment); *Lapsley v. Columbia Univ.-Coll. of Physicians  & Surgeons*, 999 F. Supp. 506, 524-25 (S.D.N.Y. 1998) (complaint too vague when plaintiff said she felt discrimination, but never articulated that the basis of her belief was race)*.  See also Weaver v. Ohio State Univ.*, 71 F. Supp. 2d 789, 793-94 (S.D. Ohio) ("[c]omplaints concerning unfair treatment in general which do not specifically address discrimination are insufficient to constitute protected activity"), *aff'd*, 194 F.3d 1315 (6th Cir. 1999).  Accordingly, the Court

19

grants summary judgment in favor of Mr. Mahoney on Ms. Miller's retaliation claim in Count Six of the Complaint.

Ms. Miller also asserts a statutory claim against Mr. Mahoney for aiding and abetting a discriminatory employment practice under Conn. Gen. Stat. § 46a-60(a)(5).[4]  *See* Compl. [doc. #1] at Count Seven.  She alleges that Mr. Mahoney aided and abetted Edward Jones in retaliating against her.  Mr. Mahoney argues that individuals cannot be sued under § 46a-60(a)(5). However, at least one Superior Court has held to the contrary.  *See Balog v. Shelton Restaurant, LLC*, No. CV040084313S, 2004 WL 1965919, *5 (Conn. Super. Ct. Aug. 2, 2004) *(*citing *Perodeau v. Hartford*, 259 Conn. 729, 737-38 (2002) ("Unlike subsection (a)(1) of § 46-60, subsections (a)(4) and (a)(5) clearly impose liability on any person.") (internal quotations omitted).

Nevertheless, the Court need not decide this issue because Ms. Miller's aiding and abetting claim fails for a different reason.  Having determined that Ms. Miller cannot sustain a claim against Edward Jones for retaliation, Mr. Mahoney would be left without anyone to aid or abet, and it is clear that "one cannot aid or abet oneself."  *Iyorbo v. Quest Int'l Food Flavors & Food Ingredients Co.*, No. Civ. 03-5276, 2003 WL 22999547, at *3 (D. Minn. Dec. 19, 2003) (discussing Minnesota's employment discrimination statute which has a similar "aiding and abetting" provision).  Therefore, the Court grants Mr. Mahoney's motion for summary judgment on Ms. Miller's aiding and abetting claim under § 46a-60(a)(5) in Count Seven of the Complaint.

**VII.**

---

[4] Ms. Miller abandoned her aiding and abetting claim against Edward Jones at oral argument, and therefore Edward Jones is entitled to summary judgment on that claim, Count Seven of the Complaint.

Not content with her numerous statutory claims against Defendants, Ms. Miller also alleges an assortment of state common law claims. The Court will address each claim in turn.

**Negligent Infliction of Emotional Distress.** Under Connecticut law, "negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process." *Parsons v. United Tech.*, 243 Conn. 66, 88-89 (1997) (citations and quotation marks omitted). Thus, "the mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress." *Id.* Generally, the mere act of firing an employee, "even if wrongfully motivated does not transgress the bounds of socially tolerable behavior." *Id.* By her own admission, Ms. Miller was deemed to have resigned after being advised twice by letter that her failure to return to work would be considered a voluntary resignation. *See* Edward Jones' 56(a)1 Stmt. ¶¶ 144, 152; Pl.'s 56(a)(2) Stmt. Re: Edward Jones ¶¶ 144, 152.

On the basis of this record, a reasonable jury could not find that she was terminated in a manner that "transgress[ed] the bounds of socially tolerable behavior." *See, e.g., Parsons*, 243 Conn. at 89 (claim failed where employee was terminated two hours after he refused a work assignment and was escorted out of the building by security personnel) (citations and quotation marks omitted); *Muniz v. Kravis*, 59 Conn. App. 704, 709 (2000) (no cause of action where plaintiff was terminated and told to move out of her company residence within 24 hours while she was home recovering from surgery). Therefore, the Court grants summary judgment in favor of Edward Jones on Ms. Miller's claim for negligent infliction of emotional distress in Count Twelve of the Complaint.

