UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARIAN DEBORAH MILLER,

Plaintiff,

vs.

EDWARD D. JONES & CO., L.P.,
MICHAEL MAHONEY, MICHAEL
CUMMINS, BARBARA MOSCA, and
STEVEN RARICK,

CIV NO.
3:03CV 0193 (MRK)

Defendants.

April 11, 2005

### MOTION *IN LIMINE* OF DEFENDANT EDWARD D. JONES & CO., L.P.

COMES NOW Defendant Edward D. Jones & Co., L.P. ("Edward Jones"), by undersigned counsel, and for its motion *in limine* states the following:

### Alleged Remarks Regarding Ms. Miller's Age and/or Religion

1.      Edward Jones anticipates that at trial Plaintiff Marian Deborah Miller ("Ms. Miller") will seek to introduce evidence of alleged derogatory and offensive remarks she claims Defendant Michael Mahoney made regarding Ms. Miller's age and/or religion.

2.      This Court granted partial summary judgment on all of Ms. Miller's claims for age and religious discrimination (January 25, 2005, Memorandum of Decision, at 14-15).

3.      The Court cites *Feingold v. New York*, 366 F.3d 138, 150 (2nd Cir. 2004), for the proposition that the allegations described in paragraph 1 above, even if insufficient to create a genuine issue of material fact as to age and/or religious discrimination, may be considered with respect to the claim of hostile environment based on gender (January 25, 2005, Memorandum of Decision, at 7). However, the probative value of such evidence on this issue, if any, would be minimal. It would require a counterintuitive and improbable inference that the alleged derogatory and offensive

remarks by Mr. Mahoney regarding Ms. Miller's age and/or religion were made not because of his views about her age and/or religion, or for other reasons, but because he harbored prejudice against her because of her sex and/or sexual orientation. Absent evidence Mr. Mahoney never made such remarks regarding age and/or religion to males and/or homosexuals, such an inference would be nothing more than unsubstantiated speculation. These few scattered remarks allegedly made about Ms. Miller's age and religion have no probative value concerning her surviving claims of hostile environment based on gender and sexual orientation.

4. There is a substantial danger that allowing Ms. Miller to introduce the evidence described in paragraph 1 above at trial would cause unfair prejudice to Edward Jones, confuse the issues, and/or mislead the jury by suggesting to the jury that, directly contrary to the Court's summary judgment ruling, Ms. Miller has a potentially valid legal claim for age and/or religious discrimination. Permitting Ms. Miller to testify to these few scattered remarks would enable her to get in through the back door discrimination claims this Court has already expressly dismissed.

5. There is a substantial danger that allowing Ms. Miller to introduce the evidence described in paragraph 1 above would cause undue delay and waste of time at trial because a significant amount of testimony by Ms. Miller and Mr. Mahoney would have to be devoted to evidence of matters such as: whether Mr. Mahoney made these remarks; the context in which they were made, if they were made; the intent with which they were made, if they were made; and whether Mr. Mahoney made similar remarks to males or homosexuals.

6. The evidence described in paragraph 1 above should therefore be excluded under Fed.R.Evid. 403 ("Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time") because, even if marginally relevant, any "probative value is substantially outweighed by the danger of unfair prejudice, confusion

of the issues, or misleading the jury, [and] by considerations of undue delay [and] waste of time." Fed.R.Evid. 403.

7.    Such a ruling would not be inconsistent with *Feingold v. New York, supra.* *Feingold* simply stands for the proposition that under some circumstances allegations of a different type of discrimination *may* be relevant. *Feingold* does not hold that such evidence must always be admitted. In particular, *Feingold* did not hold that it was an abuse of discretion for a district judge to exclude such evidence, under Fed.R.Evid. 403 or otherwise. *Feingold* was before the Court of Appeals on a review of the District Court's granting of plaintiff's summary judgment motion. The Court of Appeals was not ruling on evidentiary rulings at trial.

