DISTRICT OF CONNECTICUT

MARIAN DEBORAH MILLER,

        Plaintiff,

vs.

EDWARD D. JONES & CO., L.P.,
MICHAEL MAHONEY, MICHAEL
CUMMINS, BARBARA MOSCA, and
STEVEN RARICK,

        Defendants.

CIV NO.
3:03CV 0193 (MRK)

April 12, 2005

## DEFENDANT EDWARD JONES' OBJECTIONS TO PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

### General Objections

1.    Edward Jones objects that Plaintiff has ignored available and useful pattern jury instructions. As recently as a few years ago, pattern jury instructions for employment discrimination in general, and sexual harassment in particular, left much to be desired. That is no longer the case. Edward Jones based its instructions and verdict forms largely on the patterns it has cited. While this case has some unusual aspects, notably that it is not a sexual harassment case as such, there is no reason for the parties and the court to take the additional risks associated with ignoring the well-prepared pattern instructions that are being regularly used in other cases. Where Plaintiff does cite pattern instructions, she cites "Devitt, Blackmar and Wolff, *Federal Jury Practice and Instructions*, §§104.01, *et seq.*" This edition of *Federal Jury Practice and Instructions* has been superseded by O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions* (5th ed. 2001) § 171.01.

2.    Edward Jones objects that Plaintiff's proposed instructions repeatedly refer to "sexual harassment" and "harassment." For reasons discussed in Edward Jones' motion in limine, such

references are unnecessary, improper, and highly prejudicial. Therefore, Edward Jones objects to the inclusion of the terms "sexual harassment" and "harassment" in any jury instruction.

### Federal and State Discrimination Law

1. Edward Jones objects that Plaintiff presents no authority whatsoever, from model jury instructions or case law dealing specifically with jury instructions, for giving a generic hostile environment instruction of this nature before the verdict directing instruction on burden of proof and essential elements of claims. However, O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions* (5th ed. 2001) § 171.01 ("Nature of the Claim") does involve a very brief, three-paragraph generic introduction to the case -- one paragraph stating the applicable law in one simple sentence, the next stating the plaintiff's claims and defendant's defenses in one simple sentence each, and the third stating the issue for decision and burden of proof in one simple sentence. This model introductory instruction (§ 171.01) contains no additional discussion of the detailed nature Plaintiff proposes. Edward Jones suggests that if such an introductory instruction is given, it should closely follow § 171.01. Edward Jones, therefore, counter-proposes the following:

> It is unlawful for an employer to discriminate against an employee by creating a hostile work environment because of the employee's gender or sexual orientation.
>
> Plaintiff Marian Deborah Miller claims that Defendant Michael Mahoney subjected her to an unlawfully hostile work environment because of her gender and/or sexual orientation, and that Defendant Edward Jones is legally responsible for such conduct. Defendants deny this charge, and Edward Jones denies that it is legally responsible for Michael Mahoney's conduct because it exercised reasonable care to prevent and correct promptly any discriminatory hostile environment, and Plaintiff unreasonably failed to take advantage of preventive or corrective opportunities provided by Edward Jones or to avoid harm otherwise.
>
> It is your responsibility to decide whether Plaintiff Marian Deborah Miller has proven her claim of hostile work environment by a preponderance of the evidence, and whether Edward Jones has proven its defense against legal

2

responsibility for Michael Mahoney's conduct by a preponderance of the evidence.

2. Edward Jones objects that Plaintiff inexplicably cites the following statement of law in her notes to this proposed instruction, but fails to include it in the instruction:

> In order for hostile environment harassment to be actionable, it must be "so 'severe or pervasive' as to 'alter the conditions of [the plaintiff's] employment and create an abusive working environment.'" *Pa. State Police v. Suders*, 124 S. Ct. 2342, 2347 (2004).

This requirement is a fundamental aspect of the legal definition of an actionable hostile environment. It is included in the model instructions upon which Edward Jones based its proposed instructions. Therefore, if the Court gives an instruction such as Plaintiff proposes, stating the other aspects of this definition – fairness and completeness – requires that this element also be included, as it has been in Edward Jones' proposed instructions based on O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions* (5th ed. 2001) § 171.22 and *Pattern Civil Jury Instructions for the 11th Circuit* (2000) § 1.2.2.

