UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------X
MARIAN DEBORAH MILLER,

            Plaintiff,

-against-                              CIV NO.
                                            3:03CV 0193 (MRK)
EDWARD D. JONES & CO., L.P.,
MICHAEL MAHONEY, MICHAEL
CUMMINS, BARBARA MOSCA, and
STEVEN RARICK,

            Defendants.                APRIL 11, 2005
------------------------------------------------------------X

FILED
2005 APR 13  P 2: 45
U.S. DISTRICT COURT

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

Pursuant to the Joint Trial Memorandum Order of Mark Kravitz, U.S.D.J., the Form 26(f) Report of Parties' Planning Meeting and the Local Rules of Civil Procedure, Plaintiff, Marian Deborah Miller (hereinafter referred to as "Miller" or "Plaintiff"), submits her Jury Instructions to the Joint Trial Memorandum.

Plaintiff provides jury instructions on the following areas: Title VII of the Civil Rights Act of 1964 ("Title VII") based on hostile environment and/or sexual harassment, analogous Connecticut state law based on gender and sexual orientation discrimination ("CFEPA") with respect to Defendant Edward Jones, and Connecticut common law claims of intentional infliction of emotional distress, invasion of privacy, and civil assault with respect to Defendant Michael Mahoney.

## JURY INSTRUCTIONS FOR MILLER V. EDWARD JONES

**Federal and State Discrimination Law**

In this case, the plaintiff, Marian Deborah Miller, claims that she has been subjected to hostile environment gender discrimination and hostile environment sexual orientation discrimination by the defendant Edward Jones. More specifically, Ms. Miller is claiming that Edward Jones subjected her through its employees and agents, to a hostile environment, because she is a heterosexual woman, in such a way as to alter the terms and conditions of her employment. The defendant Edward Jones denies that the conduct alleged by Ms. Miller rises to the level of conduct which constitutes hostile environment discrimination based on gender and sexual orientation. The purpose of Title VII of the Civil Rights Act ("Title VII") and the Connecticut Fair Employment Practices Act ("CFEPA") is to eliminate employment discrimination against individuals on the basis of gender. Title VII and CFEPA make it unlawful for an employer such as Edward Jones, to intentionally to discriminate against an employee such as Marian Deborah Miller because of her gender. The CFEPA also prohibits an employer from discriminating against an employee on the basis of sexual orientation.

A plaintiff may establish a claim for hostile environment discrimination by proving that discrimination based on gender and sexual orientation has created a hostile or abusive work environment. Hostile environment discrimination occurs when an employer's conduct has the purpose of effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment. Where a supervisor, such as Michael Mahoney, is the person who creates the hostile environment, then the employer, such as Edward Jones, is responsible for the conduct. Where a supervisor knows of the hostile environment

2

harassment of an employee but does nothing to remedy the problem, the inaction also is discriminatory by the employer. The seriousness or pervasiveness of the offensive environment must be analyzed from the victim's perspective. Whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect of the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant fact, may be taken into account, no single factor is required.

Title VII of the Civil Rights Act of 1964 ("Title VII"); 42 U.S.C. §2000e-2(a)(1); Connecticut General Statutes §§46a-60(a)(1) and 46a-60(a)(8). In order for hostile environment harassment to be actionable, it must be "so 'severe or pervasive' as to 'alter the conditions of [the plaintiff's] employment and create an abusive working environment.'" *Pa. State Police v. Suders*, 124 S. Ct. 2342, 2347 (2004) (quoting *Meritor Savings Bank v. Vinson*, 477 U.S. at 67 (1986)); *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004)("the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive")(citations and quotation marks omitted). However, "the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases." *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003). "[I]n assessing the hostility of an environment, a court must look to the totality of the circumstances." *Stacks*, 27 F.3d at

3

1327 (citation omitted). In *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993), the Court held that a hostile environment claim may be actionable without a showing that the plaintiff suffered psychological injury. In determining whether an environment is hostile or abusive, the relevant factors include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23; *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 319 (2d Cir. 1999). *See also Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (reiterating relevant factors set forth in *Harris*). It is impossible to compile an exhaustive list of the types of conduct that may give rise to a hostile environment harassment claim under Title VII and other statutes. Some examples of this kind of conduct include: verbal abuse of a sexual or religious nature; graphic verbal commentaries about an individual's body, sexual prowess, or sexual deficiencies; or age; sexually degrading or vulgar words to describe an individual; pinching, groping, and fondling; suggestive, insulting, or obscene comments or gestures; the display in the workplace of sexually suggestive objects, pictures, posters or cartoons; asking questions about sexual conduct; and unwelcome sexual advances. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993); *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).

