Title VII of the Civil Rights Act of 1964 ("Title VII"); Connecticut General Statutes §§46a-60(a)(1), 46a-60(a)(8)(c), and 46a-81(c). Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions, §§104.01 et seq. The Connecticut Supreme Court has held that Connecticut antidiscrimination statutes are "coextensive with [Title VII]," *Brittell v. Dep't of Corr.*, 247 Conn. 148, 164 (1998). "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by [the employee's] supervisor." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 745 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 777 (1998)). When "no tangible employment action, such as discharge, demotion, or undesirable reassignment" is taken, however, an employer may defend against liability or damages "by proving an affirmative defense of reasonable oversight and of the employee's unreasonable failure to take advantage of corrective opportunities." citing *Faragher*, 524 U.S. at 807; *Burlington Indus.*, 524 U.S. at 763)). Jury could find that employer acted unreasonably in failing to separate employees from their harassing supervisors. *See Hatley v. Hilton Hotels Corp.*, 308 F.3d 473, 475 (5th Cir. 2002).

21

**Hostile Work Environment: Liability**

An employer such as Edward Jones is liable for a hostile work environment which occurs because of gender and/or sexual orientation to an employee such as Ms. Miller, and which result from the conduct of a supervisory employee such as Michael Mahoney, when the employer fails to promptly respond to this hostile environment harassment by its employees. An employer is negligent or reckless in this context when it fails to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known.

See *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1418 (10th Cir. 1987); *Hirschfeld v. New Mexico Corrections Dept.*, 916 F.2d 572 (10th Cir. 1990).

**Hostile Work Environment: Notice**

An employer such as Edward Jones on notice of hostile environment based harassment must do more than indicate the existence of an official policy against such behavior. Where the employer's supervisory personnel manifested an acquiescence in or approval of harassment, the burden on the employer seeking to liability is especially heavy.

The existence of a written policy and procedures prohibiting harassment in the workplace, or the holding of meetings to discuss these policies and procedures, do not by themselves insulate an employer from liability. You may still find Edward Jones liable from the totality of the evidence, if you determine that the policy was inadequate or ineffective, that there were inadequate or ineffective measures for its implementation, or that for other reasons a hostile work environment existed in the workplace.

*See Katz v. Dole*, 709 F.2d 250, 255-56 (4th Cir. 1983); *Valdez v. Church's Fried Chicken, Inc.*, 683 F.Supp. 596, 621 (W.D. Tex. 1988); *Zabkowicz v. West Bend Co.*, 589 F. Supp. 780, 785 (E.D. Wis. 1984).

23

**Damages for Hostile Environment: In General**

If you find that Ms. Miller was subjected to a hostile environment based on sex/gender and/or sexual orientation, she is entitled to recover damages. Plaintiff's claim for damages includes four distinct types of damages: back pay, front pay, compensatory damages, and punitive damages. You must consider them separately and enter separate amounts for each type of damages in the verdict form.

**Damages for Hostile Environment: Back Pay**

If you find that Ms. Miller was subjected to a hostile environment based on sex/gender and/or sexual orientation, she is entitled to recover damages. In considering the issue of Ms. Miller's damages, you are instructed that you should assess the amount you find to be justified by a preponderance of the evidence as full, just and reasonable compensation for all of the Plaintiff's damages, no less. The purpose of the Title VII and Connecticut Fair Employment Act is to make persons whole for injuries suffered as a result of unlawful employment discrimination. Under the Title VII and CFEPA, Marian Deborah Miller is entitled to recover lost wages and benefits, including increases in wages. The amount of wages and benefits due is determined by calculating the amount that would have been earned from the date of the termination of her employment, February 28, 2002, to the date you, the jury, return a verdict minus the amount of wages that she received from other employment during that time. You may include in the amount all forms of compensation Ms. Miller would have earned, including salary, bonuses, vacation pay, pension and health insurance benefits. For the purposes of your computation of damages, you shall not deduct any unemployment compensation that Ms. Miller may have received after the termination of her employment.

Ms. Miller is not required to prove with unrealistic precision the amount of lost earnings, if any due to her. Any uncertainties in the amount Ms. Miller would have earned should be resolved against Edward Jones.