**Invasion of Privacy.** Although Ms. Miller did not specify which species of invasion

of privacy she invokes in Count Thirteen of the Complaint, the Court assumes that she seeks to

assert a claim against Defendants for intrusion upon seclusion.[5]  To be liable for intrusion upon

seclusion under Connecticut law, a defendant must invade the privacy of the plaintiff in such a

way that the "intrusion would be highly offensive to a reasonable person."  *Bonanno v. Dan*

*Perkins Chevrolet*, No. CV99-066602, 2000 WL 192182, at *1 (Conn. Super. Ct. Feb. 4, 2000).

Ordinarily, the question of whether certain actions would be "highly offensive to a reasonable

person" is a "for the jury to decide."  *Rafferty v. Hartford Courant Co.*, 36 Conn. Supp. 239,

240-41 (1980).

Defendants argue that Mr. Mahoney's conduct cannot constitute invasion of privacy as a

matter of law because this tort requires a physical invasion.  However, the Connecticut Superior

Court has held that "[h]ighly personal questions or demands by a person . . .  may be regarded as

an intrusion on psychological solitude or integrity and hence an invasion of privacy."  *Bonanno*,

2000 WL 192182, at *2 (quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and*

*Keeton on Law of Torts* § 117 (5th ed. Supp. 1988)); Restatement (Second) of Torts § 652B

(1981) (claim lies against "one who intentionally intrudes, physically or *otherwise . . .*")

(emphasis added).

In *Bonanno*, the court held that "defendant's supposed comments regarding plaintiffs' sex

life" were "highly offensive and adequately suffice in setting forth this cause of action."

*Bonanno*, 2000 WL 192182, at *2.  *See also Cartwright v. Tacala, Inc.*, 2000 WL 33287445, at

_____

[5] The other three varieties of the invasion of privacy tort recognized under Connecticut
law (appropriation, false light, and public disclosure of private fact) clearly do not apply to the
present case).  *See Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107, 128
(1982).  *See also* Restatement (Second) of Torts § 652A (1981) (laying out the four varieties of
invasion of privacy torts).

*15 (M.D. Ala. Nov. 1, 2000) (questions about plaintiff's sexual relations with a co-worker supported intrusion claim); *Van Jelgerhuis v. Mercury Finance Co.*, 940 F. Supp. 1344, 1368 (S.D. Ind. 1996) (questions of a sexual nature in the workplace can constitute invasion of privacy). Here, Ms. Miller alleges that Mr. Mahoney asked about the sexual orientation of her boyfriend and her two sons. Thus, the Court finds that a genuine issue of material fact exists as to whether Mr. Mahoney invaded Ms. Miller's privacy by intruding upon her seclusion as provided by Connecticut law. Accordingly, the Court denies Mr. Mahoney's motion for summary judgment on Ms. Miller's invasion of privacy claim in Count Thirteen of the Complaint.

Ms. Miller also asserts an invasion of privacy claim against Edward Jones. As described above, she bases her invasion of privacy claim solely on the allegedly intrusive comments made to her by Mr. Mahoney. Therefore, there is no basis on which a jury could conclude that Edward Jones directly invaded Ms. Miller's privacy.

The only way that Edward Jones could be liable for Mr. Mahoney's invasion of her privacy is through vicarious liability as Mr. Mahoney's employer. However, the record does not contain facts that would allow a jury to conclude that Edward Jones is vicariously liable for Mr. Mahoney's conduct in this respect. Invasion of privacy is an intentional tort. The Connecticut Supreme Court "ha[s] long adhered to the principle that in order to hold an employer liable for the intentional torts of his employee, the employee must be acting within the scope of his employment and in furtherance of the employer's business." *Radesky v. First American Title Ins. Co.,* No. 3:02CV1304 (JBA), 2003 WL 22119183, *4 (D. Conn. 2003) (citations and quotation marks omitted). While the question is "often one of fact for the jury, there are times when conduct is so clearly outside the scope employment that it is a question of law." *Id.*; *Brown v.*

*Hous. Auth.*, 23 Conn. App. 624, 628 (1990) (same).  This is just such a case.