WHEREFORE, Edward Jones moves for a pretrial order excluding from evidence any mention of alleged derogatory and offensive remarks by Mr. Mahoney regarding Ms. Miller's age and/or religion, and specifically ordering counsel, Ms. Miller, and other witnesses not to make any reference whatsoever to such alleged remarks at trial, whether in direct or cross examination, testimony, or opening or closing arguments. *See* Fed.R.Evid. 611 ("Mode and Order of Interrogation and Presentation") (court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence" in order to, *inter alia*, "avoid needless consumption of time, and protect witnesses from harassment or undue embarrassment").[1]

## Sexual Harassment or Harassment

8.    Based on representations of counsel at oral argument, this Court ruled that Ms. Miller's claims for sexual harassment were deemed to have been abandoned,

---

[1]    With respect to this and other categories of evidence that are the subject of this motion, regardless of how the Court rules, Edward Jones reserves the right to object at trial, and will propose such limiting instructions as may be appropriate, if any such evidence is presented. See Fed.R.Evid. 105 ("Limited Admissibility") ("When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly").

dismissed this claim, and allowed her to proceed to trial only on claims for hostile environment based on gender and/or sexual orientation (January 25, 2005, Memorandum of Decision, at 6).

9.    In view of the Court's ruling dismissing Ms. Miller's sexual harassment claims, it is essential to carefully preserve this distinction between the sexual harassment claims that were dismissed and are not at issue, and the claims for hostile environment based on gender and/or sexual orientation that the jury is to decide.

10.    In view of the Court's ruling dismissing Ms. Miller's sexual harassment claims, there is no probative value or benefit to any use of the term "sexual harassment" or "harassment" at trial.

11.    There is a substantial danger that allowing introduction of any evidence mentioning "sexual harassment" or allowing counsel or any witness to make any reference whatsoever to the term "sexual harassment" at trial, whether in direct or cross examination, testimony, or opening or closing arguments, would cause unfair prejudice to Edward Jones, confuse the issues, and/or mislead the jury by suggesting to the jury that, directly contrary to the Court's ruling, Ms. Miller is proceeding on a claim for sexual harassment or has a potentially valid legal claim for sexual harassment.

12.    In her deposition, Ms. Miller testified in sweeping conclusory language about Mr. Mahoney's alleged "harassment" of her.

13.    Such conclusory references to "harassment" at trial will have absolutely no probative value, whether or not used in the phrase "sexual harassment." The jury can hear Ms. Miller's evidence of specific instances of Mr. Mahoney's conduct, determine the facts, and apply the law presented in the instructions to the facts perfectly well without hearing Ms. Miller's conclusory characterization of such conduct as "sexual harassment" or simply "harassment," which adds no new evidentiary information whatsoever.

14.    Use of the term "harassment" in the context of the trial of an employment lawsuit brought by a female plaintiff against a male supervisor, whether or not used in the phrase "sexual harassment," is highly likely to suggest to the jury that sexual harassment is at issue.  This is because by far the most common use of the term "harassment" in a legal context is in connection with claims of unlawful sexual harassment.  Therefore, there is a substantial danger that allowing introduction of any evidence mentioning "harassment" or allowing counsel or any witness to make any reference whatsoever to the term "harassment" at trial, whether in direct or cross examination, testimony, or opening or closing arguments, would cause unfair prejudice to Edward Jones, confuse the issues, and/or mislead the jury by suggesting to the jury that, directly contrary to the Court's ruling, Ms. Miller is proceeding on a claim for sexual harassment or has a potentially valid legal claim for sexual harassment.

15.    The evidence or references described in paragraphs 11, 13, and 14 above should therefore be excluded under Fed.R.Evid. 402 because any such evidence is irrelevant; and under Fed.R.Evid. 403 because, even if marginally relevant, any "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, [and] by considerations of undue delay [and] waste of time"; and under Fed.R.Evid. 611 in order to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence," to "avoid needless consumption of time, and protect witnesses from harassment or undue embarrassment."

WHEREFORE, Edward Jones moves for a pretrial order excluding from evidence any evidence mentioning "sexual harassment" or "harassment" and specifically ordering counsel, Ms. Miller, and other witnesses not to make any reference whatsoever at trial to the terms "sexual harassment" or "harassment" whether in direct or cross examination, testimony, or opening or closing arguments.

## Retaliation

16.     This Court granted Defendant partial summary judgment on Ms. Miller's claims that Edward Jones had unlawfully retaliated against her in response to her complaint about Mr. Mahoney (January 25, 2005, Memorandum of Decision, at 15-17).

17.     These dismissed retaliation claims are closely intertwined factually with two key issues at trial that involve Edward Jones' conduct in response to Ms. Miller's complaints about Mr. Mahoney: 1) whether Edward Jones exercised reasonable care to prevent and correct the alleged hostile environment after Ms. Miller complained; and 2) whether after Ms. Miller complained, Edward Jones required her to work under conditions so intolerable that her resignation constituted a constructive discharge.