3. Edward Jones objects that the following statement in this proposed instruction is a prejudicially incomplete summary of Edward Jones' defenses:

> The defendant Edward Jones denies that the conduct alleged by Ms. Miller rises to the level of conduct which constitutes hostile environment discrimination based on gender and sexual orientation.

This statement improperly conflates two considerations: 1) whether the conduct rises to the level of a hostile environment (including factors such as whether it was sufficiently severe and pervasive and both subjectively and objectively hostile or offensive); and 2) whether the conduct occurred because of sex (gender) and/or sexual orientation. Edward Jones denies both of these essential elements of Plaintiff's hostile environment claims. If such a detailed introductory instruction is given, which Edward Jones feels is inappropriate, as stated in Objection 1, above, it

3

should properly and separately state Edward Jones' position on both these essential elements. Accordingly, Edward Jones counter-proposes to substitute the following sentences for the one quoted immediately above:

> The defendant Edward Jones denies that the conduct alleged by Ms. Miller rises to the level of conduct which constitutes unlawful hostile environment discrimination based on gender and sexual orientation for a number of reasons, including that it was not sufficiently severe and pervasive and that it was not both actually perceived as hostile or offensive by Ms. Miller and conduct that would be perceived as hostile or offensive by a reasonable person. The defendant Edward Jones further denies that the conduct alleged by Ms. Miller constitutes unlawful hostile environment discrimination based on gender and sexual orientation because it was not motivated by her gender or sexual orientation.

Furthermore, this statement is prejudicial and incomplete without reference to the affirmative defense, as it suggests the stated defense is Edward Jones' only defense. *See* counter-proposal in Objection 1, above.

4. Edward Jones objects that the following statement is incorrect as a matter of law:

> ***The*** purpose of Title VII of the Civil Rights Act ("Title VII") and the Connecticut Fair Employment Practices Act ("CFEPA") is to eliminate employment discrimination against individuals on the basis of ***gender***. (emphasis added)

Clearly, both statutes have the purpose of eliminating a variety of other types of discrimination as well. Edward Jones further objects that it is unnecessary to instruct the jury about the specific federal and state statutes as such. Rather, the instructions need only concisely state the applicable issues for decision and the applicable principles of law.

5. Edward Jones objects that the following statement is prejudicially incorrect as a matter of law:

> Where a supervisor, such as Michael Mahoney, is the person who creates the hostile environment, then the employer, such as Edward Jones, is responsible for the conduct.

4

Ever since the Supreme Court's decision in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), it has been the law that where the person who creates a hostile environment is a supervisor, and there is no tangible employment action (there is none alleged here) then the employer is responsible for the conduct, ***unless the employer is able to prove the affirmative defense.*** This last point, which Plaintiff conveniently omitted, has been the linchpin of numerous defense judgments in supervisory harassment cases since *Faragher*, and must be included. Edward Jones' proposed affirmative defense instruction based on O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions* (5th ed. 2001) §§ 171.41, 171.74, and its proposed verdict forms properly sets forth the applicable affirmative defense. If an introductory instruction of this nature is to be given, Edward Jones' counter-proposal in Objection 1, above, accurately previews for the jury the proper standard for employer liability based on harassment by a supervisor.

6.     Edward Jones objects that the following statement is also prejudicially incorrect as a matter of law:

> Where a supervisor knows of the hostile environment harassment of an employee but does nothing to remedy the problem, the inaction also is discriminatory by the employer.