**Title VII of the Civil Rights Act of 1964:  Federal Discrimination Law**

One of Ms. Miller's claims is based upon a law first enacted by Congress in 1964, and amended several times since then.  That law is known as Title VII of the Civil Rights Act of 1964, and is often referred to as "Title VII."  One of the provisions of Title VII reads as follows:

It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals' race, color, religion, sex, or national origin.

42 U.S.C. §2000e-2(a)(1).

**Connecticut Fair Employment Practices Act: State Discrimination Law**

Ms. Miller's claims are also based upon Connecticut law which prohibits discriminatory employment practices, known as Connecticut Fair Employment Practices Act codified as General Statutes §46a-60 et seq and §46a-81(c). The sections Ms. Miller relies on in making her claims against Edward Jones for hostile environment based on sex/gender and sexual orientation read as follows:

It shall be a discriminatory practice in violation of this section – (1) for an employer, by himself or his agent, except in the case of bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions, or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disorder, mental retardation, learning disability or physical disability, including, but not limited to blindness.

It shall be a discriminatory practice in violation of this section – (1) for an employer, by himself or his agent, except in the case of bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions, or privileges of employment because of the individual's sexual orientation.

It shall be a discriminatory practice in violation of this section – (8) for an employer, by himself or his agent to harass any employee on the basis of sex. "Sexual harassment" shall, for the purposes of this section, be defined as …any conduct of sexual nature when (c) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment.

Connecticut General Statutes §46a-60(a)(1); §46a-60(a)(8)(c); and §46a-81(c).

7

**Hostile Work Environment based on Sex/Gender – Burden of Proof**

Your verdict must be for plaintiff Marian Deborah Miller and against defendant Edward Jones on plaintiff's claim of hostile work environment based on gender if all of the following elements have been proved by the preponderance of the evidence:

*First*, Marian Deborah Miller was subjected to repeated sexual banter, including sexually-oriented comments about her appearance and attire and

*Second*, such harassing conduct was unwelcome; and

*Third*, such harassing conduct was based on Marian Deborah Miller's gender, i.e. that the actor did not similarly harass male employees; and

*Fourth*, such conduct was sufficiently severe or pervasive that a reasonable person in Marian Deborah Miller's position would find plaintiff's work environment to be hostile and abusive; and

*Fifth*, at the time such conduct occurred and as a result of such conduct, Marian Deborah Miller believed her work environment to be hostile and abusive.

In determining whether a reasonable person in Marian Deborah Miller circumstances would find the plaintiff's work environment to be hostile or abusive, you must look at all the circumstances. The circumstances may include the frequency of the conduct complained of; its severity; whether it was physically threatening or humiliating, and whether it unreasonably interfered with the plaintiff's work performance; and the effect on plaintiff's psychological well-being. No single factor is required in order to find a work environment hostile or abusive.

If Ms. Miller has proved this claim by the preponderance of the evidence, you may find Defendant not liable for hostile environment harassment based on gender only if it has proven by a preponderance of the evidence:

*First*, that it exercised reasonable care to prevent and correct promptly any such hostile environment based on gender; and

*Second*, that Plaintiff unreasonable failed to take advantage of any preventative or corrective opportunities provided by Defendant or to avoid harm otherwise.

The Defendant must prove both elements of its defense. If Defendant fails to prove its affirmative defense to this claim of hostile environment based on gender, you must award damages to Ms. Miller.