*See* 42 U.S.C. § 2000e-5(g)(1) awarding back pay. 42 U.S.C. § 1981a(c)(2) (requires that federal compensatory limit not be disclosed to the jury. The limits do not apply to back pay or front pay, which is awarded under 42 U.S.C. § 2000e-5(g)(1), not 42 U.S.C. § 1981a). *See also Pollard v. E.I. du Pont de Nemours & Company*, 532 U.S. __ (2001). 42 U.S.C. § 2000e-5(g)(2)(B). See Connecticut Fair Employment Practices Act. Conn. Gen. Stat. §§ 46a-60 *et seq.* ("CFEPA"); §46a-104 and 52-251b; The Connecticut Supreme Court has held that Connecticut antidiscrimination statutes are "coextensive with [Title VII]," *Brittell v. Dep't of Corr.*, 247 Conn. 148, 164 (1998); *see Arnold v. Yale New Haven Hosp.*, 213 F. Supp.2d 142, 151 (D. Conn. 2002). However, compensatory damages not capped under CFEPA. C.G.S. §46a-104 and 52-251b. Unemployment compensation, Social Security benefits or pension benefits ordinarily are not offset against a back pay award. *See Doyne v. Union Electric Co.*, 953 F.2d 447, 451 (8th Cir. 1992) (holding that pension benefits are a "collateral source benefit"); *Dreyer v. Arco Chemical Co.*, 801 F.2d 651, 653 n.1 (3d Cir. 1986) (Social Security and pension benefits not deductible); *Protos v. Volkswagen of America, Inc.*, 797 F.2d 129, 138-39 (3d Cir. 1986) (unemployment benefits not deductible); *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 626 (6th Cir. 1983) (same).

**Damages for Hostile Environment: Front Pay**

If you find that Ms. Miller was subjected to a hostile environment based on sex/gender and/or sexual orientation, she is entitled to recover damages. If you return a verdict for Ms. Miller, but you find that she cannot be reinstated to the job because it is no longer available or due to antagonism and disharmony between Ms. Miller and Edward Jones, you may award Ms. Miller front pay. Front pay may include the amount Ms. Miller would have earned from the day you, the jury, return a verdict, until the date you find Ms. Miller loss of future earnings will cease.

*See* 42 U.S.C. § 2000e-5(g)(1), awarding front pay. In *Kramer v. Logan County School Dist. No. R-1*, 157 F.3d 620, 625-26 (8th Cir. 1998), the court ruled that "front pay is an equitable remedy excluded from the statutory limit on compensatory damages provided for in [42 U.S.C.] § 1981a(b)(3)." 42 U.S.C. § 1981a(c)(2) (requires that federal compensatory limit not be disclosed to the jury. The limits do not apply to back pay or front pay, which is awarded under 42 U.S.C. § 2000e-5(g)(1), not 42 U.S.C. § 1981a). *See also Pollard v. E.I. du Pont de Nemours & Company*, 532 U.S. __ (2001). 42 U.S.C. § 2000e-5(g)(2)(B). See Connecticut Fair Employment Practices Act. Conn. Gen. Stat. §§ 46a-60 *et seq.*("CFEPA"); §46a-104 and 52-251b; The Connecticut Supreme Court has held that Connecticut antidiscrimination statutes are "coextensive with [Title VII]," *Brittell v. Dep't of Corr.*, 247 Conn. 148, 164 (1998); *see Arnold v. Yale New Haven Hosp.*, 213 F. Supp.2d 142, 151 (D. Conn. 2002). However, compensatory damages not capped under CFEPA. C.G.S. §46a-104 and 52-251b.

**Damages for Hostile Environment:   Compensatory Damages**

If you find that Ms. Miller was subjected to a hostile environment based on sex/gender and/or sexual orientation, she is entitled to recover damages.  Ms. Miller claims that as a result of the hostile environment she was subjected to, she suffered pain, humiliation, and mental anguish.  If you return a verdict for Marian Deborah Miller, you must also decide the issue of compensatory damages.  In addition to back pay and front pay, you may award Ms. Miller a sum of money that you believe will justly and fairly compensate her for any injury you believe she suffered as a result of Edward Jones' conduct in violations of Title and CFEPA, hostile environment based on sex/gender and/or sexual orientation.

Compensatory damages may be awarded for emotional distress, mental anguish, pain and suffering, inconvenience, humiliation, loss of the enjoyment of life, and medical expenses incurred as a result of psychological or physical harm.  Compensatory damages are not restricted to actual loss of time or money; they cover both the mental and physical aspects of injury - - tangible, including but not limited to medical expenses, both past, present, and future, and intangible.  Thus, no evidence of the value of such intangible things as emotional pain and mental anguish has been or need be introduced.  In that respect it is not value you are trying to determine, but an amount that will fairly compensate the Plaintiff for those claims of damage.  There is no exact standard to be applied; any such award should be fair and just in the light of the evidence.