On the facts of this case, no reasonable jury could conclude that Mr. Mahoney's comments inquiring into the sexual orientation of her boyfriend and her sons were made in furtherance of Edward Jones' business.  If anything, the record shows that these comments hurt Edward Jones' business by fostering an antagonistic relationship between Ms. Miller and Mr. Mahoney, the sole occupants of a two-person office.  Furthermore, the Court's conclusion is consistent with the decisions of Connecticut state and federal courts that "have held as a matter of law that when the tortfeasor-employee's activity with the alleged victim became sexual, the employee abandoned and ceased to further the employer's business."  *Coupe v. East Hartford Bd. of Educ.*, No. CV 970568125S, 1998 WL 83230, at *3 (Conn. Super. Ct. Feb. 17, 1998) (citing *Gutierrez v. Thorne*, 13 Conn. App. 493, 498-500 (1988) and *Nutt v. Norwich Roman Catholic Diocese*, 921 F. Supp. 66, 71-72 (D. Conn. 1995)).  Therefore, the Court grants Edward Jones' motion for summary judgment on Ms. Miller's claim for invasion of privacy against Edward Jones in Count Thirteen of the Complaint.

**Intentional Infliction of Emotional Distress**.    Ms. Miller also sues both Mr. Mahoney and Edward Jones for intentional infliction of emotional distress.  *See* Compl. [doc. #1], Count Eleven.  Under Connecticut law, a plaintiff making a claim from intentional infliction of emotional distress must show that: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Berube v. Nagle*, 81 Conn. App. 681, 698 (2004).

The only element in real dispute between the parties at this stage is whether Mr. Mahoney's conduct was extreme or outrageous. "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Only where reasonable minds disagree does it become an issue for the jury." *Appleton v. Bd. of Educ.*, 254 Conn. 205, 210 (2000) (internal citation and quotation omitted). "Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society." *Id.* (citations and quotations omitted). While ordinarily mere insults do not suffice, Connecticut courts have found that "racial, ethnic, religious or sexual slurs" in the workplace may be sufficiently extreme or outrageous to support a claim for intentional infliction of emotional distress. *Leone v. New England Communications*, No. CV010509752S, 2002 WL 1008470, at *3 (Conn. Super. Ct. April 10, 2002) (finding comments made by co-workers regarding the plaintiff's sexuality, sexual performance, and race to be extreme and outrageous and collecting cases). Accordingly, a reasonable jury could decide that Mr. Mahoney's allegedly derogatory comments and conduct were sufficiently extreme and outrageous in the context of a working relationship. Therefore, the Court denies Defendant Mahoney's motion for summary judgment on Ms. Miller's claim of intentional infliction of emotional distress.

By contrast, Ms. Miller cannot maintain a claim for intentional infliction of emotional distress against Edward Jones, either directly or on the basis of vicarious liability. Ms. Miller alleges that Edward Jones failed to effectively address Mr. Mahoney's harassing conduct, retaliated against her for her complaints, and refused to arrange for Ms. Miller to work with someone else other than Mr. Mahoney. *See* Pl.'s Mem. in Opp. to Edward Jones' Mot. for Summ.

25

J. at 28-29.  Ms. Miller's claim fails as a matter of law.  To begin with, the Court has already granted summary judgment in favor of Edward Jones on Ms. Miller's retaliation claim. Therefore, she cannot base her claim for intentional infliction of emotional distress on that ground.

Additionally, courts in this circuit have held that employers "failure 'to respond' or 'to prevent,' or 'choos[ing] to ignore,' [harassing conduct by another employee] does not rise to the level of extreme and outrageous behavior nor does it constitute a basis for vicarious liability for the acts of another." *Kilduff v. Cosential, Inc.*, 289 F. Supp. 2d 12, 22 (D. Conn. 2003) (citations omitted) (collecting cases); *Abate v. Circuit-Wise, Inc.*, 130 F. Supp. 2d 341, 348 (D. Conn. 2001) (an employer's alleged failure to prevent sexual harassment did not rise to the level of extreme and outrageous conduct).  As with Ms. Miller's invasion of privacy claim, there is nothing in the facts that suggests that the alleged comments made by Mr. Mahoney regarding Ms. Miller's religion and race were done in the furtherance of Edward Jones' business.  Therefore, the Court grants Edward Jones' motion for summary judgment on Ms. Miller's claim for intentional infliction of emotional distress in Count Eleven of the Complaint.