18.     There is a substantial danger that the manner of presentation of evidence on these two issues involving Edward Jones' conduct in response to Ms. Miller's complaints about Mr. Mahoney would cause unfair prejudice to Edward Jones, confuse the issues, and/or mislead the jury by suggesting to the jury that, directly contrary to the Court's summary judgment ruling, Edward Jones' conduct was tainted by a retaliatory motive, such as by suggesting an inference based on the timing of the pertinent events.

19.     There is also a substantial danger that testimony presented for other purposes may otherwise suggest a retaliatory motive, such as by Plaintiff testifying in conclusory fashion about Mr. Mahoney's perceived anger at her following complaints about him, which would cause unfair prejudice to Edward Jones, confuse the issues, and/or mislead the jury by suggesting to the jury that, directly contrary to the Court's summary judgment ruling, Edward Jones' conduct was tainted by a retaliatory motive.

20.     Therefore, at trial, counsel, Ms. Miller, and other witnesses should be prohibited from using the words "retaliation" or "retaliatory" or otherwise making any suggestion of a retaliatory motive, whether in documentary evidence presented, in direct or cross examination, testimony, or opening or closing arguments under Fed.R.Evid. 403

because, even if marginally relevant due to the close connection to the relevant issues described in paragraph 17 above, any "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," and under Fed.R.Evid. 611 in order to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence," to "avoid needless consumption of time, and protect witnesses from harassment or undue embarrassment."

WHEREFORE, Edward Jones moves for a pretrial order ordering counsel, Ms. Miller, and other witnesses to refrain from using the words "retaliation" or "retaliatory" or otherwise making any suggestion of a retaliatory motive, whether in documentary evidence presented, in direct or cross examination, testimony, or opening or closing arguments.

**Application and Enforcement of the Edward Jones Discrimination Policy**

21.    Plaintiff's trial witness list indicates Plaintiff intends to call Defendant Mahoney and his fellow Edward Jones investment representatives Barbara Mosca and Michael Cummins to testify, *inter alia*, regarding "the discrimination policy at Edward Jones and how it was applied and/or enforced."

22.    The discrimination policy at Edward Jones is a written document that was provided to Plaintiff during her employment and in discovery. This document speaks for itself and is the best evidence as to the substance of this policy.

23.    Mahoney, Mosca, and Cummins have no foundation based on personal knowledge regarding how the Edward Jones discrimination policy "was applied and/or enforced." This policy clearly states the Edward Jones associate relations department enforces this policy, and none of these witnesses are employed in that department, nor have any of them applied and/or enforced this policy.

24.    Therefore, at trial, Mahoney, Mosca, and Cummins should not be permitted to testify or opine, and counsel should be prohibited from questioning them,

7

regarding "the discrimination policy at Edward Jones and how it was applied and/or enforced" under Fed.R.Evid. 402 because any such evidence is irrelevant; and under Fed.R.Evid. 403 because even if marginally relevant, any "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury"; and under Fed.R.Evid. 602 because these witnesses lack personal knowledge of such matters; and under Fed.R.Evid. 611 in order to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence," to "avoid needless consumption of time, and protect witnesses from harassment or undue embarrassment."

WHEREFORE, Edward Jones moves for a pretrial order ordering Mahoney, Mosca, and Cummins not to testify or opine, and ordering counsel not to question these witnesses, regarding "the discrimination policy at Edward Jones and how it was applied and/or enforced," whether in documentary evidence presented, in direct or cross examination, testimony, or opening or closing arguments.

### Unemployment Claim Fact-Finding Report

25.     Ms. Miller's proposed Exhibit 25 is a Connecticut unemployment fact-finding report.  This exhibit includes what purports to be a summary of Ms. Miller's oral statement taken April 1, 2002, giving her version of occurrences during her employment and events leading to her separation from Edward Jones.  The space in the form for "Claimant's Signature" does not bear Ms. Miller's signature.  This exhibit also indicates that Ms. Miller participated by telephone, whereas Edward Jones participated by mail only, providing a simple statement that "the claimant quit voluntarily for personal reasons," which does not bear any signature in the space in the form for "Employer Signature."

26.     The purported summary of Ms. Miller's oral statement in her proposed Exhibit 25 does not mention the undisputed fact that there was an exchange of

correspondence between her attorney and Edward Jones involving repeated requests by Edward Jones that she return to work. Instead, it simply states: "On or about February 28, 2002, the claimant learned through her attorney that the employer discharged her."