Since *Faragher*, an employer's liability for harassment by a supervisor is clearly not premised on such negligence. The standard described by Plaintiff in this statement applies only to non-supervisory coworkers, and is therefore inapplicable here. *Compare* O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions* (5th ed. 2001) § 171.23 ("Harassment -- Hostile Environment -- Co-Worker") to § 171.22 ("Harassment -- Supervisor -- No Tangible Employment Action"). Plaintiff might prefer the standard described in the above-quoted statement because it would allow her to argue that Edward Jones knew of Mahoney's conduct

5

even though she failed to properly complain using available complaint procedures. She could thus make an end run around the *Faragher* affirmative defense, which is not permissible in a supervisory harassment case. The issue is not whether Edward Jones knew, but whether Plaintiff satisfied her obligation to "take advantage of preventive or corrective opportunities provided by Edward Jones or to avoid harm otherwise." Edward Jones' proposed affirmative defense instruction based on O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions* (5th ed. 2001) §§ 171.41, 171.74, and its proposed verdict forms properly set forth the applicable affirmative defense. If an introductory instruction of this nature is to be given, Edward Jones' counter-proposal in Objection 1, above, accurately previews for the jury the proper standard for employer liability based on harassment by a supervisor.

7.   Edward Jones objects that the following statement is also prejudicially incorrect as a matter of law:

> The seriousness or pervasiveness of the offensive environment must be analyzed from the victim's perspective.

The existence of an actionable hostile environment must be evaluated from both subjective and objective perspectives; this statement incorrectly refers only to the subjective perspective -- "the victim's perspective." It is well established that an overly sensitive "victim" cannot recover if a reasonable person would not have found that the circumstances rose to the level of a hostile work environment. Edward Jones' proposed instructions based on O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions* (5th ed. 2001) § 171.22 and Pattern Civil Jury Instructions for the 11th Circuit (2000) § 1.2.2 properly instruct the jury in both the objective and subjective elements (items "Third" and "Fourth").

8.   Edward Jones objects that for balance and fairness, this instruction, if given, should include the following language, drawn from United States Supreme Court decisions, as proposed

by Edward Jones in its instructions based on O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions* (5th ed. 2001) § 171.40 (modified); *Pattern Civil Jury Instructions for the 11th Circuit* (2000) § 1.2.2:

> Hostile environment discrimination law is not a general civility code. You may not find an abusive or hostile environment based on conduct that only amounts to ordinary socializing in the workplace or ordinary tribulations of the workplace, such as occasional horseplay, sexual flirtation, offhand comments, sporadic or occasional use of abusive language, gender related jokes, and occasional teasing. Only extreme conduct amounting to a material change in the terms and conditions of employment is actionable.

Such instruction is particularly essential in this case because Plaintiff relies on comments by and conversations with Mahoney that the jury may well conclude amount only to ordinary socializing, offhand comments, gender related jokes, etc.

### Title VII of the Civil Rights Act of 1964: Federal Discrimination Law

1. Edward Jones objects that this instruction is unnecessary and confusing in the context of this case. Reading the jury a straight quote of a statute like this is unhelpful and prejudicial, particularly when it includes so many potential claims not at issue in the present case (e.g. hiring, compensation, race, color, religion, or national origin). It is not even necessary for the jury to know which claim is federal law and which is state law. This distinction has no significance for the facts the jury must find.

2. In particular, Edward Jones objects that this instruction may be another improper effort by Plaintiff to resurrect her dismissed claims for religious discrimination, which should not be permitted.

### Connecticut Fair Employment Practices Act: State Discrimination Law

1. Edward Jones objects that this instruction is unnecessary and confusing in the context of this case. Reading the jury a straight quote of a statute like this is unhelpful and prejudicial,

7

particularly when it includes so many potential claims not at issue in the present case (e.g. hiring, compensation, race, color, religion, national origin, marital status, ancestry, present or past history of mental disorder, mental retardation, learning disability, or physical disability). It is not even necessary for the jury to know which claim is federal law and which is state law. This distinction has no significance for the facts the jury must find.

2. In particular, Edward Jones objects that this instruction may be another improper effort by Plaintiff to resurrect her dismissed claims for religious discrimination, which should not be permitted.

3. Edward Jones further objects to the inclusion of the definition of "sexual harassment," in view of the Court's clear and specific dismissal of Plaintiff's sexual harassment claims. This instruction may be an improper effort by Plaintiff to resurrect these dismissed claims, which should not be permitted. Just as other references at trial to "sexual harassment" or "harassment" should not be permitted, for reasons discussed in Edward Jones' motion in limine, references and jury instructions to "sexual harassment" should not be permitted.