Title VII of the Civil Rights Act of 1964 ("Title VII"); Connecticut General Statutes §§46a-60(a)(1) and 46a-60(a)(8)(c). Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions, §§104.01 et seq. The Connecticut Supreme Court has held that Connecticut antidiscrimination statutes are "coextensive with [Title VII]," *Brittell v. Dep't of Corr.*, 247 Conn. 148, 164 (1998). In order for hostile environment harassment to be actionable, it must be "so 'severe or pervasive' as to 'alter the conditions of [the plaintiff's] employment and create an abusive working environment.'" *Pa. State Police v. Suders*, 124 S. Ct. 2342, 2347 (2004) (quoting *Meritor Savings Bank v. Vinson*, 477 U.S. at 67 (1986)); *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004)("the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive")(citations and quotation marks omitted). However, "the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases." *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003). "[I]n assessing the hostility of an environment, a court must look to the totality of the circumstances." *Stacks*, 27 F.3d at 1327 (citation omitted). In *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993), the Court held that a hostile environment claim may be actionable without a showing that the plaintiff suffered psychological injury. In determining whether an environment is hostile or abusive, the relevant factors include the frequency of the discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23; *Brennan v. Metro. Opera Ass'n,* 192 F.3d 310, 319 (2d Cir. 1999). *See also Faragher*, 524 U.S. at 786 (reiterating relevant factors set forth in *Harris*). It is impossible to compile an exhaustive list of the types of conduct that may give rise to a hostile environment harassment claim under Title VII and other statutes. Some examples of this kind of conduct include: verbal abuse of a sexual or religious nature; graphic verbal commentaries about an individual's body, sexual prowess, or sexual deficiencies; or age; sexually degrading or vulgar words to describe an individual; pinching, groping, and fondling; suggestive, insulting, or obscene comments or gestures; the display in the workplace of sexually suggestive objects, pictures, posters or cartoons; asking questions about sexual conduct; and unwelcome sexual advances. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993); *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986).

**Hostile Work Environment based on Sexual Orientation – Burden of Proof**

Your verdict must be for plaintiff Marian Deborah Miller and against defendant Edward Jones on plaintiff's claim of hostile work environment based on sexual orientation if all of the following elements have been proved by the preponderance of the evidence:

*First*, Marian Deborah Miller was subjected to repeated sexual banter, including sexually-oriented comments about her appearance and attire and

*Second*, such harassing conduct was unwelcome; and

*Third*, such harassing conduct was based on Marian Deborah Miller's sexual orientation, i.e. that the actor did not similarly harass homosexual employees; and

*Fourth*, such conduct was sufficiently severe or pervasive that a reasonable person in Marian Deborah Miller's position would find plaintiff's work environment to be hostile and abusive; and

*Fifth*, at the time such conduct occurred and as a result of such conduct, Marian Deborah Miller believed her work environment to be hostile and abusive.

In determining whether a reasonable person in Marian Deborah Miller circumstances would find the plaintiff's work environment to be hostile or abusive, you must look at all the circumstances. The circumstances may include the frequency of the conduct complained of; its severity; whether it was physically threatening or humiliating, or merely offensive; whether it unreasonably interfered with the plaintiff's work performance; and the effect on plaintiff's psychological well-being. No single factor is required in order to find a work environment hostile or abusive.

11

If Ms. Miller has proved this claim by the preponderance of the evidence, you may find Defendant not liable for hostile environment harassment based on gender only if it has proven by a preponderance of the evidence:

*First*, that it exercised reasonable care to prevent and correct promptly any such hostile environment based on sexual orientation; and

*Second*, that Plaintiff unreasonable failed to take advantage of any preventative or corrective opportunities provided by Defendant or to avoid harm otherwise.

The Defendant must prove both elements of its defense. If Defendant fails to prove its affirmative defense to this claim of hostile environment based on sexual orientation, you must award damages to Ms. Miller.

Title VII of the Civil Rights Act of 1964 ("Title VII"); Connecticut General Statutes §§46a-60(a)(1) and 46a-81(c). Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions, §§104.01 et seq. The Connecticut Supreme Court has held that Connecticut antidiscrimination statutes are "coextensive with [Title VII]," *Brittell v. Dep't of Corr.*, 247 Conn. 148, 164 (1998). *See Levy v. Commission on Human Rights and Opportunities*, 236 Conn. 96, 102 (1996)("state law protects individuals from employment discrimination based upon their sexual orientation"). In order for hostile environment harassment to be actionable, it must be "so 'severe or pervasive' as to 'alter the conditions of [the plaintiff's] employment and create an abusive working environment.'" *Pa. State Police v. Suders*, 124 S. Ct. 2342, 2347 (2004) (quoting *Meritor Savings Bank v. Vinson*, 477 U.S. at 67 (1986)); *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004)("the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive")(citations and quotation marks omitted). However, "the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability

12

in all but the most egregious cases." *Terry v. Ashcroft,* 336 F.3d 128, 148 (2d Cir. 2003). "[I]n assessing the hostility of an environment, a court must look to the totality of the circumstances." *Stacks,* 27 F.3d at 1327 (citation omitted). In *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22 (1993), the Court held that a hostile environment claim may be actionable without a showing that the plaintiff suffered psychological injury. In determining whether an environment is hostile or abusive, the relevant factors include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris,* 510 U.S. at 23; *Brennan v. Metro. Opera Ass'n,* 192 F.3d 310, 319 (2d Cir. 1999). *See also Faragher,* 524 U.S. at 786 (reiterating relevant factors set forth in *Harris*). It is impossible to compile an exhaustive list of the types of conduct that may give rise to a hostile environment harassment claim under Title VII and other statutes. Some examples of this kind of conduct include: verbal abuse of a sexual or religious nature; graphic verbal commentaries about an individual's body, sexual prowess, or sexual deficiencies; or age; sexually degrading or vulgar words to describe an individual; pinching, groping, and fondling; suggestive, insulting, or obscene comments or gestures; the display in the workplace of sexually suggestive objects, pictures, posters or cartoons; asking questions about sexual conduct; and unwelcome sexual advances. *See Harris v. Forklift Sys., Inc.,* 510 U.S. 17 (1993); *Meritor Savings Bank v. Vinson,* 477 U.S. 57 (1986).

**Hostile Work Environment: "Unwelcome Conduct"**

Unwelcome conduct is conduct that Ms. Miller did not solicit or incite and that she perceived to be offensive or undesirable.

*See Henson v. City of Dundee, 682 F.2d 897, 902 (11th Cir. 1982).*

**Hostile Work Environment: "Severity" and "Pervasiveness"**

The "severity" and "pervasiveness" of harassing behavior are terms that cannot be defined with precision. The more severe the harassing behavior, the less pervasive it needs to be in order for a defendant to be liable for discrimination. Your consideration of the evidence must not carve the work environment into a series of individual incidents and measure the harm resulting from each episode. Rather, you must keep in mind that each successive episode had its predecessors, that the impact of the separate incidents may be cumulative, and that the work environment created may exceed the sum of the individual episodes. Just as a play cannot be understood on the basis of a single scene, but only on the basis of the entire performance, your decision must concentrate not on individual incidents but on the overall history.

*See Robinson v. Jacksonville Shipyards, Inc. 760 F. Supp. 1486, 1524 (M.D. Fla. 1991).*

**Hostile Work Environment: "Reasonable Person"**

The standard by which you must determine whether the harassment was sufficiently serious is one of reasonableness from the perspective of the victim, Ms. Miller. You must decide, considering all of the circumstances, whether the defendant's conduct would have interfered with a reasonable female heterosexual employee's work performance or the conditions of her employment. The perception of the person or company committing the acts or failures to act, or that of any other person or company, is irrelevant.

*See Ellison v. Brady, 92 F.2d 872 (9th Cir. 1991); Andrews v. City of Philadelphia, 895 F.2d 1467, 1482 (3d Cir. 1990).*

**Hostile Work Environment: Past Employees**

The fact that some past female heterosexual employees did not complain of the work environment or might not have found some behaviors objectionable does not affect the objective overall conclusion from the perspective of a reasonable heterosexual woman whether the work environment was hostile or offensive.

The fact that the behavior complained of was accepted or condoned outside the presence of, or prior to the employment of Ms. Miller or other female heterosexual employees, does not relieve the defendant of liability for the offensive conduct. Additionally, the fact that a person voluntarily enters a work environment where offensive harassing conduct was accepted or condoned prior to the person's employment does not mean that the conduct was welcomed or accepted by that person.

*See Robinson v. Jacksonville Shipyards, Inc. 760 F. Supp. 1486, 1524 (M.D. Fla. 1991; Wyerick v. Bayou Steel Corp., 887 F.2d 1271, 1275 (5th Cir. 1989).*

5.42

**Hostile Work Environment: Factors**

In determining whether a reasonable person in Marian Deborah Miller's circumstances would find the plaintiff's work environment to be hostile or abusive on the basis of her gender and/or sexual orientation, you must look at all the circumstances. The circumstances may include the frequency of the conduct complained of; its severity; whether it was physically threatening or humiliating, or merely offensive; whether it unreasonably interfered with the plaintiff's work performance; and the effect on plaintiff's psychological well-being. No single factor is required in order to find a work environment hostile or abusive.

You may also consider evidence of age and/or religious discriminatory conduct as contributing to and exacerbating the hostile working environment based on gender and/or sexual orientation.