The effect that an injury might have upon a particular person depends upon the susceptibility to injury of Ms. Miller. In other words, the fact that the injury would have

been less serious if inflicted upon another person should not affect the amount of damages to which Ms. Miller may be entitled.

A person who had a particular condition before the incidents may be awarded damages for the aggravation or worsening of that condition.

In addition, you may award her damages for any emotional distress she may have suffered in the past and which she may suffer in the future as a result of this hostile environment based on gender and sexual orientation.

Under the Civil Rights Act of 1991, a prevailing plaintiff may recover damages for mental anguish and other personal injuries. The types of damages mentioned in § 1981a(b)(3) include "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." *See* 42 U.S.C. § 1981a(b) (provides for the recovery of compensatory and punitive damages). 42 U.S.C. § 1981a(c)(2) (requires that federal compensatory limit not be disclosed to the jury. The limits do not apply to back pay or front pay, which is awarded under 42 U.S.C. § 2000e-5(g)(1), not 42 U.S.C. § 1981a). *See also Pollard v. E.I. du Pont de Nemours & Company*, 532 U.S. __ (2001). 42 U.S.C. § 2000e-5(g)(2)(B). See Connecticut Fair Employment Practices Act. Conn. Gen. Stat. §§ 46a-60 *et seq.* ("CFEPA"); §46a-104 and 52-251b; The Connecticut Supreme Court has held that Connecticut antidiscrimination statutes are "coextensive with [Title VII]," *Brittell v. Dep't of Corr.*, 247 Conn. 148, 164 (1998); *see Arnold v. Yale New Haven Hosp.*, 213 F. Supp.2d 142, 151 (D. Conn. 2002). However, compensatory damages not capped under CFEPA. C.G.S. §46a-104 and 52-251b.

**Damages for Hostile Environment:   Punitive Damages**

If you find that Ms. Miller was subjected to a hostile environment based on sex/gender and/or sexual orientation, she is entitled to recover damages. The law allows you to award punitive damages against Edward Jones.

You may award Marian Deborah Miller punitive damages if you find, by a preponderance of the evidence, that the acts or omissions of Edward Jones were done maliciously or with reckless indifference to the federally protected rights of Marian Deborah Miller. An act or failure to act is maliciously done if it is prompted by ill will or spite toward Ms. Miller. An act or failure to act is done with reckless indifference if Edward Jones knew or should have known that Ms. Miller's rights would be violated by its actions or omissions.

You may consider as proof of an act of indifference that Edward Jones directed Ms. Miller to return to return to the two-person office with Michael Mahoney, an environment she had complained to them of as a hostile environment.

An award of punitive damages is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, then you may decide to award punitive damages.

In making this decision, you should consider the underlying purpose of punitive damages. Punitive damages are awarded in the jury's discretion to punish a defendant such as Edward Jones for acting with malice or with reckless indifference to a plaintiff, such as Ms. Miller's rights or to deter it and others like it from performing similar

conduct in the future. Thus, in deciding whether to award punitive damages, you should consider whether Edward Jones may be adequately punished by an award of actual damages only, or whether the conduct is so malicious or reckless that actual damages are inadequate to punish the wrongful conduct.

The extent to which a particular sum of money will adequately punish Edward Jones, and the extent to which a particular sum will adequately deter or prevent future misconduct, may depend on the financial resources of Edward Jones. Therefore, if you find that punitive damages should be awarded against Edward Jones, you may consider the financial resources of Edward Jones in fixing the amount of such damages.

---

*See* 42 U.S.C. § 1981a(b) (provides for the recovery of compensatory and punitive damages).See 42 U.S.C. § 1981 A(b)(1). With regard to the statutory standard for punitive damages requiring proof that the employer acted "with malice or reckless indifference to [the employee's] federally protected rights," *See Kolstad v. American Dental Association*, ____ U. S. ____, 119 S.Ct. 2118 (1999). See Connecticut Fair Employment Practices Act. Conn. Gen. Stat. §§ 46a-60 *et seq.*("CFEPA"); §46a-104 and 52-251b; The Connecticut Supreme Court has held that Connecticut antidiscrimination statutes are "coextensive with [Title VII]," *Brittell v. Dep't of Corr.*, 247 Conn. 148, 164 (1998); *see Arnold v. Yale New Haven Hosp.*, 213 F. Supp.2d 142, 151 (D. Conn. 2002).