**Assault**.  As her attorney conceded at oral argument, Ms. Miller bases her claim for assault exclusively on a confrontation she had with Mr. Mahoney on November 9, 2000 after she arrived to work late.  Mahoney's 56(a)(1) Stmt. ¶ 7; Pl.'s 56(a)(1) Stmt. Re: Mahoney ¶ 7.  It is undisputed that Ms. Miller and Mr. Mahoney argued, and both raised their voices.  *Id*.  Ms. Miller further alleges that Mr. Mahoney invaded her space and "threaten[ed] [her] by his hollering in [her] face."  Miller Dep. at 246 [doc. #68].  "A civil assault is the intentional causing of imminent apprehension of harmful or offensive contact in another."  *Dewitt v. John Hancock*

*Mut. Life Ins. Co.*, 5 Conn. App. 590, 594 (1985) (quoting 1 Restatement (Second), Torts § 21)).

Mr. Mahoney argues that Ms. Miller's claim fails as a matter of law because there was no

offensive touching, or "attempt with force or violence to do corporeal offense."  Mahoney's

Mem. in Supp. Summ. J. at 18.

While it is true that Connecticut courts have stated that  "[a]n assault cannot be

accomplished by words alone," it is also true that "no actual contact is required."  *Norman v.*

*Distasio*, No. CV960389982S, 2001 WL 761135, at *3 (Conn. Super. Ct. June 15, 2001)

(quoting Douglass B. Wright, et al., *Connecticut Law of Torts*, § 6, at 8 (3d ed. 1991)).  Only "an

overt act evidencing some corporeal threat" is required to transform "mere words" into an assault.

 *Norman,* 2001 WL 761135 at *3.  *See also Stack v. Perez*, 248 F. Supp. 2d 106, 110 (D. Conn.

2003) ("an assault requires an overt act evidencing an attempt to do bodily harm, which falls

short of a battery") (citations omitted).  Ms. Miller alleges that Mr. Mahoney berated her for

allegedly bouncing a company check, warning her that "[n]obody F's with me . . . and gets away

with it," and while "yelling at [her] and spitting at [her]" he moved within "just a couple inches

from [her] face."  Miller Dep. at 354 [doc. #68].  After this confrontation, she walked out

because she "was afraid . . . of being assaulted."  *Id.*

This claim appears to this Court to be extremely thin.  However, given the fact that there

are numerous issues of material fact in dispute regarding this alleged incident and that there is a

need to conduct a trial of this dispute in any event, the Court concludes that it is best at this stage

to deny Mr. Mahoney's motion for summary judgment on the assault claim set forth in Count

Fourteen of the Complaint [doc. #1].

**Negligent Hiring, Supervision and Retention**.  Finally, in Count Fifteen of the

27

Complaint, Ms. Miller claims that Edward Jones negligently hired, supervised and retained Mr. Mahoney. These claims are unsupported by the facts.

"Under Connecticut law, a negligent hiring claim requires a plaintiff to plead and prove that he was injured by the defendant's own negligence in failing to select as its employee a person who was fit and competent to perform the job in question and that his injuries resulted from the employee's unfit or incompetent performance of his work." *Abate*, 130 F. Supp. 2d at 344 (D. Conn. 2001). Furthermore, "[t]o survive the motion for summary judgment, the plaintiff[] must allege that the [employer] knew or should have known that [the tortfeasor employee] would have engaged in these alleged activities before he was hired such that the [employer] should have been aware that he was reasonably likely to engage in the conduct about which the plaintiff[] now complain[s]." *Doe v. Bradley Mem'l Hosp.*, No. CV010509999, 2003 WL 22133707, at *4 (Conn. Super. Ct. July 24, 2003); *DeMaria ex rel. DeMaria v. Country Club of Fairfield*, No. CV02365908S, 2003 WL 356700, at *4 (Conn. Super. Ct. Jan. 17, 2003) (same). The record is completely devoid of facts that would show that Edward Jones was negligent in hiring Mr. Mahoney or that Edward Jones knew or should have known prior to hiring Mr. Mahoney that he was likely to engage in the conduct complained of by Ms. Miller.