27.    Ms. Miller's proposed Exhibit 25 includes a two-paragraph section entitled "Decision & Reasoning." This section discusses two issues: 1) "whether the claimant quit or was discharged"; and 2) "whether the employer discharged the claimant for willful misconduct in the course of her employment." On the first issue, this exhibit states: "*Since the employer has done nothing to substantiate its claim that the claimant quit,* the Administrator must conclude that the employer discharged the claimant" (emphasis added). On the second issue, this exhibit states: "The employer has not alleged any misconduct and the claimant denies any misconduct."

28.    The conclusions in the "Decision & Reasoning" section of Ms. Miller's proposed Exhibit 25 have no binding effect in this litigation. *See* Connecticut General Statutes § 31-249g(b): "No finding of fact or conclusion of law contained in a decision of an employment security appeals referee, the board of review or a court, obtained under this chapter, shall have preclusive effect in any other action or proceeding, except proceedings under this chapter."

29.    Under Connecticut law, unemployment proceedings, such as the one resulting in Ms. Miller's proposed Exhibit 25, are not governed by "the ordinary common law or statutory rules of evidence or procedure." Connecticut General Statutes §§ 31-244, 31-244a.

30.    Edward Jones will present evidence at trial to substantiate its position that Ms. Miller effectively resigned her employment by refusing to return to work despite repeated requests, and that she was not constructively discharged.

31.    There is a substantial danger that the admission into evidence of Ms. Miller's proposed Exhibit 25, or oral testimony regarding the substantive content of the

"Decision & Reasoning" section, would cause unfair prejudice to Edward Jones, confuse the issues, and/or mislead the jury by suggesting to the jury that the Connecticut unemployment authorities made binding or persuasive findings, based upon a thorough review of the evidence, that Ms. Miller did not resign her employment and was not terminated for misconduct.

32.    In fact, as noted in paragraphs 25-29 above, the findings of fact and conclusions of law contained in Ms. Miller's proposed Exhibit 25 are of no legal effect whatsoever in this lawsuit, were based on evidence presented only by Ms. Miller that omitted crucial undisputed facts, without cross examination or other evidentiary or procedural due process protections, and were specifically stated not as findings based upon a full hearing, but as findings based on the absence of participation by Edward Jones.

33.    Therefore, at trial, unredacted admission into evidence of Ms. Miller's proposed Exhibit 25, or questioning, testimony, or argument regarding the substantive content of its "Decision & Reasoning" section should be barred under Fed.R.Evid. 403 because any probative value it may have on the circumstances of Ms. Miller's separation from Edward Jones "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," and under Fed.R.Evid. 611 in order to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence," to "avoid needless consumption of time, and protect witnesses from harassment or undue embarrassment."

WHEREFORE, Edward Jones moves for a pretrial order barring admission into evidence of the "Decision & Reasoning" section of Ms. Miller's proposed Exhibit 25, and

prohibiting any reference to the substantive content of this section, in direct or cross examination, testimony, or opening or closing arguments.[2]

### Dr. Catherine Troy, Dr. Harvey Riback, and Dr. Justin Schechter should not be permitted to testify as expert witnesses

Defendant Edward Jones objects to Plaintiff listing and attempting to call Dr. Catherine Troy, Dr. Harvey Riback, and Dr. Justin Schechter as expert witnesses. Each of these persons is one of Plaintiff's treating physicians. Plaintiff only disclosed them as treating physicians who have knowledge of their "medical treatment" of Plaintiff. Plaintiff never disclosed that any of these persons is an expert or would be called as an expert. Defendant objects to Plaintiff calling these three physicians for any purpose other than as fact witnesses to testify about facts such as Plaintiff's dates of treatment, diagnosis and medical treatment. Defendant specifically objects to Plaintiff calling any of these persons to testify as experts giving expert opinions as to the causation of Plaintiff's medical problems being tied or related to Plaintiff's employment with Edward Jones or interaction with Michael Mahoney. These three physicians are not qualified to testify as experts on the topic of causation of Plaintiff's medical problems or to offer any opinion about Plaintiff's employment at Edward Jones or her interactions with Defendant Mahoney. Their testimony about whether the alleged conduct of Edward Jones or Mahoney was unlawful or caused any of Plaintiff's medical problems invades the province of the jury, and the probative value, if any, is greatly outweighed by prejudice and confusion which could result. Rule 403. They are not qualified to testify that the alleged conduct of Edward Jones or Mahoney was unlawful or caused any of Plaintiff's medical problems and their testimony on these subjects does not meet the reliability requirements of *Daubert* or Rule 702.