**Hostile Work Environment Based on Sex/Gender – Burden of Proof**

1. Edward Jones objects that if Plaintiff truly intends to instruct the jury only regarding "repeated sexual banter, including sexually-oriented comments about her appearance and attire," she appears to be attempting to resurrect her abandoned and dismissed claim for sexual harassment. Plaintiff should not be allowed to bring her dismissed sexual harassment claims back from the dead in this manner and, as contended in Edward Jones' motion in limine, should be prohibited from any reference to sexual harassment or harassment. However, if such references are allowed, and this instruction given, Edward Jones will move for a ruling in limine barring all questions, statements, references, or evidence relating to alleged inappropriate,

unpleasant, hostile, offensive, or harassing conduct by Defendant Mahoney unless it can be characterized as "sexual banter" or is relevant to Plaintiff's claims against Mahoney. For example, if "sexual harassment" and "sexual banter" is to be Plaintiff's focus, she should not be permitted to introduce evidence of complaints about age and religion-related remarks, being required to do Mahoney's personal work without compensation, do office-cleaning work, etc.

2.      Edward Jones objects that the words "had not been invited or solicited, directly or indirectly, by Ms. Miller's own acts or statements" should be included in Plaintiff's "*Second*," as proposed by Edward Jones in its instructions based on O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions* (5th ed. 2001) § 171.22; *Pattern Civil Jury Instructions for the 11th Circuit* (2000) § 1.2.2.  The statements that Plaintiff alleges contributed to the hostile environment occurred in the course of two-way conversations between her and Mr. Mahoney, so the jury should consider whether Plaintiff's own participation in such conversations led Mr. Mahoney to believe his statements would not be unwelcome. As will be discussed below, Plaintiff apparently agrees the jury should be instructed on this issue, but proposes it in a separate instruction. Edward Jones submits it should be included in the basic verdict-directing statement of the elements, as the model instructions indicate, rather than as a separate instruction.

3.      Defendant objects to the following clause proposed by Plaintiff: "i.e., that the actor did not similarly harass male employees." This clause is unnecessary, prejudicial, and confusing. Defendant Mahoney had no male employees, so of course he did not similarly harass any male employees. Under these circumstances, this fact is plainly not evidence his alleged conduct was based on Plaintiff's gender.  It is simply irrelevant and confusing. No such confusing clause is in the model instructions upon which Edward Jones based its proposed instructions.  They simply use "based on plaintiff's sex" (O'Malley, Grenig, and Lee, *Federal Jury Practice and*

9

*Instructions* (5th ed. 2001) § 171.22) or "because of her sex or gender" (*Pattern Civil Jury Instructions for the 11th Circuit* (2000) § 1.2.2.). Either of these alternatives, without further elaboration, is acceptable to Edward Jones.

4.   Edward Jones objects that the clause "as distinguished from someone who is unduly sensitive," included in Edward Jones' "Third" should be added to Plaintiff's "Fourth," if this proposed instruction is given. This clause is included in *Pattern Civil Jury Instructions for the 11th Circuit* (2000) § 1.2.2 (Item (4) in the paragraph that begins: "A work environment is hostile or abusive. . ."). The proposition stated by this clause is implicit in the Supreme Court's hostile environment decisions, including *Harris v. Forklift Sys. Inc.*, 510 U.S. 17 (1993). *See Hernandez v. McDonald's Corp.*, 975 F.Supp. 1418 (D. Kan. 1997) ("The Supreme Court, however, ***in an effort to shield employers from having to accommodate the idiosyncratic concerns of overly-sensitive employees***, has stated that conduct not 'severe or pervasive enough to create an objectively hostile or abusive work environment' is not violative of Title VII. *Harris*, 510 U.S. at 21, 114 S.Ct. at 370"). Such a reference to unduly sensitive employees is particularly appropriate here because there is psychiatric evidence that supports a finding that Plaintiff was in fact "someone who is unduly sensitive" and grossly overreacted to ordinary socializing, offhand comments, gender-related jokes, etc.