If Ms. Miller has proved her claims of discrimination on the basis of gender and sexual orientation by the preponderance of the evidence, you must consider Defendant's affirmative defense to these claims of hostile environment based on gender and sexual orientation. If Ms. Miller has proved these claims of gender and sexual orientation and Edward Jones does not prove its affirmative defense to this claim of hostile environment based on gender and sexual orientation, you must award damages to Ms. Miller.

Title VII of the Civil Rights Act of 1964 ("Title VII"); Connecticut General Statutes §§46a-60(a)(1), 46a-60(a)(8)(c), and 46a-81(c). Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions, §§104.01 et seq. The Connecticut Supreme Court has held that Connecticut antidiscrimination statutes are "coextensive with [Title VII]," *Brittell v. Dep't of Corr.*, 247 Conn. 148, 164 (1998). *See Levy v.*

*Commission on Human Rights and Opportunities*, 236 Conn. 96, 102 (1996)("state law protects individuals from employment discrimination based upon their sexual orientation"). In order for hostile environment harassment to be actionable, it must be "so 'severe or pervasive' as to 'alter the conditions of [the plaintiff's] employment and create an abusive working environment.'" *Pa. State Police v. Suders*, 124 S. Ct. 2342, 2347 (2004) (quoting *Meritor Savings Bank v. Vinson*, 477 U.S. at 67 (1986)); *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004)("the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive")(citations and quotation marks omitted). However, "the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases." *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003). "[I]n assessing the hostility of an environment, a court must look to the totality of the circumstances." *Stacks*, 27 F.3d at 1327 (citation omitted). In *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993), the Court held that a hostile environment claim may be actionable without a showing that the plaintiff suffered psychological injury. In determining whether an environment is hostile or abusive, the relevant factors include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23; *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 319 (2d Cir. 1999). *See also Faragher*, 524 U.S. at 786 (reiterating relevant factors set forth in *Harris*). A plaintiff can establish a hostile work environment by showing "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) (citation and quotation marks omitted). Once type of hostility can exacerbate the effect of another, and that such aggravating harm is legally cognizable). *Id.* at 572; *Feingold* at 151-152. It is impossible to compile an exhaustive list of the types of conduct that may give rise to a hostile environment harassment claim under Title VII and other statutes. Some examples of this kind of conduct include: verbal abuse of a sexual or religious nature; graphic verbal commentaries about an individual's body, sexual prowess, or sexual deficiencies; or age; sexually degrading or vulgar words to describe an individual; pinching, groping, and fondling; suggestive, insulting, or obscene comments or gestures; the display in the workplace of sexually suggestive objects, pictures, posters or cartoons; asking questions about sexual conduct; and unwelcome sexual advances. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993); *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986); *Raniola v. Bratton*, 243 F.3d 610, 621 (2d Cir. 2001); *Burford v. McDonald's Corp.*, 321 F.Supp. 2d 358, 363 (D.Conn.2004).

**Hostile Environment based on Sex/Gender/Sexual Orientation: Defense**

If Ms. Miller has proved her claims of hostile environment based on gender and sexual orientation by the preponderance of the evidence, you may find Defendant not liable for hostile environment harassment based on gender and sexual orientation only if it has proven by a preponderance of the evidence:

*First*, that it exercised reasonable care to prevent and correct promptly any such hostile environment based on gender and sexual orientation; and

*Second*, that Plaintiff unreasonable failed to take advantage of any preventative or corrective opportunities provided by Defendant or to avoid harm otherwise.

With respect to prevent hostile environment based discrimination, you should consider proof of Edward Jones' dissemination of anti-harassment policy, whether and to what extent it was made know to employees, the methods by which an employee could report harassment, whether it was administered in good faith, whether the policy was effectual, or whether the employer rendered it ineffectual by acting unreasonably in administering the policy.

You may consider proof, although not necessary, that Edward Jones' decision that Ms. Miller return to the two-person office alone with the man, her supervisor, Michael Mahoney, whom she alleges was harassing her instead of separating Ms. Miller and Mr. Mahoney, as sufficient to establish that Edward Jones failed to exercise "reasonable care" to promptly correct any such hostile environment based on gender and sexual orientation.

The Defendant must prove both elements of its defense. If Defendant fails to prove its affirmative defense to this claim of hostile environment based on gender and sexual orientation, you must award damages to Ms. Miller.