31

## JURY INSTRUCTIONS FOR MILLER V. MICHAEL MAHONEY

**Invasion of Privacy: Intrusion upon Seclusion**

The plaintiff Marian Deborah Miller also seeks to recover damages based upon a claim of invasion of privacy by intrusion into private affairs.

The essential elements of such a claim are:

(1) Michael Mahoney intentionally intruded, physically or otherwise, upon the solitude or seclusion, private affairs or concerns of Ms. Miller;

(2) The intrusion was substantial, and of a kind that would be highly offensive to an ordinarily reasonable person; and

(3) The intrusion caused Ms. Miller to sustain injury, damage, loss or harm.

In determining whether an intrusion is highly offensive, you should consider whether Michael Mahoney asked highly personal questions that intruded on Ms. Miller's psychological solitude. If you find that Mr. Mahoney invaded Ms. Miller's right of privacy and caused her to suffer injury, Ms. Miller is entitled to damages that will reasonably compensate her for each of the following elements of claimed injury, damage, loss or harm:

(1) Any harm to Ms. Miller's interest in privacy resulting from the invasion;

(2) Any mental or emotional distress caused by the invasion, if it is of a kind that normally results from such an invasion; and

(3) Special damages caused by the invasion. Special damages are those economic losses which Ms. Miller has sustained to date, or is reasonably certain to suffer in the future in including the amount of money which Ms. Miller has expended as a result of the alleged invasion of privacy including the amount of actual damage which is a natural consequence of the invasion of privacy which were caused by Michael Mahoney's invasion of Ms. Miller's privacy.

*See* Restatement (Second) of Torts § 652 (1981); *Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107, 128 (1982); *Rafferty v. Hartford Courant Co.*, 36 Conn.Supp. 239, 240-41 (1980); (jury to decide actions "highly offensive to reasonable person); *Bonanno v. Dan Perkins Chevrolet,* No. CV99-066602, 2000 WL 192182, at *1 (Conn. Super. Ct. Feb 4, 2000) (a defendant must invade the privacy of the plaintiff in such a way that the "intrusion would be highly offensive to a reasonable person"). *See also Cartwright v. Tacala, Inc.*, 2000 WL 33287445, at *15 (M.D. Ala. Nov. 1, 2000)(questions about plaintiff's sexual relations with a co-worker supported intrusion claim); *Van Jelgerhuis v. Mercury Finance Co.*, 940 F. Supp. 1344, 1368 (S.D. Ind. 1996)(questions of a sexual nature in the workplace can constitute invasion of privacy). "Highly personal questions or demands by a person...may be regarded as an intrusion on psychological solitude or integrity and hence an invasion of privacy." *Bonanno,* 2000 WL 192182, at *2 (quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Law of Torts* §117 (5th ed. Supp. 1988)); Restatement (Second) of Torts §652B(1981).

33

**Intentional Infliction of Emotional Distress**

Marian Deborah Miller asserts that Michael Mahoney deliberately engaged in conduct that allows her to recover for intentional infliction of emotional distress. To prove a claim for intentional infliction of emotional distress, Ms. Miller must show by a preponderance of the evidence that (1) Michael Mahoney intended to inflict emotional distress, or that he acted recklessly by engaging in conduct which he knew or should have known that emotional distress was a likely result of his conduct; (2) Michael Mahoney's conduct was extreme and outrageous; (3) Michael Mahoney's conduct was the cause of Marian Deborah Miller's distress; and (4) the emotional distress sustained by Ms. Miller was severe.

When I use the terms "extreme" and "outrageous," I mean that Michael Mahoney's conduct must have exceeded all bounds usually tolerated by a decent society. To find for Marian Deborah Miller, the extreme and outrageous conduct of Michael Mahoney must have been so extreme, in your judgment, as to be atrocious and utterly intolerable in civilized community.

There is no bright line rule to determine what constitutes extreme and outrageous conduct sufficient to maintain an action. You must look to the specific facts and circumstances of this case in making your decision. Mere insults, indignities, or annoyances that are not extreme or outrageous will not suffice... Such conduct may, however, give rise to a cause of action where the defendant is aware of the peculiar

34

sensitivities of the plaintiff. The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know. The requirement of outrageous conduct may arise where there is an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests.