To the contrary, Mr. Rarick testified in a sworn statement that "Edward Jones followed its standard hiring procedures, which included background and reference checks" in hiring Mr. Mahoney and that "[t]hese procedures disclosed no reason to question [Mr. Mahoney's] fitness for employment." Rarick Aff. ¶ 72 [doc. #68].[6] Ms. Miller's only citation to evidence in her

---

[6] Although Ms. Miller disputes this point in her Local Rule 56(a)(2) Statement, she has failed to provide any admissible evidence that would contradict it, as this District's Local Rules require.

brief opposing summary judgment is a reference to her conclusory statement in the Complaint alleging that "Defendant had a duty to hire managers and employees who would not harass and humiliate Defendants' employees." Compl. at 44 [doc. #1].  *See also* Pl.'s Mem. in Opp. to Edward Jones' Mot. for Summ. J. at 38.  This allegation, without any supporting evidence, is insufficient to create a genuine issue of material fact.  Therefore, the Court grants Edward Jones' motion for summary judgment on Ms. Miller's claim for negligent hiring.

Similarly, the Court grants Edward Jones' motion for summary judgment on Ms. Miller's claims for negligent supervision and retention.  "Whether the claim is for . . . negligent supervision or negligent retention, a plaintiff must allege facts that support the element of forseeability."  *Elbert v. Connecticut Yankee Council, Inc.*, No. CV010456879S, 2004 WL 1832935, at *13 (Conn. Super. Ct. July 16, 2004); *Knicrumah v. Albany City Sch. Dist.*, 241 F. Supp. 2d 199, 211 (N.D.N.Y. 2003) ("It is well settled that defendants cannot be held liable for their alleged negligent hiring, training, supervision or retention of an employee accused of wrongful conduct unless they had notice of said employee's propensity for the type of behavior causing the plaintiff's harm.").

There is no evidence that Edward Jones was put on notice Mr. Mahoney's propensity to engage in the tortious conduct complained of by Ms. Miller during the course of his employment. Although is undisputed that Ms. Miller complained to various employees of Edward Jones on many occasions regarding her difficulties with Mr. Mahoney, her pre-November 9 complaints regarding Mr. Mahoney were in vague terms, referring to Mr. Mahoney as "very demanding" and "abusive."  *See* Edward Jones' 56(a)(1) Stmt. ¶¶ 48-83; Pl.'s 56(a)(2) Stmt. Re: Edward Jones ¶¶ 48-83.  The record does show that Edward Jones had received complaints about Mr. Mahoney

from a previous branch administrator, but these complaints, like Ms. Miller's, simply intimated that Mr. Mahoney was difficult to work with; the other employee expressly denied that Mr. Mahoney ever discussed things of a sexual nature with her. *See* Rarick Aff. at 8-9 [doc. #68]. Nothing in Ms. Miller's complaints prior to her November letter to Mr. Rarick or in the other employee's complaints indicated anything that would suggest that Mr. Mahoney was sexually, or otherwise, harassing employees.

On these facts a reasonable jury could not conclude that Edward Jones was on notice that Mr. Mahoney had a tendency to harass, invade the privacy of, or inflict emotional distress on employees with whom he worked. Therefore, the Court grants Edward Jones' motion for summary judgment on Ms. Miller's claims for negligent supervision and retention in Count Fifteen of the Complaint.

## VIII.

For the foregoing reasons, Defendants' Motions for Summary Judgment [**doc. ## 52, 56**] are GRANTED in part and DENIED in part. As a result of the Court's rulings, Ms. Miller's only remaining claims against Edward Jones are for hostile work environment (based on gender) under Title VII (Count Two) and for employment discrimination and hostile work environment (based on gender and sexual orientation) under state law (Counts Five and Ten). Ms. Miller's only remaining claims against Mr. Mahoney are for intentional infliction of emotional distress (Count Eleven), invasion of privacy (Count Thirteen) and assault (Count Fourteen). Summary judgment is granted to Defendants on all other claims.

IT IS SO ORDERED.


/s/ _____Mark R. Kravitz_____
United States District Judge

Dated at New Haven, Connecticut: **January 25, 2005**.