---

[2]  Edward Jones reserves the right to use other portions of Ms. Miller's proposed Exhibit 25, properly redacted, for impeachment purposes if it becomes apparent that there is an inconsistency between Ms. Miller's testimony at trial and the content of her earlier statement to the unemployment authorities.

### Jeffrey S. Cohen, Ph.D., Miller's Treating Psychologist, Should Not Be Permitted To Testify As An Expert Witness

Defendant Edward Jones objects to Plaintiff attempting to call Jeffrey S. Cohen, Ph.D. as an expert witness. At his deposition, Dr. Cohen testified that he is Plaintiff's treating psychologist. He testified that, as her treating psychologist, he acts in an advocacy role for Plaintiff. (Tr. 134, 144) He testified he did not perform any forensic evaluation of Plaintiff. (Tr. 144) Dr. Cohen testified that he has acted as a forensic expert and performed forensic examinations in other cases, but that is not the type of evaluation he performed in this case. (Tr. 144, 133-135) He testified that for a forensic evaluation, the examiner must take a detailed history of the person, including such things as medical history, psychiatric history, educational history, work history, and family history to evaluate the patient. (Tr. 133-135, 50) He did not do that here, and testified that had he done so, his conclusions could be different. (Tr. 135) Instead, in his role as her treating psychologist and advocate, Dr. Cohen testified he simply takes her complaints as true with no evaluation. (Tr. 134) Dr. Cohen testified that the reason for his written report was to summarize her treatment records. (Tr. 47) Dr. Cohen testified that he has no opinion about what caused Plaintiff's mental health illnesses that he diagnosed. (Tr. 49) Defendant objects to Plaintiff calling Dr. Cohen for any purpose other than as a fact witness to testify about facts such as Plaintiff's dates of treatment, diagnosis, and medical treatment. Defendant specifically objects to Plaintiff calling Dr. Cohen to testify as an expert giving expert opinions as to the causation of Plaintiff's medical problems being tied or related to Plaintiff's employment with Edward Jones or interaction with Michael Mahoney. As to Plaintiff, he made no such evaluation and is not qualified to testify as an expert on the topic of causation of Plaintiff's medical problems or to offer any opinion about Plaintiff's employment at Edward Jones or her interactions with Defendant Mahoney. His testimony about whether the alleged conduct of Edward

12

Jones or Mahoney was unlawful or caused any of Plaintiff's medical problems invades the province of the jury, and the probative value, if any, is greatly outweighed by prejudice and confusion which could result. Rule 403. He is not qualified to testify that the alleged conduct of Edward Jones or Mahoney was unlawful or caused any of Plaintiff's medical problems, and his testimony on these subjects does not meet the reliability requirements of *Daubert* or Rule 702.

Respectfully submitted,

DEFENDANT Edward Jones & Co., L.P.

By: _____
Michael N. LaVelle, Esq.  06170
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006
(203) 330-2000
(203) 330-2288 (Facsimile)

By: _____
Fred A. Ricks, Jr., Esq.
Harris Dowell Fisher & Harris, L.C.
15400 South Outer Forty, Suite 202
St. Louis, Missouri  63017
(636) 532-0300
(636) 532-0246 (Facsimile)

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, to the following parties:

Peter E. Gillespie, Esq.
Attorney at Law
46 Riverside Avenue
Westport, CT  06880
(203) 227-7000

Vlad Spitzer, Esq.
Spitzer & Brey, LLC
239 Main Street, 2nd Floor
Westport, CT 06880
(203) 226-3266 Ext. 14

14

1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

*  *  *  *  *  *  *  *  *  *

MARIAN DEBORAH MILLER,          *
        Plaintiff,
                                *  Civil No. 3:03CV0193(MRK)
        vs.                        November 19, 2003
                                *
EDWARD D. JONES & CO.,
L.P., MICHAEL MAHONEY,          *
MICHAEL CUMMINS, BARBARA
MOSCA, AND STEVEN RARICK,       *
        Defendants.
*  *  *  *  *  *  *  *  *  *

        DEPOSITION OF JEFFREY S. COHEN, PH.D.

Appearances:

        FOR THE PLAINTIFF:

            SPITZER & BREY, L.L.C.
            239 Main Street
            Westport, Connecticut  06880
              By:  Vlad G. Spitzer, Esq.