5.   Edward Jones objects that the requirement of damages should be included, as it is included in Edward Jones' proposed instructions based on O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions* (5th ed. 2001) § 171.22; *Pattern Civil Jury Instructions for the 11th Circuit* (2000) § 1.2.2. This requirement is included in the statement of elements in *Pattern Civil Jury Instructions for the 11th Circuit* (2000) § 1.2.2 (under "Third"). Plaintiff's instructions improperly assume an automatic entitlement to damages ("If Defendant fails to prove its

10

affirmative defense to this claim of hostile environment based on sexual orientation, you ***must*** award damages to Ms. Miller."). This is not true. Plaintiff must prove she suffered compensable damages.

6.      Edward Jones objects that the reference to the circumstances to consider in determining whether the environment is hostile or abusive is redundant if the previous instruction is given, as it also addresses this issue.

7.      Edward Jones further objects that in Plaintiff's latest revision of this instruction, she has deliberately omitted the words "or merely offensive" in describing circumstances to be considered. These words were in Plaintiff's previous draft of this instruction, and should be included as part of the complete clause "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," which is a direct quote from *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 23 (1993). This omission is without any justification and is highly prejudicial to Edward Jones' defense because Edward Jones will be contending that the alleged conduct in remarks of Mr. Mahoney was at most "merely offensive."

8.      Edward Jones objects to the omission from Plaintiff's statement of the affirmative defense of the following explanation in Edward Jones' proposed affirmative defense instruction, which was taken directly from O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions* (5th ed. 2001) § 171.41:

> Proof of the following is sufficient, though not necessary, to establish the first of these facts, exercise of "reasonable care" by Edward Jones:
>
> •      Edward Jones had promulgated an explicit policy against discrimination in the workplace;
>
> •      that policy was fully communicated to Edward Jones' employees; and

11

- that policy provided a reasonable avenue for Ms. Miller to make a complaint to higher management.

On the other hand, proof that Ms. Miller did not follow a complaint procedure provided by Edward Jones, such as by failing to make a timely complaint through specified channels, is sufficient, though not necessary, to establish that Ms. Miller "unreasonably failed" to take advantage of a corrective opportunity.

### Hostile Work Environment Based on Sexual Orientation – Burden of Proof

1. Edwards Jones' objections are the same as to the parallel instruction on hostile environment gender discrimination, discussed above.

### Hostile Work Environment: "Unwelcome Conduct"

1. Edward Jones objects that there is no reason for this principle to be stated in a separate instruction (added at the 11th hour, by e-mail sent Sunday, April 10, 2005, at 8:06 PM). By including this instruction, Plaintiff effectively concedes that the jury should be instructed to consider whether she may have invited or solicited some of the alleged offensive conduct in connection with its determination of the essential element of whether the conduct is unwelcome (see Edward Jones' Objection 2 above, under "Hostile Work Environment based on Sex/Gender - Burden of Proof"). There is no justification for divorcing this consideration from the statement of the unwelcomeness element of the cause of action, except that Plaintiff hopes the jury will focus on the statement of the elements and ignore this separate instruction.

### Hostile Work Environment: "Severity" and "Pervasiveness"

1. Edward Jones objects that there is no reason for this principle to be stated in a separate instruction (added at the 11th hour by e-mail sent Sunday, April 10, 2005, at 8:06 PM), since the requirement that the conduct be severe or pervasive is included in instructions proposed by both Edward Jones and Plaintiff.