If you find that Ms. Miller is entitled to a verdict against Michael Mahoney for intentional infliction of emotional distress, you must then award Ms. Miller damages in an amount that will reasonably compensate her for all loss or harm, provided that you find it was or will be suffered by her and was caused by the Michael Mahoney's conduct. The amount of such award shall include:

Reasonable compensation for any fears, anxiety and other emotional distress suffered by Ms. Miller and for similar suffering reasonably certain to be experienced in the future from the same cause. No definite standard or method of calculation is prescribed by law by which to fix reasonable compensation for emotional distress. Nor is the opinion of any witness required as to the amount of such reasonable compensation. Furthermore, the argument of counsel as to the amount of damages is not evidence of reasonable compensation. In making an award for emotional distress you shall exercise your authority with calm and reasonable judgment and the damages you fix shall be just

and reasonable in the light of the evidence, which may include reasonable compensation for any financial loss suffered by Ms. Miller which was caused by emotional distress.

*See Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210 (2000); *Berube v. Nagle*, 81 Conn. App. 681, 698 (2004); *Carrol v. Allstate Ins.Co.*, 262 Conn. 433, 442-43 (2003); *Rosenberg v. Meriden Housing Authority*, Superior Court, Judicial District of New Haven at New Haven, Docket No. 377376 (October 29, 1999); *Brown v. Ellis*, 40 Conn.Supp. 165, 167; *Mellaly v. Eastman Kodak Company*, 42 Conn.Sup. 17, 20 (1991, Berdon, J). Connecticut courts have found that "racial, ethnic, religious or sexual slurs" in the workplace may be sufficiently extreme or outrageous to support a claim for intentional infliction of emotional distress. *Leone v. New England Communications*, No. CV010509752S, 2002 WL 1008470, at *3 (Conn. Super. Ct. April 10, 2002).

**Civil Assault**

The plaintiff Marian Deborah Miller asserts that Michael Mahoney deliberately engaged in conduct that allows her to recover for civil assault. A civil assault is the intentional causing of imminent apprehension of harmful or offensive contact in another. No actual contact or physical harm is required. If you find by a preponderance of the evidence that Marian Deborah Miller was fearful that Mr. Mahoney would harm her and that Mr. Mahoney intentionally caused this fear, Ms. Miller is entitled to damages. The amount of such award shall include:

Reasonable compensation for any fears, anxiety and other emotional distress suffered by Ms. Miller and for similar suffering reasonably certain to be experienced in the future from the same cause. No definite standard or method of calculation is prescribed by law by which to fix reasonable compensation for emotional distress. Nor is the opinion of any witness required as to the amount of such reasonable compensation. Furthermore, the argument of counsel as to the amount of damages is not evidence of reasonable compensation. In making an award for emotional distress you shall exercise your authority with calm and reasonable judgment and the damages you fix shall be just and reasonable in the light of the evidence, which may include reasonable compensation for any financial loss suffered by the plaintiff which was caused by emotional distress.

*See Dewitt v. John Hancock Mut. Life Ins. Co.,* 5 Conn. App. 590, 594 (1985)(quoting 1 Restatement (Second), Torts §21)); *Norman v. Distasio,* No. CV960389982S, 2001 WL 761135,

at *3 (Conn.Super.Ct. June 15, 2001) (quoting Douglass B. Wright, et al., *Connecticut Law of Torts,* §6, at 8 (3d ed. 1991)("no actual contact is required"). *See also Stack v. Perez,* 248 F. Supp. 2d 106, 110 (D. Conn. 2003).

THE PLAINTIFF
MARIAN DEOBROAH MILLER

By:_____
Vlad G. Spitzer
Fed. Bar #ct14260
Spitzer & Brey L.L.C.
239 Main Street
Westport, CT 06880
(203) 226-3266
Facsimile: (203) 226-3262
Email: vgspitzer@spitzerbrey.com

## CERTIFICATION

I hereby certify that pursuant to section 5(b) of the Federal Rules of Civil Procedure, a copy of the foregoing was mailed on April 12, 2005, postage prepaid to:

Fred A. Ricks, Jr. Esq.
Harris Dowell Fisher & Harris, L.C.
15400 South Outer Forty – Suite 202
St. Louis, Missouri  63017-2063

Michael N. LaVelle, Esq.
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006

Peter E. Gillespie, Esq.
46 Riverside Avenue
Westport, CT  06880

_____
Vlad G. Spitzer