        FOR THE DEFENDANTS EDWARD D. JONES & CO.,
        L.P., MICHAEL CUMMINS, BARBARA MOSCA AND
        STEVEN RARICK:

            HARRIS DOWELL FISHER & HARRIS, L.C.
            15400 South Outer Forty, Suite 202
            St. Louis, Missouri  63017
              By:  Fred A. Ricks, Jr., Esq.

        FOR THE DEFENDANT MICHAEL MAHONEY:

            PETER E. GILLESPIE, ESQ.
            46 Riverside Avenue
            Westport, Connecticut  06880

            POST REPORTING SERVICE
        Hamden, Connecticut  (800)262-4102

2

1                       . . .  Deposition of JEFFREY S. COHEN,

2      PH.D., taken on behalf of the Defendants in the

3      above-entitled cause, wherein Marian Deborah Miller

4      is Plaintiff and Edward D. Jones & Co., L.P., et al.,

5      are Defendants, pending in the United States District

6      Court, District of Connecticut, pursuant to Notice,

7      before Barbara E. Voss, a Notary Public in and for

8      the State of Connecticut, County of Fairfield, held

9      on November 19, 2003, at 9:20 a.m., at Pullman &

10     Comley, LLC, 850 Main Street, Bridgeport,

11     Connecticut, at which time the parties were

12     represented as hereinbefore set forth. . .

13

14                       STIPULATIONS

15                  All objections, except as to form, are

16     reserved for the trial.


17                  The reading and signing of the

18     deposition are not waived.

19                  Formalities as to notice and proof of

20     the authority of the Notary Public are waived.

21

22

23

24
                         POST REPORTING SERVICE
                  Hamden, Connecticut   (800)262-4102

3

DEPOSITION OF JEFFREY S. COHEN, PH.D.
November 19, 2003

1                    JEFFREY S. COHEN, PH.D.

2       having been called as a witness, was first duly sworn

3       and testified on his oath as follows:

4

5                         DIRECT EXAMINATION

6       BY MR. RICKS:

7           Q    Good morning, Dr. Cohen.  My name is Fred

8       Ricks.  I represent the Defendants Edward D. Jones &

9       Co., L.P., Michael Cummins, Barbara Mosca and Steven

10      Rarick in this matter.  This is the case of Miller

11      versus all of those defendants I just named plus

12      Michael Mahoney.  With us in the room is also

13      Mr. Peter Gillespie, who represents Michael Mahoney.

14                  I sent the Plaintiff's attorney a

15      Notice of Deposition.  Did you get that Notice of

16      Deposition?

17          A    Yes, I did.

18          Q    And you previously had sent, in response

19      to a Release of Medical Records, a set of documents

20      that I'm going to have marked as Defendant's

21      Exhibit 1.

22                  (Whereupon, Dr. Cohen's medical record

23      was marked Defendant's Exhibit No. 1 for

24      identification.)

                     POST REPORTING SERVICE
              Hamden, Connecticut  (800)262-4102

47
DEPOSITION OF JEFFREY S. COHEN, PH.D.
November 19, 2003

1    2003 on page 2 of Exhibit 1, did you rely at all on

2    her -- your notes of her therapy sessions from July

3    2000 through April 2001?

4        A    I'm sorry, would you rephrase the question

5    again, please?

6                MR. RICKS:  Would you read it back,

7    please?

8                (Whereupon, the pending question was

9    read back by the court reporter.)

10       A    The only area that I might have used was

11   just recognizing that she had two children, a little

12   bit of information from the background which I had

13   known before.

14       Q    I'm not sure I'm clear -- and I realize

15   that you partially answered this a minute ago.  So

16   what was your purpose in preparing this report dated

17   August 5th, 2003?

18       A    Essentially, to assist Ms. Miller or her

19   legal team in capturing her treatment records and my

20   observations of her.

21       Q    So you're trying to summarize your

22   treatment of her?

23       A    Yes.

24       Q    But treatment primarily from, then, if I

48

DEPOSITION OF JEFFREY S. COHEN, PH.D.
November 19, 2003

1    understood you correctly, July 13 -- or January 13,

2    2003 forward?

3        A    Correct.

4        Q    But not including the earlier treatment

5    from July 2003 through April -- excuse me -- July

6    2000 through April 2001?

7        A    Correct.

8        Q    Now, why -- did you -- did you deem the

9    earlier treatment from the summer of 2000 to the

10   spring of 2001 somehow not to be relevant, or what?