2. Edward Jones further objects that there is no need for a separate instruction on this issue.

12

3.      Edward Jones further objects that this instruction is entirely one-sided and self-serving. As a more balanced instruction on this point, should the Court decided to give one, Edward Jones proposes the following:

> To find that the Plaintiff has met her burden of proving by a preponderance of the evidence that she was subjected to a hostile environment on the basis of her sex (gender) and/or sexual orientation, you must find that the conduct of which she complains was severe or pervasive. "Pervasive" means prevalent, common, extensive, widespread, or inescapable. The less severe the conduct, the more pervasive it must be. The more severe the conduct, the less pervasive it must be. Unless the conduct is extremely severe, isolated, scattered incidents are insufficient. Your consideration of the evidence must not carve the work environment into a series of individual incidents and measure the harm resulting from each episode. Rather, you must keep in mind that each successive episode had its predecessors, that the impact of the separate incidents may be cumulative, and that the work environment created may exceed the sum of the individual episodes. This overall, cumulative work environment also includes all the time between individual incidents during which work proceeded normally and without any hostile or offensive conduct.

**Hostile Work Environment: "Reasonable Person"**

1.      Edward Jones objects that there is no reason for this principle to be stated in a separate instruction (added at the 11th hour by e-mail sent Sunday, April 10, 2005 at 8:06 PM), since the requirement that the conduct be hostile or abusive to a reasonable person in Plaintiff's position is already included in the elements instructions proposed by both Edward Jones and Plaintiff.

2.      Edward Jones further objects that while purporting to state the objective standard element of a hostile environment claim, in fact this proposed instruction imbues it with an improper subjectivity by incorrectly referring to "the perspective of the victim, Ms. Miller," and by incorrectly stating that "the perception . . . of any other person or company is irrelevant." The perceptions that others might have *are* relevant to the extent they aid the jury in determining how the hypothetical "reasonable person" of the law might view the alleged conduct.

13

3.     Edward Jones further objects to the reference to "a reasonable female heterosexual employee." Plaintiff is attempting to resurrect the "reasonable woman" standard, which has been controversial and not gained wide acceptance since it was proposed almost 15 years ago in *Ellison v. Brady*, 92 F.2d 872 (9th Cir. 1991), cited by Plaintiff. Recently, citing conflicting Second Circuit decisions, a panel of the Second Circuit deliberately avoided deciding whether the objective standard should be articulated in terms of a "reasonable woman." *Petrosino v. Bell Atlantic*, 385 F.3d 210, 221-22 (2nd Cir. 2004) ("There is some ambiguity in our case law as to whether . . . a "reasonable person in the plaintiff's position" must be a woman or a person drawn from the public at large. . . . In fact, we need not choose between these two options . . . ."). Under these circumstances, there is absolutely no justification for going out on a legal limb by articulating the disputed "reasonable woman" standard.

### Hostile Work Environment: Past Employees

1.     Edward Jones objects that this proposed instruction is unnecessary, argumentative, overly specific, and prejudicial. The type of evidence that would be addressed by this very specific construction may not be presented or relied upon by Edward Jones. If it is, this type of specific commentary on the significance of particular evidence is best reserved for argument.

2.     Edward Jones further objects that this proposed instruction is incorrect because all of the factors referred to *are* relevant to a jury's consideration of both whether the alleged conduct was offensive to Plaintiff and whether it would be offensive to a reasonable person.

3.     Edward Jones further objects that this proposed instruction is incorrect because, as noted above, "the perspective of a reasonable heterosexual woman" is an improper standard to apply.

### Hostile Work Environment Based on Sex/Gender/Sexual Orientation: Factors

1. Edward Jones objects to the first paragraph as redundant. By this point in Plaintiff's instructions, the factors to be considered have been set forth three times, repetition that is entirely unnecessary.

2. Edward Jones objects to the second paragraph. In its motion in limine, Edward Jones has stated its position on the unfairly prejudicial nature of allowing any evidence of age and/or religious discriminatory conduct in view of the fact that this Court dismissed Plaintiff's claims for age and religious discrimination and that Plaintiff has no evidence whatsoever for the counterintuitive proposition that any comments relating to her age or religion that Mahoney may have made were motivated by animosity to her because of her gender or sexual orientation. However, should the court allow this evidence, the second paragraph of Plaintiff's proposed instruction should be amended to include the following limiting instruction:

> You may not consider evidence of age and/or religious discriminatory conduct for any other purpose. This Court has dismissed as legally insufficient Plaintiff's claims for age and religious discrimination. You may only consider the evidence of age and/or religious discriminatory conduct if you find that it was motivated by animosity to Plaintiff because of her gender or sexual orientation.