11       A    Well --

12            MR. SPITZER:  Object to form.  I'm

13   not sure what "or what" means, but go ahead and

14   answer.

15   BY MR. RICKS:

16       Q    My question is:  Why did you exclude them?

17       A    Well, Ms. Miller wasn't involved in any

18   type of lawsuit with this company at that time, and

19   that these notes were given in preparation for this

20   format, so, I guess, I didn't feel that much of it

21   was so important --

22       Q    Okay.

23       A    -- as to the current, recent episode.

24       Q    Okay.  In your report dated August 5th,

POST REPORTING SERVICE
Hamden, Connecticut  (800)262-4102

49

DEPOSITION OF JEFFREY S. COHEN, PH.D.
November 19, 2003

1       2003, I'm not clear about whether you're offering any

2       opinion about what caused the diagnosis that you're

3       describing on page 6 of major depression -- major

4       depression, panic disorder and bulimia nervosa.

5                    MR. SPITZER:  Just for the record,

6       Mr. Ricks, we're back to the original report starting

7       on page 2, right?

8                    MR. RICKS:  Yeah.  I'm referring to

9       page 6 specifically.

10         A      Right.  You asked the question whether I

11      was offering an opinion as to what contributed to

12      these?

13         Q      Yeah.  I didn't see a specific statement

14      about what caused -- in your opinion, caused the

15      major depression or panic disorder.  Do you have any

16      opinion about that?

17         A      I don't think I have the specific etiology.

18      There's so much that went on, I can't say what was

19      the causative action.

20         Q      Okay.  So you're not saying specifically

21      that her employment with Edward Jones caused major

22      depression, correct?

23         A      No.  I could speculate that --

24         Q      I'm not asking you to speculate.  You're

POST REPORTING SERVICE
Hamden, Connecticut  (800)262-4102

50

DEPOSITION OF JEFFREY S. COHEN, PH.D.
November 19, 2003

1      not saying that her employment with Edward Jones

2      caused her major depression, right?

3              A    I'm saying it probably contributed to it.

4              Q    So it might have been a contributing

5      factor?

6              A    Yes.

7              Q    What about her panic disorder?  Are you

8      saying -- or do you have an opinion about what caused

9      that?

10             A    Well, once again, it's very difficult to

11     partial (phonetic) out contributing factors when you

12     don't follow a person for years and years.

13             Q    So -- pardon me for interrupting.  I'll let

14     you come back to that in a second.  I have a

15     question.

16                  So it is important to follow a person

17     for years to have a good longitudinal history of the

18     person's medical history and other stressors in their

19     life, then, when making a diagnosis; am I right?

20             A    In the best of all possible worlds, yes,

21     we'd like that.

22             Q    Okay.  But you didn't have that here, did

23     you?

24             A    Correct.

POST REPORTING SERVICE
Hamden, Connecticut   (800)262-4102

133

DEPOSITION OF JEFFREY S. COHEN, PH.D.
November 19, 2003

1          Q    And especially anything she found offensive

2     or objectionable, right?

3          A    Correct.

4          Q    Do you have any special training in the

5     area of forensic psychology?

6          A    I have attended many seminars and I've

7     worked as a forensic consultant for the court

8     diagnostic clinic performing competency-

9     to-stand-trial examinations.

10         Q    Okay.  And in those instances were

11    those -- were you performing those as an independent

12    medical examiner?

13         A    In Connecticut we work as a team.  So a

14    psychiatrist, a psychologist and social worker are

15    hired as independent examiners to come to a group

16    decision.

17         Q    Now, with Ms. Miller, though, you're a

18    treating psychologist, right?

19         A    Correct.

20         Q    What's your basic understanding about the

21    difference between someone who's called in to do a

22    forensic evaluation versus a treating psychologist,

23    such as you?

24         A    Well, a forensic examiner would not have a

DEPOSITION OF JEFFREY S. COHEN, PH.D.
November 19, 2003

1    relationship with the patient other than just the

2    examination.  They might do an extremely detailed

3    background and history.  They would look at other

4    sources besides what the client is telling them.

5    They don't develop a therapeutic relationship with

6    the person on an ongoing way.  They often don't know

7    members of their family, get involved with that.

8    They are preparing a report based upon either an

9    attorney or a judge or a legal system that's

10   requested an evaluation of an individual.  And

11   guidelines are a little bit different as far as there

12   are boundaries around forensic examination.