### Affirmative Defense to Hostile Environment Based on Sex/Gender/Sexual Orientation

1. Edward Jones objects to the following portion of this instruction:

> With respect to prevent [sic] hostile environment based discrimination, you should consider proof of Edward Jones' dissemination of anti-harassment policy, whether and to what extent it was made know to employees, the methods by which an employee could report harassment, whether it was administered in good faith, whether the policy was effectual, or whether the employer rendered it ineffectual by acting unreasonably in administering the policy.

The relevant factors for determining whether Edward Jones exercised reasonable care to prevent and correct promptly any discriminatory hostile environment are set forth in Edward Jones'

15

proposed instruction based on O'Malley, Grenig, and Lee, *Federal Jury Practice and Instructions* (5th ed. 2001) §§ 171.41, 171.74, which is a more balanced instruction addressing both prongs of the affirmative defense. In contrast, Plaintiff's proposed instruction is imbalanced and unfairly self-serving because it has two paragraphs of detail on the first part of the defense, which focuses on the employer's conduct, but provides no detail on the second prong of the defense, which focuses on the plaintiff's conduct. Finally, there is no indication that some of the facts mentioned will be an issue (e.g. the dissemination of the policy or its general effectiveness), so there is no reason to mention them.

2. Edward Jones objects to the following portion of this instruction:

> You may consider proof, although not necessary, that Edward Jones' decision that Ms. Miller return to the two-person office alone with the man, her supervisor, Michael Mahoney, whom she alleges was harassing her instead of separating Ms. Miller and Mr. Mahoney, as sufficient to establish that Edward Jones failed to exercise "reasonable care" to promptly correct any such hostile environment based on gender and sexual orientation.

Plaintiff cites no authority for including such a statement in a jury instruction. Even if under some circumstances such facts have been held sufficient to defeat the affirmative defense, this does not mean it is proper to include such a statement in a jury instruction. This part of the proposed instruction is argument, not instruction, and would be highly prejudicial coming from the judge in the form of a jury instruction. As phrased by Plaintiff, the jury is instructed that the undisputed fact that Edward Jones requested that Plaintiff return to work with Mahoney is sufficient as a matter of law to defeat the affirmative defense. This invades the province of the jury, which includes determining whether Edward Jones' conduct satisfies the standard of reasonable care to prevent and correct promptly." In doing so, this instruction effectively dictates the outcome of the entire affirmative defense. Further, it is one-sided and self-serving in neglecting to mention facts favorable to Edward Jones, such as the manner in which it responded

16

to Plaintiff's complaints and dealt with Mr. Mahoney as a result of such complaints, facts clearly bearing on the reasonableness of expecting Plaintiff to return to work with Mr. Mahoney.

### Hostile Work Environment: Liability

1.  Edward Jones objects that this proposed instruction is incorrect as a matter of law, under the circumstances of this case. It applies the coworker harassment standard, not the supervisor harassment standard under *Faragher*. As noted above, this is a legally incorrect attempt to make an end run around the *Faragher* affirmative defense. The court should not facilitate such a maneuver by giving this plainly inapplicable instruction.

### Hostile Work Environment: Notice

1.  Edward Jones objects that this proposed construction is incorrect as a matter of law, particularly under the circumstances of this case. It appears to apply the coworker harassment standard, not the supervisor harassment standard under *Faragher* (this is suggested by the statement "the employer's supervisory personnel manifested an acquiescence in or approval of harassment," which suggests supervisors were onlookers, not the perpetrators). As noted above, this is a legally incorrect attempt to make an end run around the *Faragher* affirmative defense. The court should not facilitate such a maneuver by giving this plainly inapplicable instruction.

2.  Edward Jones further objects that it would be highly prejudicial to instruct the jury that there is an "especially heavy" burden on Edward Jones in the circumstances of this case. The burden of proving the affirmative defense is exactly as laid out by the US Supreme Court in *Faragher* -- nothing more, and nothing less -- and this burden is properly covered by Edward Jones' proposed affirmative defense instruction.