13        Q    Now, isn't it true that, as a treating

14   psychologist, you're also more in an advocacy role

15   for Ms. Miller?

16        A    Correct.

17        Q    And isn't it also true that, unlike a

18   forensic psychologist or psychiatrist, you're

19   basically taking just what Ms. Miller tells you are

20   her complaints, correct?

21        A    Correct.

22        Q    Whereas someone performing a forensic

23   examination would be looking in greater detail at her

24   medical history, work history, family history, trying

DEPOSITION OF JEFFREY S. COHEN, PH.D.
November 19, 2003

1    to get a more global picture of that person, correct?

2         A    Correct.

3         Q    And so someone who was taking a more global

4    approach to look at who Ms. Miller is could arrive at

5    significantly different conclusions than you, right?

6         A    It's possible, yes.

7         Q    And would it be fair to say that, if you

8    had additional information about Ms. Miller's medical

9    history, her psychiatric history, her psychological

10   history, or information even about her family and

11   education, the background history as a whole, even

12   your conclusions could be different, correct?

13        A    Correct.  That's a very lengthy and

14   involved process, as you know.

15        Q    So, regarding this particular case, are

16   there any other opinions that you're going to -- that

17   you would anticipate offering by way of testimony

18   other than what we've already reviewed today?  I'm

19   not asking you to go back about everything we've

20   already talked about, but is there anything

21   significant that we have omitted in our discussion

22   today?

23        A    I think you'd have to ask Ms. Miller about

24   the interpersonal relationship between she and

DEPOSITION OF JEFFREY S. COHEN, PH.D.
November 19, 2003

1      this -- and you are the psychologist who administered

2      her, right?

3          A    Yes.

4          Q    -- that we have not already discussed when

5      we were discussing page 7?

6          A    No.  It's just a more detailed breakdown of

7      each of those factors that we looked at before.

8          Q    Okay.  What special training do you have in

9      administering psychological testing and interpreting

10     psychological testing?

11         A    I was -- I received courses in those -- in

12     psychological testing in graduate school and in my

13     internship.  So I received supervision and training

14     both in graduate school, internship, and in my

15     practice thereafterward.

16              MR. RICKS:  Okay.  Would you mark

17     this, please, as Exhibit 5?

18              (Whereupon, Dr. Cohen's resume was

19     marked Defendant's Exhibit No. 5 for identification.)

20     BY MR. RICKS:

21         Q    I've handed you what's been previously

22     marked as Exhibit 5.  What's this?

23         A    That's my resume.

24         Q    Does it show anywhere on here any special

144

DEPOSITION OF JEFFREY S. COHEN, PH.D.
November 19, 2003

1     training in forensic psychology or forensic

2     evaluations?

3          A    I've worked at -- on page 2 -- the

4     Bridgeport Court Clinic.  It describes my work with

5     competency to standard trial.  And I've also worked

6     with the Office of the Public Defender and Adult and

7     Juvenile Probation.  I do examinations for the

8     Department of Children and Families -- on page 3 --

9     and perform Social Security rehabilitation

10    evaluations.

11         Q    But, again, that is not the type of

12    evaluation that you've done with Ms. Miller?

13         A    Correct.

14         Q    Not the forensic kind of evaluation?

15         A    Right.

16         Q    And with Ms. Miller you're really treating

17    her as a treating physician and advocate for her?

18         A    Yes.

19         Q    There were a couple of additional pages

20    that you had pointed out in your -- or that I had

21    seen in your file on Ms. Miller --

22         A    Right.

23         Q    -- that had not been produced before.

24              MR. RICKS:  I'm going to mark those as

185

CERTIFICATE

STATE OF CONNECTICUT)
                    ) ss.
COUNTY OF FAIRFIELD )

       I, Barbara E. Voss, a Notary Public duly commissioned and qualified in and for the State of Connecticut, do hereby certify that the foregoing record is a correct and verbatim transcript of the

proceeding hereinbefore set forth.

       I further certify that I am neither attorney or counsel for, nor related to or employed by any of the parties to the action in which this proceeding is taken; and further that I am not a relative or employee of any attorney or counsel employed by the parties thereto, or financially interested in the action.

       In witness whereof I have hereunto set my hand and affixed my notarial seal this 29th day of November, 2003.


               Barbara E. Voss, LSR No. 194
               Notary Public

My commission expires March 31, 2007.


POST REPORTING SERVICE
Hamden, Connecticut  (800)262-4102