3.  Edward Jones further objects to the suggestion that in considering the affirmative defense, the jury may find for the Plaintiff if it finds that "for other reasons a hostile work

environment existed in the workplace." This is highly prejudicial and a completely incorrect statement of the law. It distracts the jury's attention from its consideration of the affirmative defense, returning it to the issue of whether a hostile work environment existed. As clearly laid out in Edward Jones' proposed jury verdict forms, a finding for the Plaintiff on the latter issue is a condition precedent to consideration of the affirmative defense. Conversely, once the jury has moved on to consideration of the affirmative defense, it is erroneous to suggest that it may still find for the Plaintiff by simply finding that a hostile work environment existed.

### Damages for Hostile Environment: In General

1. Edward Jones objects to any reference to front pay in the jury instructions. There is no evidence that would support a finding of front pay. Furthermore, front pay is an equitable remedy to be awarded by the court in lieu of reinstatement, and not an issue for the jury.

### Damages for Hostile Environment: Front Pay

1. Edward Jones objects to any instruction on front pay. There is no evidence that would support a finding of front pay. Furthermore, front pay is an equitable remedy to be awarded by the court in lieu of reinstatement, and not an issue for the jury.

### Damages for Hostile Environment: Compensatory Damages

1. Edward Jones objects to any reference to front pay in the jury instructions. There is no evidence that would support a finding of front pay. Furthermore, front pay is an equitable remedy to be awarded by the court in lieu of reinstatement, and not an issue for the jury.

### Damages for Hostile Environment: Punitive Damages

1. Edward Jones objects that its punitive damages instruction correctly states the applicable standard, particularly with reference to the recent US Supreme Court decision in *State Farm*.

### Edward Jones' Objections To Plaintiff's Proposed Verdict Forms

1.  Plaintiff's proposed verdict forms are prejudicial and erroneous in that they invite the jury to decide which party it finds for *before* asking for a finding on the affirmative defense. Clearly, under *Faragher*, there can be no finding for the Plaintiff until *after* the jury has decided the affirmative defense. While Edward Jones feels its more detailed verdict forms better guide the jury and provide superior information for appeal, should such be necessary, if an abbreviated form such as Plaintiff proposes is to be used, Edward Jones counter-proposes the following:

> **Note:** Answer "Yes" or "No" to the following question:
>
> On the hostile environment based on sex/gender [sexual orientation] claim of Plaintiff Marian Deborah Miller against Edward Jones, do you find that Plaintiff has proven by a preponderance of the evidence that she was subjected to an unlawful hostile environment because of her sex/gender?
>
> *Answer Yes or No* _____
>
> **Note:** Answer the next question only if your response above is "Yes." If your answer is "No," have your foreperson sign and date this form because you have completed your deliberations on this claim.
>
> Has Edward Jones proven by a preponderance of the evidence that:
>
> > Edward Jones exercised reasonable care to prevent and correct promptly any discriminatory hostile environment; and
> >
> > Plaintiff Marian Deborah Miller unreasonably failed to take advantage of preventive or corrective opportunities provided by Edward Jones or to avoid harm otherwise?
>
> *Answer Yes or No* _____
> *[Remainder of form same as Plaintiff's proposal]*

19

Respectfully submitted,

DEFENDANT Edward Jones & Co., L.P.

By: /s/ Michael LaVelle
Michael N. LaVelle, Esq. 06170
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006
(203) 330-2000
(203) 330-2288 (Facsimile)

By:_____
Fred A. Ricks, Jr., Esq.
Harris Dowell Fisher & Harris, L.C.
15400 South Outer Forty, Suite 202
St. Louis, MO 63017
(636) 532-0300
(636) 532-0246 (Facsimile)

### CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, to the following parties:

Peter E. Gillespie, Esq.
Attorney at Law
46 Riverside Avenue
Westport, CT 06880
(203) 227-7000

Vlad Spitzer, Esq.
Spitzer & Brey, LLC
239 Main Street, 2nd Floor
Westport, CT 06880
(203) 226-3266 Ext. 14

/s/ Michael LaVelle

20